No. 23-1072

# United States Court of Appeals
## for the First Circuit

_____

OCEAN STATE TACTICAL, LLC, D/B/A BIG BEAR HUNTING AND FISHING SUPPLY;
JONATHAN HIRONS; JAMES ROBERT GRUNDY; JEFFREY GOYETTE; MARY BRIMER,
*Plaintiffs-Appellants*,

*v.*

STATE OF RHODE ISLAND; COLONEL DARNELL S. WEAVER, IN HIS OFFICIAL
CAPACITY AS THE SUPERINTENDENT OF THE RHODE ISLAND STATE POLICE; PETER F.
NERONHA, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL FOR THE STATE
OF RHODE ISLAND,
*Defendants-Appellees.*

_____

ON APPEAL FROM THE DENIAL OF A MOTION FOR A PRELIMINARY INJUNCTION BY THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

_____

**BRIEF OF MASSACHUSETTS, CALIFORNIA, COLORADO,
CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA,
HAWAI'I, ILLINOIS, MARYLAND, MICHIGAN, MINNESOTA, NEW
JERSEY, NEW YORK, OREGON, PENNSYLVANIA, VERMONT,
WASHINGTON, AND WISCONSIN AS AMICI CURIAE IN SUPPORT OF
APPELLEES AND AFFIRMANCE**

_____

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Julie Green, 1st Cir. No. 93492
Grace Gohlke, 1st Cir. No. 1204282
*Assistant Attorneys General*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2085
email: julie.green@mass.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTERESTS OF THE AMICI STATES .................................................1

SUMMARY OF THE ARGUMENT .......................................................2

ARGUMENT ...........................................................................................4

    I.    To Promote the Safety and Well-Being of Our Residents, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapon Accessories and Weapons Not Commonly Used for Self-Defense. ..........................................................4

    II.    Rhode Island's Restriction on Magazine Capacity Comports Fully with the Second Amendment. ....................................................11

        A.    Nineteenth- and Twentieth-Century History Bears on Whether a State Law Is Consistent with a Historical Tradition of Firearm Regulation....................12

        B.    Rhode Island's Restriction on Magazine Capacity Is Relevantly Similar to the Historical Practices of Regulating the Storage of Ammunition and Imposing Restrictions on New, and Distinctly Dangerous, Forms of Weaponry....................................17

CONCLUSION ......................................................................................25

CERTIFICATES OF COMPLIANCE AND SERVICE .........................28

ADDENDUM .........................................................................................29

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Aymette v. State*,
  21 Tenn. 154 (1840) ...................................................................................21

*Beauharnais v. Illinois*,
  343 U.S. 250 (1952) ...................................................................................17

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) ........................................................................8

*Chiafalo v. Washington*,
  140 S. Ct. 2136 (2020) ........................................................................ 14-15

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..........................................................................*passim*

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) .....................................................................14

*Friedman v. City of Highland Park*,
  784 F.3d 406 (7th Cir. 2015) ............................................................... 15-16

*Gould v. Morgan*,
  907 F.3d 659 (1st Cir. 2018) ........................................................................1

*Guedes v. ATF*,
  920 F.3d 1 (D.C. Cir. 2019) .........................................................................8

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) ....................................................22, 24, 25

*Kodak v. Holder*,
  342 Fed. App'x 907 (4th Cir. 2009) .............................................................6

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ........................................................................2, 18

*National Rifle Ass'n v. Bondi*,
   61 F.4th 1317 (11th Cir. 2023).....................................................14, 23

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S. Ct. 2111 (2022) ...................................................................*passim*

*NLRB v. Noel Canning*,
   573 U.S. 513 (2014) ............................................................................15

*Ocean State Tactical, LLC v. State of Rhode Island*,
   2022 WL 17721175 (D.R.I. Dec. 14, 2022)......................................... 3, 11-12, 20

*Roth v. United States*,
   354 U.S. 476 (1957) ............................................................................16

*State v. Reid*,
   1 Ala. 612 (1840)..................................................................................24

*United States v. Booker*,
   644 F.3d 12 (1st Cir. 2011) ..................................................................15

*United States v. Rene E.*,
   583 F.3d 8 (1st Cir. 2009) ....................................................................17

*United States v. Stevens*,
   559 U.S. 460 (2010) ............................................................................16

*Worman v. Healey*,
   922 F.3d 26 (1st Cir. 2019) ................................................................3, 21, 23, 24

## Constitutional Provisions and Federal Statutes

Public Safety and Recreational Firearms Use Protection Act,
   Pub. L. No. 103-322, 108 Stat. 1998 (1994) ..........................................5

iii

National Firearms Act of 1934,
  Pub. L. No. 73-474, 48 Stat. 1236 (1934) ............................................22

U.S. Const. amend. I ...............................................................................16

U.S. Const. amend. II...................................................................*passim*

U.S. Const. amend. XIV .........................................................................14

18 U.S.C. § 921(a)(3)................................................................................8

18 U.S.C. § 921(a)(6)..............................................................................10

18 U.S.C. § 921(a)(8)..............................................................................10

18 U.S.C. §§ 921(a)(17)(B)-(C)................................................................6

18 U.S.C. § 921(a)(24)..........................................................................8, 9

18 U.S.C. § 921(a)(31)..............................................................................5

18 U.S.C. § 922(a)(4)..............................................................................10

18 U.S.C. §§ 922(a)(7)-(8)........................................................................6

18 U.S.C. § 922(o) ................................................................................8, 9

18 U.S.C. § 922(w) ...................................................................................5

26 U.S.C. § 5841(a) .................................................................................8

26 U.S.C. § 5845(a)(7)..............................................................................8

26 U.S.C. § 5845(b) .............................................................................8, 9

26 U.S.C. § 5861 .....................................................................................8

## State Statutes

### *Alabama*
1837 Ala. Laws 7, ch. 77, § 2.....................................................21
1839 Ala. Laws 67, ch. 77, § 1 ..................................................21
Ala. Code § 13A-11-54 ..............................................................11
Ala. Code § 13A-11-60(a) ............................................................6

### *Alaska*
Alaska Stat. Ann. § 11.61.200(a)(3)...................................8, 9, 10
Alaska Stat. Ann. § 11.61.200(c) ..................................................8
Alaska Stat. Ann. § 11.61.200(h)(1)(B) ........................................8
Alaska Stat. Ann. § 11.61.200(h)(1)(C) ........................................9
Alaska Stat. Ann. § 11.61.200(h)(1)(D) ......................................10

### *Arizona*
Ariz. Rev. Stat. Ann. § 13-3101(A)(8)(a)(ii) ................................8
Ariz. Rev. Stat. Ann. § 13-3101(A)(8)(a)(iii) ...............................9
Ariz. Rev. Stat. Ann. § 13-3101(A)(8)(a)(iv) ..............................10
Ariz. Rev. Stat. Ann. § 13-3102(A)(3)..............................8, 9, 10
Ariz. Rev. Stat. Ann. § 17-251 .....................................................8

### *Arkansas*
W. Ball, Revised Statutes of the State of Arkansas, Adopted
at the October Session of the General Assembly of Said State,
A.D. 1837, § 13, 280 (1838)........................................................21
1881 Ark. Acts 191, no. 96, § 3 ..................................................22

### *California*
1933 Cal. Stat. 1169 ...................................................................23
Cal. Penal Code § 16570 ..............................................................7
Cal. Penal Code § 16660 ..............................................................6
Cal. Penal Code § 16740 ..............................................................5
Cal. Penal Code § 18735 ..............................................................7
Cal. Penal Code § 24410 ............................................................11
Cal. Penal Code § 30210 ..............................................................7
Cal. Penal Code § 30315 ..............................................................6
Cal. Penal Code § 30320 ..............................................................6
Cal. Penal Code §§ 30500-30515................................................10

Cal. Penal Code § 30530 ..................................................................................10
Cal. Penal Code § 30600 ..................................................................................10
Cal. Penal Code § 30605 ..................................................................................10
Cal. Penal Code § 30610 ..................................................................................10
Cal. Penal Code § 32310 ....................................................................................5
Cal. Penal Code § 32625 ....................................................................................9
Cal. Penal Code § 32900 ....................................................................................8
Cal. Penal Code § 33210 ..................................................................................10
Cal. Penal Code § 33215 ..................................................................................10
Cal. Penal Code § 33410 ....................................................................................8

**Colorado**

Colo. Rev. Stat. § 18-12-102 ....................................................................8, 9, 10
Colo. Rev. Stat. § 18-12-301 ..............................................................................6
Colo. Rev. Stat. § 18-12-302 ..............................................................................6
Colo. Rev. Stat. § 18-12-303 ..............................................................................6

**Connecticut**

1832 Conn. Acts 391, ch. 25 ............................................................................19
Conn. Gen. Stat. § 53-202 ..................................................................................9
Conn. Gen. Stat. §§ 53-202a-202c ..................................................................10
Conn. Gen. Stat. § 53-202*l*(a)(1) ......................................................................6
Conn. Gen. Stat. § 53-202*l*(a)(2) ......................................................................7
Conn. Gen. Stat. §§ 53-202*l*(b)-(c) ..............................................................6, 7
Conn. Gen. Stat. § 53-202w(a)(1) ......................................................................5
Conn. Gen. Stat. § 53-206g ................................................................................8
Conn. Gen. Stat. § 53a-211 ..........................................................................8, 10

**The District of Columbia**

An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other
Dangerous Weapons in the District of Columbia, Pub. L. No. 72-275, 47 Stat.
650 (1932) ........................................................................................................22
D.C. Code Ann. § 7-2501.01(3A) ....................................................................10
D.C. Code Ann. § 7-2501.01(8A) ....................................................................10
D.C. Code Ann. § 7-2501.01(10) ......................................................................9
D.C. Code Ann. § 7-2501.01(13A)(A)(i) ..........................................................6
D.C. Code Ann. § 7-2501.01(13A)(A)(iii) ........................................................7
D.C. Code Ann. § 7-2501.01(15) ....................................................................10
D.C. Code Ann. § 7-2501.01(17) ....................................................................10

D.C. Code Ann. § 7-2502.01 ........................................................9, 10
D.C. Code Ann. § 7-2502.02(a)(1) ......................................................10
D.C. Code Ann. § 7-2502.02(a)(2) ........................................................9
D.C. Code Ann. § 7-2502.02(a)(3) ......................................................10
D.C. Code Ann. § 7-2502.02(a)(6) ......................................................10
D.C. Code Ann. § 7-2502.02(a)(7) ......................................................10
D.C. Code Ann. § 7-2506.01(a)(3) ....................................................6, 7
D.C. Code Ann. § 7-2506.01(b) .............................................................5
D.C. Code Ann. § 22-4514(a) ...............................................................8

**Delaware**
Del. Code tit. 11, § 1444(a)(3) ..............................................................8
Del. Code tit. 11, § 1444(a)(4) ............................................................10
Del. Code tit. 11, § 1444(a)(5) ..............................................................9
Del. Code tit. 11, § 1444(a)(6) ..............................................................8
Del. Code tit. 11, § 1444(b)(1) ....................................................8, 9, 10
Del. Code tit. 11, § 1444(b)(2) ..............................................................8
Del. Code tit. 11, §§ 1465-1466(a) ......................................................10
Del. Code tit. 11, § 1468 .......................................................................6
Del. Code tit. 11, § 1469(a) ..................................................................6

**Florida**
1838 Fla. Laws 36, no. 24, § 1 ...........................................................21
Fla. Stat. § 790.001(9) ..........................................................................9
Fla. Stat. §§ 790.001(10)-(11) .............................................................10
Fla. Stat. § 790.31(1)(a) ........................................................................6
Fla. Stat. § 790.31(1)(b) ........................................................................7
Fla. Stat. § 790.31(1)(d) ........................................................................7
Fla. Stat. § 790.31(1)(e) ........................................................................7
Fla. Stat. § 790.31(1)(f) .........................................................................7
Fla. Stat. §§ 790.31(2)(a)-(c) ............................................................6, 7
Fla. Stat. § 790.221 ..........................................................................9, 10
Fla. Stat. § 790.222 ...............................................................................8

**Georgia**
1837 Ga. Acts. 90, § 1 ........................................................................21
Ga. Code Ann. § 16-11-121(2) ..............................................................9
Ga. Code Ann. §§ 16-11-121(4)-(5) .....................................................10
Ga. Code Ann. § 16-11-121(7) ..............................................................8

Ga. Code Ann. § 16-11-122 ........................................................8, 9, 10

Ga. Code Ann. § 16-11-124(4)........................................................9, 10

*Hawaiʻi*

Haw. Rev. Stat. Ann. § 134-1................................................................8, 10

Haw. Rev. Stat. Ann. § 134-4..................................................................10

Haw. Rev. Stat. Ann. § 134-8(a) ..............................................6, 7, 8, 9, 10

Haw. Rev. Stat. Ann. § 134-8(c) ..............................................................5

Haw. Rev. Stat. Ann. § 134-8.5 ................................................................8

*Illinois*

An Act to Regulate the Sale, Possession and Transportation of Machine Guns,
1931 Ill. Laws 452, no. 18, §§ 1-2 ..........................................................23

720 Ill. Comp. Stat. 5/24-1(a)(6)..............................................................8

720 Ill. Comp. Stat. 5/24-1(a)(7)..........................................................9, 10

720 Ill. Comp. Stat. 5/24-1(a)(11)............................................................7

720 Ill. Comp. Stat. 5/24-1(a)(14)............................................................8

720 Ill. Comp. Stat. 5/24-1(a)(15)-(16).....................................................10

720 Ill. Comp. Stat. 5/24-1.9....................................................................10

720 Ill. Comp. Stat. 5/24-1.9(a)(6).............................................................7

720 Ill. Comp. Stat. 5/24-1.9(b)................................................................7

720 Ill. Comp. Stat. 5/24-1.9(c)................................................................7

720 Ill. Comp. Stat. 5/24-1.10..................................................................6

720 Ill. Comp. Stat. 5/24-2.1................................................................6, 7

720 Ill. Comp. Stat. 5/24-2.2................................................................6, 7

720 Ill. Comp. Stat. 5/24-3.1(a)(6)...........................................................7

*Indiana*

1819 Ind. Acts 39 ....................................................................................21

Ind. Code Ann. §§ 35-47-5-8 to 35-47-5-10 ..............................................9

Ind. Code Ann. § 35-47-5-11.5 ................................................................6

*Iowa*

Iowa Code § 724.1(a) ..............................................................................9

Iowa Code § 724.1(1)(f) ...........................................................................7

Iowa Code § 724.1B ................................................................................8

Iowa Code § 724.1C ..............................................................................10

Iowa Code § 724.2....................................................................................7

Iowa Code § 724.3................................................................................7, 9

Iowa Code § 724.29 ..................................................................8

**Kansas**
Kan. Stat. Ann. § 21-6301(a)(4) ...............................................8
Kan. Stat. Ann. § 21-6301(a)(5) ..........................................9, 10
Kan. Stat. Ann. § 21-6301(a)(6) ...............................................6

**Kentucky**
Ky. Rev. Stat. Ann. § 237.060(7) ..............................................6
Ky. Rev. Stat. Ann. § 237.080 ...................................................6

**Louisiana**
1932 La. Acts 336, no. 80, § 1 .................................................23
La. Rev. Stat. Ann. §§ 40:1751-40:1752 .....................................9
La. Rev. Stat. Ann. §§ 40:1810-40:1812 .....................................6

**Maine**
1821 Maine Laws 98, ch. 25 ....................................................19
Me. Rev. Stat. Ann. tit. 17-A, §§ 1051-1052 ..............................9
Me. Rev. Stat. Ann. tit. 17-A, § 1056 ........................................6

**Maryland**
Md. Code Ann., Crim. Law § 4-301 .......................................8, 10
Md. Code Ann., Crim. Law § 4-303 ..........................................10
Md. Code Ann., Crim. Law § 4-305(b) .........................................5
Md. Code Ann., Crim. Law § 4-305.1(a) ......................................8
Md. Code Ann., Crim. Law §§ 4-401 to 4-405 ..............................9

**Massachusetts**
1771-72 Mass. Province Laws 167, ch. 9 ...................................19
1782 Mass. Acts 119, ch. 46 ...................................................19
1882 Mass. Acts 212, ch. 269 .................................................19
Mass. Gen. Laws ch. 140, § 121 ...................................5, 8, 9, 10
Mass. Gen. Laws ch. 140, § 131(o) .........................................8, 9
Mass. Gen. Laws ch. 140, § 131M ..........................................5, 10
Mass. Gen. Laws ch. 140, § 131N ............................................11
Mass. Gen. Laws ch. 269, § 10A ................................................8
Mass. Gen. Laws ch. 269, § 10(c) .......................................8, 9, 10

*Michigan*
An Act to Regulate and License the Selling, Purchasing, Possessing and
Carrying of Certain Firearms, 1927 Mich. Pub. Acts 888, no. 372, § 3 .............22
Mich. Comp. Laws § 750.224(1)(a) ......................................................................9
Mich. Comp. Laws § 750.224(1)(b) ......................................................................8
Mich. Comp. Laws § 750.224(3)(c) ...................................................................8, 9
Mich. Comp. Laws § 750.224b ...........................................................................10
Mich. Comp. Laws § 750.224c .............................................................................6
Mich. Comp. Laws § 750.224e .............................................................................8

*Minnesota*
1933 Minn. Laws 231, ch. 190, § 1 .....................................................................22
Minn. Stat. § 609.67 ....................................................................................8, 9, 10

*Missouri*
Mo. Rev. Stat. § 571.020(1.4) ...............................................................................7
Mo. Rev. Stat. § 571.020(1.6)(a).........................................................................9
Mo. Rev. Stat. § 571.020(1.6)(b) ........................................................................10
Mo. Rev. Stat. § 571.020(1.6)(c).........................................................................8

*Montana*
Mont. Code Ann. §§ 45-8-302 to 45-8-304 .........................................................9
Mont. Code Ann. § 45-8-337 ...............................................................................8
Mont. Code Ann. § 45-8-340 ..............................................................................10

*Nebraska*
Neb. Rev. Stat. § 28-1203 ...............................................................................9, 10

*Nevada*
Nev. Rev. Stat. Ann. § 202.273.............................................................................6
Nev. Rev. Stat. Ann. § 202.274.............................................................................8
Nev. Rev. Stat. Ann. § 202.275...........................................................................10
Nev. Rev. Stat. Ann. § 202.350(1)(b) .................................................................8, 9

*New Hampshire*
1825 N.H. Laws 73, ch. 61 ..................................................................................19

*New Jersey*
N.J. Stat. Ann. § 2C:39-1(c)(3) ...........................................................................10

N.J. Stat. Ann. § 2C:39-1(c)(5) ....................................................10
N.J. Stat. Ann. § 2C:39-1(g) ..........................................................8
N.J. Stat. Ann. § 2C:39-1(i) ...........................................................9
N.J. Stat. Ann. § 2C:39-1(o) .........................................................10
N.J. Stat. Ann. § 2C:39-1(y) ..........................................................5
N.J. Stat. Ann. §§ 2C:39-1(ee)-(ff) .................................................8
N.J. Stat. Ann. § 2C:39-1(gg) .........................................................6
N.J. Stat. Ann. § 2C:39-1(hh) .......................................................11
N.J. Stat. Ann. § 2C:39-3(a) .........................................................10
N.J. Stat. Ann. § 2C:39-3(b) .........................................................10
N.J. Stat. Ann. § 2C:39-3(c) ...........................................................8
N.J. Stat. Ann. § 2C:39-3(f) ........................................................6, 7
N.J. Stat. Ann. § 2C:39-3(j) ............................................................5
N.J. Stat. Ann. § 2C:39-3(*l*) ...........................................................8
N.J. Stat. Ann. § 2C:39-3(m) ........................................................11
N.J. Stat. Ann. § 2C:39-5(a) ...........................................................9
N.J. Stat. Ann. § 2C:39-9(a) ...........................................................9

**New York**
1772 N.Y. Laws 682, ch. 1549 ......................................................19
1784 N.Y. Laws 627, ch. 28 ..........................................................19
N.Y. Penal Law § 265.00(22) .......................................................10
N.Y. Penal Law § 265.01(7) ...........................................................7
N.Y. Penal Law § 265.02(2) ........................................................8, 9
N.Y. Penal Law § 265.02(6) .........................................................11
N.Y. Penal Law § 265.02(7) .........................................................10
N.Y. Penal Law § 265.02(8) ...........................................................5

**North Carolina**
N.C. Gen. Stat. § 14-34.3 ..............................................................6
N.C. Gen. Stat. § 14-288.8 ....................................................8, 9, 10

**North Dakota**
N.D. Cent. Code § 62.1-02-03 ......................................................10
N.D. Cent. Code § 62.1-05-01 ....................................................8, 9

**Ohio**
Ohio Rev. Code Ann. § 2923.11(K)(1) ........................................9, 10
Ohio Rev. Code Ann. § 2923.11(K)(5) ............................................8

Ohio Rev. Code Ann. § 2923.17 ....................................................9, 10
Ohio Rev. Code Ann. § 2923.17(A) ...................................................8
Ohio Rev. Code Ann. § 2923.17(C)(5) ..............................................8

*Oklahoma*
Okla. Stat. tit. 21, §§ 1289.19-1289.22 .............................................6

*Oregon*
2022 Oregon Ballot Measure 114, § 11 .............................................5
Or. Rev. Stat. § 166.272 .......................................................8, 9, 10

*Pennsylvania*
18 Pa. Cons. Stat. Ann. § 908 ...............................................8, 9, 10

*Rhode Island*
1927 R.I. Pub. Laws 256, ch. 1052, §§ 1, 4 ....................................22
R.I. Gen. Laws § 11-47-2(3) ...........................................................8
R.I. Gen. Laws §§ 11-47-2(15) to 11-47-2(16) ...............................10
R.I. Gen. Laws § 11-47-2(19) .........................................................8
R.I. Gen. Laws § 11-47-8(a) ............................................................9
R.I. Gen. Laws § 11-47-8(b) ..........................................................10
R.I. Gen. Laws § 11-47-8(d) ...........................................................8
R.I. Gen. Laws § 11-47-8.1 .............................................................8
R.I. Gen. Laws § 11-47-20 ..............................................................8
R.I. Gen. Laws § 11-47-20.1 ...........................................................6
R.I. Gen. Laws § 11-47.1-2 ..............................................2-3, 5, 11
R.I. Gen. Laws § 11-47.1-3 ..............................................2-3, 5, 11

*South Carolina*
S.C. Code Ann. §§ 16-23-230 to 16-23-250 ...............................9, 10
S.C. Code Ann. § 16-23-520 ...........................................................6

*South Dakota*
S.D. Codified Laws § 22-1-2(8) ..............................................8, 9, 10
S.D. Codified Laws § 22-1-2(17) .....................................................8
S.D. Codified Laws § 22-1-2(23) .....................................................9
S.D. Codified Laws § 22-1-2(46) ...................................................10
S.D. Codified Laws § 22-14-6 ................................................8, 9, 10

*Tennessee*

1821 Tenn. Acts 15, ch. 13 ................................................................21
1837-38 Tenn. Acts 200, ch. 137 .....................................................21
1852 Tenn. Acts 246, ch. 169 ...........................................................19
1879 Tenn. Acts 135, ch. 96 .............................................................22
Tenn. Code Ann. § 39-17-1302(a)(3) .................................................9
Tenn. Code Ann. § 39-17-1302(d) ......................................................9
Tenn. Code Ann. § 39-17-1304(b) ......................................................7

*Texas*

Tex. Penal Code § 46.01(9) ................................................................9
Tex. Penal Code § 46.01(10) .............................................................10
Tex. Penal Code § 46.01(12) ..............................................................6
Tex. Penal Code § 46.05(a)(1)(B) .......................................................9
Tex. Penal Code § 46.05(a)(1)(C) ......................................................10
Tex. Penal Code § 46.05(a)(2) ............................................................6

*Vermont*

1923 Vt. Acts and Resolves 930, ch. 235, § 5711 .............................23
Vt. Stat. Ann. tit. 13, § 4010 ..............................................................8
Vt. Stat. Ann. tit. 13, § 4021 ..............................................................6
Vt. Stat. Ann. tit. 13, § 4022 ..............................................................8

*Virginia*

1838 Va. Acts 76, ch. 101 .................................................................21
1934 Va. Acts 137, ch. 96 .................................................................22
Va. Code §§ 18.2-288 to 18.2-298 ......................................................9
Va. Code Ann. § 18.2-308.5:1 ............................................................8

*Virgin Islands*

V.I. Stat. tit. 14, §§ 2256(b)-(c) .......................................................6, 7

*Washington*

Wash. Rev. Code § 9.41.0001 ...........................................................10
Wash. Rev. Code § 9.41.010(2) .........................................................10
Wash. Rev. Code § 9.41.010(5) ...........................................................8
Wash. Rev. Code § 9.41.010(22) .........................................................5
Wash. Rev. Code § 9.41.010(29) .........................................................9
Wash. Rev. Code §§ 9.41.010(41)-(42) ..............................................10

Wash. Rev. Code § 9.41.190 ...................................................................9, 10
Wash. Rev. Code § 9.41.220 ........................................................................8
Wash. Rev. Code § 9.41.240 ......................................................................10
Wash. Rev. Code § 9.41.250(1)(c) ...............................................................8
Wash. Rev. Code § 9.41.370 ........................................................................5

*West Virginia*
W. Va. Code § 61-7-9 .................................................................................9

*Wisconsin*
Wis. Stat. § 941-28 ....................................................................................10
Wis. Stat. § 941.26(1g)(a) ...........................................................................9
Wis. Stat. § 941-298 ....................................................................................8

## Rules and Regulations

Fed. R. App. P. 29(a)(2) ...............................................................................1

27 C.F.R. 447.11 ..........................................................................................8

27 C.F.R. 478.11 ..........................................................................................8

27 C.F.R. 479.11 ..........................................................................................8

## Miscellaneous

J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP.
PROBS. 400 (1934) .....................................................................................24

S. Calabresi & S. Agudo, *Individual Rights Under State Constitutions When the Fourteenth Amendment was Ratified in 1868: What Rights Are Deeply Rooted in History and Tradition?*, 87 TEX. L. REV. 7 (2008) ...............................14

S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487 (2004) .......................... 18, 20

H.R. Rep. No. 103-489 (1994) .....................................................................3

xiv

R. Spitzer, *Gun Law History in the United States and Second Amendment Right*, 80 LAW & CONTEMP. PROBS. 55 (2017) ...............................................18, 22

C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741 (1993)...........17, 18

Las Vegas Metropolitan Police Department, Criminal Investigative Report of the 1 October Mass Casualty Shooting (Aug. 3, 2018) .......................25

## INTERESTS OF THE AMICI STATES

The *Amici* States—Massachusetts, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaiʻi, Illinois, Maryland, Michigan, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Vermont, Washington, and Wisconsin—have "compelling governmental interests in both public safety and crime prevention." *Gould v. Morgan*, 907 F.3d 659, 673 (1st Cir. 2018), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In furtherance of those interests, and pursuant to Fed. R. App. P. 29(a)(2), we submit this brief to explain why Rhode Island's limitation on the size of ammunition magazines that may be purchased and possessed within its borders is wholly consistent with the Second Amendment to the United States Constitution.

"[F]ew interests are more central to a state government than protecting the safety and well-being of its citizens." *Gould*, 907 F.3d at 673. The *Amici* States bear the solemn responsibility of ensuring the safety of the public and private spaces—the schools, grocery stores, houses of worship, and commercial centers—that make up the fabric of daily life in a free and democratic society. We work every day to promote our residents' health, welfare, and sense of security, including by taking steps to curb the threat of gun violence that harms our residents and inhibits their exercise of constitutionally protected freedoms.

Exercising our police powers in service of these goals, we have adopted a

range of measures that regulate weapons and weapon accessories, while at the same time ensuring that our residents have access to weapons for individual self-defense. Although the substance of our regulations differs, we share the firm conviction that our Constitution allows States the tools to address gun violence in a manner that is tailored to individual States' needs and consistent with our Nation's historical traditions. In accordance with these objectives, the *Amici* States urge this Court to affirm the District Court's conclusion that Rhode Island's limitation on the size of ammunition magazines within its State comports with the Constitution.

## SUMMARY OF THE ARGUMENT

The Second Amendment is "'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Bruen*, 142 S. Ct. at 2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Recognizing that "reasonable firearms regulations" can coexist comfortably with the Second Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality op.), the States have adopted a variety of restrictions, including prohibitions, on weapons and weapons accessories that are not in common use for self-defense. This case concerns one such law: in 2022, Rhode Island adopted a measure that prohibits the possession and sale of ammunition magazines capable of holding more than ten rounds of ammunition, referred to here as "large-capacity magazines" or "LCMs," for semiautomatic firearms. R.I. Gen. Laws §§ 11-47.1-2,

11-47.1-3. Like similar laws around the country that impose restrictions, including bans, on certain types of accessories, ammunition, and weapons themselves, Rhode Island's statute preserves the right of law-abiding, responsible citizens to use firearms for self-defense. *See Worman v. Healey*, 922 F.3d 26, 37 (1st Cir. 2019), *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111 (Massachusetts's comparable "restriction on … LCMs does not heavily burden the core right of self-defense"). Rhode Island's law, which does not limit access to ten-round magazines or semiautomatic weapons, regulates only those large-capacity magazines that "make it possible to fire a large number of rounds without re-loading, then to reload quickly when those rounds are spent," so that "a single person with a single [semiautomatic] weapon can easily fire literally hundreds of rounds within minutes." H.R. Rep. No. 103-489, at 19 (1994).

The District Court correctly concluded, under the framework for assessing Second Amendment claims clarified by the Supreme Court in *Bruen*, that the plaintiffs-appellants' challenge to Rhode Island's statute is not likely to succeed on the merits. *Ocean State Tactical, LLC v. Rhode Island*, No. 22-cv-246 JJM-PAS, 2022 WL 17721175, at *5-16 (D.R.I. Dec. 14, 2022). That conclusion should be affirmed. While large-capacity magazines are not "Arms" under the plain text of the Second Amendment, *id.* at *11-15, Rhode Island's law is also constitutional because it is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*,

142 S. Ct. at 2126. From the Founding era through Reconstruction and into the early-to mid-twentieth century, States and the federal government have restricted the manner in which ammunition may be stored and used, such that Americans have long been subject to limits on firepower, while still retaining access to ammunition for self-defense. Similarly, over the past three centuries, States and the federal government have restricted novel forms of weaponry that pose unique dangers to public safety. These analogous traditions amply justify Rhode Island's measured imposition of a magazine-capacity limitation today.

## ARGUMENT

I.    **To Promote the Safety and Well-Being of Our Residents, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapon Accessories and Weapons Not Commonly Used for Self-Defense.**

The Supreme Court has long been clear that the Second Amendment "extends only to certain types of weapons." *Heller*, 554 U.S. at 623-25 (explaining that "the Second Amendment does not protect … short-barreled shotguns"). States and the federal government retain latitude to regulate categories of weapons and weapon accessories, including by restricting public carry of, or by banning the possession and sale of, weapons that are not commonly used for self-defense and that pose a threat to our communities. Indeed, the Court has recognized the constitutionality of laws banning categories of weapons—among them, "M-16 rifles and the like"—because certain "type[s] of weapon[s]" are simply "not eligible for Second Amendment protection." *Id.* at 621-22, 627 (emphasis removed).

4

Consistent with that guidance, States have adopted a range of laws that impose restrictions, including prohibitions, on certain categories of weapons and accessories. Laws like Rhode Island's, which restrict accessories that cannot by themselves be used for offensive or defensive purposes, but that do enhance the lethality of weapons, dot the national landscape. Fourteen States and the District of Columbia restrict the size of ammunition magazines that may be used with semiautomatic weapons, while allowing for possession and sale of smaller-capacity magazines. Like the federal law that regulated large-capacity magazines from 1994 to 2004,[1] ten jurisdictions—California, Connecticut, the District of Columbia, Maryland, Massachusetts, New Jersey, New York, Oregon, Rhode Island, and Washington—prohibit handgun and long-gun magazines capable of holding more than 10 rounds, with limited exceptions.[2] Hawaiʻi sets a capacity limit for handguns at 10 rounds.[3] Colorado sets a capacity limit for handguns and long guns at 15 rounds, while, under certain circumstances, Delaware sets its capacity limit for

---

[1] Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1998-2000, codified at 18 U.S.C. §§ 921(a)(31), 922(w) (2000).

[2] Cal. Penal Code §§ 16740, 32310; Conn Gen. Stat. § 53-202w(a)(1); D.C. Code § 7-2506.01(b); Md. Code Ann., Crim. Law § 4-305(b); Mass. Gen. Laws ch. 140, §§ 121, 131M; N.J. Stat. Ann. §§ 2C:39-1(y), 2C:39-3(j); N.Y. Penal Law § 265.02(8); 2022 Oregon Ballot Measure 114, § 11; R.I. Gen. Laws §§ 11-47.1-2, 11-47.1-3; Wash. Rev. Code §§ 9.41.010(22), 9.41.370.

[3] Haw. Rev. Stat. Ann. § 134-8(c).

handguns and long guns at 17 rounds.[4] Illinois and Vermont prohibit magazines capable of holding more than 10 rounds for long guns and more than 15 rounds for handguns.[5]

States and the federal government also restrict the type and size of ammunition that can be purchased or possessed. While all States allow for robust access to ammunition, at least 26 jurisdictions prohibit especially dangerous forms of ammunition. Nineteen States, the District of Columbia, the U.S. Virgin Islands, and the federal government prohibit the possession and/or sale of armor-piercing bullets, a type of handgun ammunition designed to penetrate metal or armor that poses a "great risk … to law enforcement officers." *Kodak v. Holder*, 342 Fed. App'x 907, 909 (4th Cir. 2009).[6] Eight States and the U.S. Virgin Islands prohibit ammunition

---

[4] Colo. Rev. Stat. §§ 18-12-301, 302, 303; Del. Code Ann. tit. 11, §§ 1468, 1469(a).

[5] 720 Ill. Comp. Stat. 5/24-1.10; Vt. Stat. Ann. tit. 13, § 4021.

[6] 18 U.S.C. §§ 921(a)(17)(B)-(C), 922(a)(7)-(8); Ala. Code § 13A-11-60(a); Cal. Penal Code §§ 16660, 30315, 30320; Conn. Gen. Stat. §§ 53-202*l*(a)(1), (b)-(c); D.C. Code Ann. §§ 7-2501.01(13A)(A)(i), 7-2506.01(a)(3); Fla. Stat. §§ 790.31(1)(a), (2)(a)-(c); Haw. Rev. Stat. Ann. § 134-8(a); 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2; Ind. Code Ann. § 35-47-5-11.5; Kan. Stat. Ann. § 21-6301(a)(6); Ky. Rev. Stat. Ann. §§ 237.060(7), 237.080; La. Rev. Stat. Ann. §§ 40:1810-40:1812; Me. Rev. Stat. Ann. tit. 17-A, § 1056; Mich. Comp. Laws § 750.224c; Nev. Rev. Stat. Ann. § 202.273; N.J. Stat. Ann. §§ 2C:39-1(gg), 2C:39-3(f); N.C. Gen. Stat. § 14-34.3; Okla. Stat. tit. 21, §§ 1289.19-1289.22; R.I. Gen. Laws § 11-47-20.1; S.C. Code Ann. § 16-23-520; Tex. Penal Code §§ 46.01(12), 46.05(a)(2); V.I. Stat. tit. 14, §§ 2256(b)-(c).

designed to explode, detonate, or segment upon impact.[7] California, Connecticut, Illinois, and the District of Columbia prohibit certain forms of large-caliber ammunition, used with 50- or 60-caliber weapons,[8] while New Jersey prohibits hollow-point bullets, designed to expand in their target on impact.[9] Other States prohibit certain forms of shotgun ammunition: Florida, Illinois, and Iowa ban "Dragon's breath" shells, which are used to simulate a flamethrower by making shotguns spew fireballs or columns of flames,[10] and Florida and Illinois ban bolo shells, designed as two or more metal balls connected by a metal wire.[11] California, Florida, and Illinois likewise prohibit Flechette shells, which are expelled from guns as pieces of metal wire or dart-like projectiles.[12]

Other weapon accessories are restricted across the country. For example, 17 States, the District of Columbia, and the federal government ban bump stocks,

---

[7] Cal. Penal Code § 30210; Fla. Stat. §§ 790.31(1)(b), (2)(a)-(c); Haw. Rev. Stat. Ann. § 134-8(a); 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-3.1(a)(6); Iowa Code §§ 724.1(1)(f), 724.3; Mo. Rev. Stat. § 571.020(1.4); N.Y. Penal Law § 265.01(7); Tenn. Code Ann. § 39-17-1304(b); V.I. Stat. tit. 14, §§ 2256(b)-(c).

[8] Cal. Penal Code § 18735; Conn. Gen. Stat. §§ 53-202*l*(a)(2), (b)-(c); D.C. Code Ann. §§ 7-2501.01(13A)(A)(iii), 7-2506.01(a)(3); 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-1.9(a)(6), (b), (c) (possession ban effective Jan. 1, 2024).

[9] N.J. Stat. Ann. § 2C:39-3(f).

[10] Fla. Stat. §§ 790.31(1)(d), (2)(a)-(c); 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2; Iowa Code §§ 724.1(1)(f), 724.2, 724.3.

[11] Fla. Stat. §§ 790.31(1)(e), (2)(a)-(c); 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2.

[12] Cal. Penal Code §§ 16570, 30210; Fla. Stat. §§ 790.31(1)(f), (2)(a)-(c); 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2.

trigger cranks, binary triggers, rapid-fire trigger activators, or other devices used to enhance the rate of fire of a semiautomatic weapon to approximate an automatic rate of fire.[13] Silencers or suppressors, used to muffle the sound of a gun when it fires, are banned in eight states and the District of Columbia[14] and subject to restrictions or registration requirements by the federal government and 20 more States.[15]

---

[13] 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b); 27 C.F.R. 447.11, 478.11, 479.11; Cal. Penal Code § 32900; Conn. Gen. Stat. § 53-206g; Del. Code tit. 11, §§ 1444(a)(6), (b)(2); D.C. Code Ann. § 22-4514(a); Fla. Stat. § 790.222; Haw. Rev. Stat. Ann. § 134-8.5; 720 Ill. Comp. Stat. 5/24-1(a)(14); Iowa Code § 724.29; Md. Code Ann., Crim. Law §§ 4-301, 4-305.1(a); Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c); Mich. Comp. Laws § 750.224e; Minn. Stat. § 609.67; Nev. Rev. Stat. Ann. § 202.274; N.J. Stat. Ann. §§ 2C:39-1(ee)-(ff), 2C:39-3(*l*); R.I. Gen. Laws §§ 11-47-2(3), (19), 11-47-8(d), 11-47-8.1; Vt. Stat. Ann. tit. 13, § 4022; Va. Code Ann. § 18.2-308.5:1; Wash. Rev. Code §§ 9.41.010(5), 9.41.220. Courts have split on the lawfulness of the federal regulations construing the statutory term "machine gun" to include bump stocks. *See Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), *cert. petn. pending*, No. 22-976; *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 789 (2020).

[14] Cal. Penal Code § 33410; Del. Code tit. 11, §§ 1444(a)(3), (b)(1); D.C. Code Ann. § 22-4514(a); Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a); 720 Ill. Comp. Stat. 5/24-1(a)(6); Mass. Gen. Laws ch. 269, § 10A; N.J. Stat. Ann. §§ 2C:39-1(g), 2C:39-3(c); N.Y. Penal Law § 265.02(2); R.I. Gen. Laws § 11-47-20.

[15] 18 U.S.C. § 921(a)(3); 26 U.S.C. §§ 5841(a), 5845(a)(7), 5861; Alaska Stat. § 11.61.200(a)(3), (c), (h)(1)(B); Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(ii), 13-3102(A)(3), 17-251; Colo. Rev. Stat. § 18-12-102; Conn. Gen. Stat. § 53a-211; Ga. Code Ann. §§ 16-11-121(7), 16-11-122; Iowa Code § 724.1B; Kan. Stat. Ann. § 21-6301(a)(4); Mich. Comp. Laws §§ 750.224(1)(b), (3)(c); Mo. Rev. Stat. § 571.020(1.6)(c); Mont. Code Ann. § 45-8-337; Nev. Rev. Stat. Ann. § 202.350(1)(b); N.C. Gen. Stat. § 14-288.8; N.D. Cent. Code § 62.1-05-01; Ohio Rev. Code Ann. §§ 2923.11(K)(5), 2923.17(A), (C)(5); Or. Rev. Stat. § 166.272; 18 Pa. Cons. Stat. § 908; S.D. Codified Laws §§ 22-1-2(8), (17), 22-14-6; Vt. Stat. Ann. tit. 13, § 4010; Wash. Rev. Code § 9.41.250(1)(c); Wis. Stat. § 941-298.

Apart from laws that impose restrictions on weapon accessories, laws adopted by most States and the federal government also prohibit possession of certain types of weapons that are not useful for or commonly used in self-defense. Thirteen jurisdictions ban automatic-fire machine guns, subject to limited exceptions,[16] while another 26 States and the federal government ban machine guns manufactured after May 19, 1986, require registration of machine guns lawfully owned before that date, and/or impose other restrictions on machine guns.[17] Nine States and the District of Columbia prohibit semiautomatic assault weapons, a category defined differently across the States, but that typically includes the AR-15 and AK-47 style rifles with

---

[16] Cal. Penal Code § 32625; Colo. Rev. Stat. § 18-12-102; Del. Code tit. 11, § 1444(a)(5), (b)(1); D.C. Code Ann. §§ 7-2501.01(10), 7-2502.01, 7-2502.02(a)(2); Haw. Rev. Stat. Ann. § 134-8(a); 720 Ill. Comp. Stat. 5/24-1(a)(7)(i); Iowa Code §§ 724.1(a), 724.3; La. Rev. Stat. Ann. §§ 40:1751 to 40:1752; Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c); Minn. Stat. § 609.67; N.Y. Penal Law § 265.02(2); R.I. Gen. Laws § 11-47-8(a); Wis. Stat. § 941.26(1g)(a).

[17] 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b); Alaska Stat. Ann. § 11.61.200(a)(3), (h)(1)(C); Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iii), 13-3102(A)(3); Conn. Gen. Stat. § 53-202; Fla. Stat. §§ 790.001(9), 790.221; Ga. Stat. §§ 16-11-121(2), 16-11-122, 16-11-124(4); Ind. Code Ann. §§ 35-47-5-8 to 35-47-5-8-10; Kan. Stat. Ann. § 21-6301(a)(5); Me. Rev. Stat. Ann. tit. 17-A, § 1051-1052; Md. Code Ann. §§ 4-401 to 4-405; Mich. Comp. Laws §§ 750.224(1)(a), (3)(c); Mo. Rev. Stat. § 571.020(1.6)(a); Mont. Code Ann. §§ 45-8-302 to 45-8-304; Neb. Rev. Stat. § 28-1203; Nev. Rev. Stat. Ann. § 202.350(1)(b); N.J. Rev. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a); N.C. Gen. Stat. § 14-288.8; N.D. Cent. Code § 62.1-05-01; Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17; Or. Rev. Stat. § 166.272; 18 Pa. Cons. Stat. Ann. § 908; S.C. Code Ann. §§ 16-23-230 to 16-23-250; S.D. Codified Laws §§ 22-1-2(8), (23), 22-14-6; Tenn. Code Ann. § 39-17-1302(a)(3), (d); Tex. Penal Code §§ 46.01(9), 46.05(a)(1)(B); Va. Code §§ 18.2-288 to 18.2-298; Wash. Rev. Code §§ 9.41.010(29), 9.41.190; W. Va. Code § 61-7-9.

combat capabilities so ubiquitous in mass shootings.[18] Nine States and the District of Columbia also prohibit short-barreled shotguns or rifles,[19] while the federal government and 22 other States impose restrictions on those weapons.[20] And multiple jurisdictions prohibit 50-caliber and other high-caliber rifles,[21] as well as

---

[18] Cal. Penal Code §§ 30500-30515, 30600, 30605; Conn. Gen. Stat. §§ 53-202a-202c; Del. Code tit. 11, §§ 1465-1466(a); D.C. Code Ann. §§ 7-2501.01(3A), 7-2502.01, 7-2502.02(a)(6); Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8(a); 720 Ill. Comp. Stat. 5/24-1.9; Md. Code Ann., Crim. Law §§ 4-301, 4-303; Mass. Gen. Laws ch. 140, §§ 121, 131M; N.Y. Penal Law §§ 265.00(22), 265.02(7); Wash. Rev. Code §§ 9.41.0001, 9.41.010(2), 9.41.240 (2023 Wash. Sess. Laws, ch. 162, § 1).

[19] Cal. Penal Code §§ 33210, 33215; Colo. Rev. Stat. § 18-12-102; Del. Code tit. 11, § 1444(a)(4), (b)(1); D.C. Code Ann. §§ 7-2501.01(15), (17), 7-2502.01, 7-2502.02(a)(1), (a)(3); Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a); 720 Ill. Comp. Stat. 5/24-1(a)(7)(ii); Mass. Gen. Laws ch. 140, § 121; Mass. Gen. Laws ch. 269, § 10(c); Minn. Stat. § 609.67; N.J. Stat. Ann. §§ 2C:39-1(o), 2C:39-3(b); R.I. Gen. Laws §§ 11-47-2(15) to 11-47-2(16), 11-47-8(b).

[20] 18 U.S.C. §§ 921(a)(6), 921(a)(8), 922(a)(4); Alaska Stat. Ann. § 11.61.200(a)(3), (h)(1)(D); Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iv), 13-3102(A)(3); Conn Gen. Stat. § 53a-211; Fla. Stat. §§ 790.001(10)-(11), 790.221; Ga. Stat. §§ 16-11-121(4)-(5), 16-11-122, 16-11-124(4); Iowa Code § 724.1C; Kan. Stat. Ann. § 21-6301(a)(5); Mich. Comp. Laws § 750.224b; Mo. Rev. Stat. § 571.020(1.6)(b); Mont. Code Ann. §§ 45-8-340; Neb. Rev. Stat. § 28-1203; Nev. Rev. Stat. Ann. § 202.275; N.C. Gen. Stat. § 14-288.8; N.D. Cent. Code § 62.1-02-03; Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17; Or. Rev. Stat. § 166.272; 18 Pa. Cons. Stat. Ann. § 908; S.C. Code Ann. §§ 16-23-230 to 16-23-250; S.D. Codified Laws §§ 22-1-2(8), (46), 22-14-6; Tex. Penal Code §§ 46.01(10), 46.05(a)(1)(C); Wash. Rev. Code §§ 9.41.010(41)-(42), 9.41.190; Wis. Stat. § 941-28.

[21] Cal. Penal Code §§ 30530, 30600, 30610; D.C. Code Ann. §§ 7-2501.01(8A), 7-2502.01, 7-2502.02(a)(7); 720 Ill. Comp. Stat. 5/24-1(a)(15)-(16), 5/24-1.9; N.J. Stat. Ann. §§ 2C:39-1(c)(3), (5), 2C:39-3(a).

guns hidden in canes and other covert weapons.[22]

All told, across our country today, States and the federal government impose restrictions, including prohibitions, on a diverse array of dangerous weapons and weapon accessories. Rhode Island's law restricting the capacity of magazines that may be used with semiautomatic weapons is of a piece with this tapestry of regulation and, as discussed below, a long history of governmental efforts to deter violence and promote public safety.

## II. Rhode Island's Restriction on Magazine Capacity Comports Fully with the Second Amendment.

Against the backdrop of broad state regulation of unusually dangerous weapons and accessories, and in light of mounting deaths and injuries from gun violence, Rhode Island chose in 2022 to prohibit large-capacity magazines for semiautomatic firearms, while preserving access to magazines that hold up to ten rounds of ammunition. R.I. Gen. Laws §§ 11-47.1-2, 11-47.1-3. That choice was constitutional.

The *Amici* States agree with the District Court and Rhode Island that the plaintiffs-appellants did not, and cannot, meet their burden to show that large-capacity magazines are "Arms" under the plain text of the Second Amendment. *See Ocean State Tactical*, 2022 WL 17721175, at *11-15; Rhode Island Br. 19-30.

---

[22] Ala. Code § 13A-11-54; Cal. Penal Code § 24410; Mass. Gen. Laws ch. 140, § 131N; N.J. Stat. Ann. §§ 2C:39-1(hh), 2C:39-3(m); N.Y. Penal Law § 265.02(6).

Magazines are containers for ammunition, not themselves weapons, and there is no evidence that magazines capable of holding more than ten rounds are integral to the functioning of any weapon. *Ocean State Tactical*, 2022 WL 17721175, at *12-13. Large-capacity magazines are, moreover, not commonly used or suitable for self-defense. *Id.* at *14-15. For these reasons alone, this Court can and should affirm the District Court.

Should the Court nevertheless consider whether Rhode Island's law is "consistent with this Nation's historical tradition of firearm regulation," *Bruen*, 142 S. Ct. at 2126, it should likewise affirm. The *Amici* States emphasize two points that bear on this historical inquiry. First, under *Heller* and *Bruen*, nineteenth- and twentieth-century history is relevant to assessing the constitutionality of state laws that implicate the text of the Second Amendment. Second, Rhode Island's restriction on magazine capacity is well supported by, and analogous to, longstanding governmental restrictions on the amount of ammunition that may be stored in containers for use in firearms, and on emergent weapons that are unusually dangerous as compared with ordinary weapons of self-defense.

### A. Nineteenth- and Twentieth-Century History Bears on Whether a State Law Is Consistent with a Historical Tradition of Firearm Regulation.

When "the Second Amendment's plain text covers an individual's conduct," restrictions on weapons are constitutional if the government can demonstrate that

12

such restrictions are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30.  While the Supreme Court has left open the question whether a court should "primarily" look to Founding-era or Reconstruction-era history in evaluating the nation's traditions, *id.* at 2138, the logic and methodology of *Bruen* and *Heller* compel the conclusion that courts must consider the broad sweep of our country's history—including nineteenth- and twentieth-century history—when reviewing the constitutionality of a state law.

In both *Heller* and *Bruen*, the Supreme Court conducted a thorough examination of eighteenth- and nineteenth-century statutes and case law in assessing the constitutionality of the challenged laws. *See Bruen*, 142 S. Ct. at 2142-56; *Heller*, 554 U.S. at 600-19. Throughout, the Court made clear that post-ratification history is not only relevant, but also a "critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605; *Bruen*, 142 S. Ct. at 2136 (same). *Heller* conducted an extensive review of post-ratification sources from 1803 to 1891, *see* 554 U.S. at 605-19, and *Bruen* did likewise through 1890, *see* 142 S. Ct. at 2145-54. *Heller* stressed the importance of post-ratification history to elucidate "the public understanding of a legal text in the period after its enactment or ratification," and took pains to distinguish post-ratification history, which it endorsed, from "postenactment legislative history," which it dismissed as a "contradiction in terms." 554 U.S. at 605 (emphasis removed).

13

This comprehensive approach accords with governing first principles. States are "bound to respect the right to keep and bear arms because of the Fourteenth Amendment," ratified in 1868, "not the Second" Amendment, ratified in 1791. *Bruen*, 142 S. Ct. at 2137. The public understanding of the scope of constitutional rights shared by those who adopted the Fourteenth Amendment must therefore carry significant weight in the historical analysis. *See Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."); S. Calabresi & S. Agudo, *Individual Rights Under State Constitutions When the Fourteenth Amendment was Ratified in 1868: What Rights Are Deeply Rooted in History and Tradition?*, 87 TEX. L. REV. 7, 115-16 (2008) ("[T]he question is controlled not by the original meaning of the first ten Amendments in 1791 but instead by the meaning those texts and the Fourteenth Amendment had in 1868."). Thus, before and after *Bruen*, courts have recognized that, for most cases involving state laws, "the more appropriate barometer is the public understanding of the right when the States ratified the Fourteenth Amendment." *National Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1323 (11th Cir. 2023); *accord Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011).

*Bruen* also explained that "'a regular course of practice can liquidate & settle the meaning of disputed or indeterminate terms & phrases' in the Constitution." 142 S. Ct. at 2136 (quoting *Chiafalo v. Washington*, 140 S. Ct. 2136, 2326 (2020)). A

governmental practice not directly contrary to the text of the Constitution may thus "'guide [a court's] interpretation of an ambiguous constitutional provision,'" particularly where the practice "'has been open, widespread, and unchallenged since the early days of the Republic.'" *Id.* at 2137 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in the judgment)). *Bruen* itself offered an example of such liquidation: while the Second Amendment's text does not speak directly to the constitutionality of laws prohibiting firearms in sensitive places, the Court was "aware of no disputes regarding the lawfulness of" such laws during the eighteenth and nineteenth centuries, so the Court "assume[d] it settled that" governments can constitutionally prohibit firearms in certain sensitive places. 142 S. Ct. at 2133.

Twentieth-century history bears on the historical inquiry for the same reason. While twentieth-century history that "contradicts earlier evidence" is less probative, *id.* at 2154 n.28, the Court has relied on twentieth-century history in its Second Amendment rulings. In *Heller*, for example, the Court characterized laws that originated in the twentieth century—among them, laws banning people with felony convictions or mental illness from possessing weapons—as "longstanding" and "presumptively lawful." 554 U.S. at 626-27 & n.26; *see United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011) ("[T]he modern federal felony firearm disqualification law … is firmly rooted in the twentieth century."). Similarly, "*Heller* deemed a ban

on private possession of machine guns to be obviously valid," but "states didn't begin to regulate private use of machine guns until 1927." *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015). The presumptive lawfulness of these twentieth-century measures, which are not inconsistent with the text of the Constitution or with earlier historical evidence, was reaffirmed by a majority of the Court in *Bruen*. *See* 142 S. Ct. at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).

*Bruen* and *Heller* also "repeatedly compared the right to keep and bear arms" to the right to free speech, noting that "the government must generally point to *historical* evidence about the reach of the First Amendment's protections." *Id.* at 2130 (citing *United States v. Stevens*, 559 U.S. 460, 468-71 (2010)) (emphasis in original). When analyzing whether categories of speech fall outside the scope of the First Amendment, the Supreme Court has looked beyond Founding-era history to laws and practices that predominated in the nineteenth and twentieth centuries. In holding obscene speech unprotected by the First Amendment, for example, the Court looked to "the international agreement of over 50 nations," "the obscenity laws of all of the 48 States," and "the 20 obscenity laws enacted by the Congress from 1842 to 1956." *Roth v. United States*, 354 U.S. 476, 484-85 (1957). Similarly, in concluding that libel enjoys no such protection, the Court focused not only on

16

colonial-era criminal codes and legal developments in the decades after ratification, but also on the contemporary criminal codes of the States. *Beauharnais v. Illinois*, 343 U.S. 250, 254-56 (1952).

This Court thus may, and should, continue considering nineteenth- and twentieth-century practice in assessing Second Amendment claims. *See United States v. Rene E.*, 583 F.3d 8, 13-16 (1st Cir. 2009) (canvassing nineteenth- and twentieth-century history in upholding ban on juvenile possession of handguns).

### B. Rhode Island's Restriction on Magazine Capacity Is Relevantly Similar to the Historical Practices of Regulating the Storage of Ammunition and Imposing Restrictions on New, and Distinctly Dangerous, Forms of Weaponry.

Laws like Rhode Island's that restrict magazine capacity derive from a long tradition of regulating weapons, ammunition, and accoutrements. Two types of historical enactments carry prime relevance here: gunpowder storage laws and laws restricting novel, and uniquely dangerous, weapons.

To determine whether a challenged statute is consistent with a historical tradition of firearms regulation, *Bruen* explained, courts must reason by analogy. 142 S. Ct. at 2131-32. Cases like this that implicate "unprecedented societal concerns or dramatic technological changes" demand a "nuanced" approach to analogical reasoning, one that looks to whether, over the course of history, there have existed "relevantly similar" analogues. *Id.* at 2132 (citing C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 (1993)). While the Court did not

"provide an exhaustive survey of the features that render regulations relevantly similar," it made clear that "*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33 (stressing that "individual self-defense is the *central component* of the Second Amendment right" (quotation marks omitted)). In applying these metrics, courts must bear in mind that the analogical inquiry is not a "regulatory straightjacket," and a modern-day regulation need not be a "dead ringer for historical precursors" to be "analogous enough to pass constitutional muster." *Id.* at 2133.[23]

From the colonial period through the nineteenth century, States and municipalities adopted measures that, like Rhode Island's, limited the amount of gunpowder or ammunition that could be kept in one place or one container. *See* S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 511 (2004) ("Limits on the amount of gunpowder a person could possess were common and typically in the range of twenty to thirty pounds."); R. Spitzer, *Gun Law History in the United States and*

---

[23] That nuanced approach accords with how analogical reasoning is described in the scholarly sources upon which *Bruen* relied. *See* 142 S. Ct. at 2132. For example, as Cass Sunstein's study explained, analogical reasoning is similar to common-law reasoning, with "the important advantage of allowing a large degree of openness to new facts and perspectives." Sunstein, *supra*, at 782. Furthermore, as a methodology, analogical reasoning "promotes moral evolution over time." *Id.* at 791.

*Second Amendment Right*, 80 LAW & CONTEMP. PROBS. 55, 80-81 (2017) (summarizing gunpowder storage laws). A 1783 Massachusetts law imposed a fine on "any Person" who "shall take into any Dwelling-House, Stable, Barn, Out-house, Ware-house, Store, Shop, or other Building, within the Town of Boston, any … Fire-Arm, loaded with, or having Gun-Powder." 1782 Mass. Acts 119, ch. 46. In 1784, New York required separating gunpowder in the home "into four stone jugs or tin cannisters, which shall not contain more than seven pounds each." Act of Apr. 13, 1784, ch. 28, 1784 N.Y. Laws 627, 627. Throughout the 1780s, Pennsylvania laws "required that gunpowder be stored on the highest story of the home" in certain towns. *Heller*, 554 U.S. at 686 (Breyer, J., dissenting). Similar gunpowder-storage laws were adopted well into the nineteenth century, and the *Amici* States are not aware of court decisions invalidating them. *E.g.*, 1882 Mass. Acts 212, ch. 269 (requiring registration of any gunpowder in excess of one pound stored in any building); 1771-72 Mass. Province Laws 167, ch. 9 (requiring all gunpowder imported into Massachusetts to be stored in two public magazines, in Boston and Watertown); *see also* 1832 Conn. Acts 391, ch. 25; 1825 N.H. Laws 73, ch. 61; 1821 Maine Laws 98, ch. 25; 1772 N.Y. Laws 682, ch. 1549; 1852 Tenn. Acts 246, ch. 169.

These gunpowder storage antecedents are relevantly similar to Rhode Island's magazine-capacity limit in how and why they burden the right to armed self-defense.

19

With respect to how: both sets of laws limit the quantity of ammunition that may be kept in one location or one type of container, thereby restricting the amount of firepower that can be generated, but do not ban an entire class of arms or effectively prohibit citizens from carrying firearms for self-defense. *Contrast Bruen*, 142 S. Ct. at 2156; *Heller*, 554 U.S. at 628. Rhode Island's magazine restriction is, in fact, *less* restrictive than many of these antecedents, because it limits only the number of rounds in any single magazine, not the amount of ammunition or the number of magazines a gun owner may possess.

The gunpowder-storage laws and Rhode Island's magazine-capacity limitation are also relevantly similar in why they burden the right to armed self-defense: they seek to forestall tragedy wrought by aggregations of ammunition far in excess of what is needed for self-defense. *See* Cornell & DeDino, *supra*, at 512 (the gunpowder storage laws "were clearly crafted to meet the needs of public safety, but they also provided a check on the creation of a private arsenal"); *Ocean State Tactical*, 2022 WL 17721175, at *17 (Rhode Island's law aims to address "the ultra-lethal pathogen of mass murders—shootings in which multiple people are killed and, often, dozens of others injured"). Reflecting the measured nature of these enactments, the Supreme Court has recognized that gunpowder-storage laws "do not remotely burden the right of self-defense as much as an absolute ban on handguns," *Heller*, 554 U.S. at 632, and this Court has similarly explained that laws banning

20

large-capacity magazines do "not heavily burden the core right of self-defense," because using a large-capacity magazine for that purpose would be "tantamount to using a sledgehammer to crack open the shell of a peanut," *Worman*, 922 F.3d at 37.

Rhode Island's magazine-capacity restriction is also relevantly similar to the longstanding practice of regulating novel, and unusually dangerous, weapons and accessories that contributed to crime without a corresponding utility for self-defense. This regulatory practice followed a predictable pattern: first, new weapons technologies were developed; second, they spread into society and created a public safety threat; and third, governments began enacting regulations to dampen weapons-related criminality and violence. In the first decades of the nineteenth century, States increasingly began imposing restrictions on weapons like Bowie knives[24] and pocket pistols[25] that were contributing to rising murder rates. *See Aymette v. State*, 21 Tenn. 154, 158 (1840) (in upholding law banning sale and concealed carry of Bowie knives, distinguishing between protected weapons and "weapons which are usually employed in private broils, and which are efficient only

---

[24] *See, e.g.*, 1837 Ga. Acts. 90, § 1; Ch. 77, § 2, 1837 Ala. Laws 7, 7; No. 24 § 1, 1838 Fla. Laws 36, 36; Ch. 137, §§ 1-2, 1837-38 Tenn. Acts 200; Ch. 101, § 1, 1838 Va. Acts 76, 76; Ch. 77, § 1, 1839 Ala. Laws 67, 67.

[25] *See, e.g.*, 1819 Ind. Acts 39; 1821 Tenn. Acts ch. 13, p. 15; W. Ball, Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, § 13, 280 (1838); Ch. 101, § 1, 1838 Va. Acts 76, 76.

in the hands of the robber and the assassin"). Many of the laws prohibited concealed carry of these weapons, and some, like Arkansas's and Tennessee's postbellum statutes regulating pocket pistols, likewise banned sales. *See* An Act to Prevent the Sale of Pistols, ch. 96, § 1, 1879 Tenn. Acts 135-36; 1881 Ark. Acts 191, no. 96, § 3.

During the 1920s and 1930s, the Nation witnessed a new wave of regulation of emergent weapons that threatened public safety. During this era, "at least twenty-eight States enacted anti-machine gun laws," which prohibited or regulated automatic-fire weapons. Spitzer, *supra*, at 67. Similarly, Congress enacted the first nationwide firearms regulation statute, the National Firearms Act of 1934, to restrict machine guns, short-barreled shotguns, and other dangerous weapons. *See* Pub. L. No. 73-474. During these decades, at least eight jurisdictions also banned semiautomatic weapons shortly after they began to proliferate, typically in the same legislation that established the accepted tradition of banning machine guns. *Heller v. District of Columbia*, 670 F.3d 1244, 1270 (D.C. Cir. 2011) ("*Heller II*") (Kavanaugh, J., dissenting) (machine guns "have traditionally been banned").[26] In

---

[26] *See* An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, no. 372 § 3, 1927 Mich. Pub. Acts 888, 888-89; Ch. 1052 §§ 1, 4, 1927 R.I. Pub. Laws 256, 256-57; An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other Dangerous Weapons in the District of Columbia, Pub. L. No. 72-275, 47 Stat. 650, 650 (1932); Ch. 190, § 1, 1933 Minn. Laws 231, 232; Ch. 96, 1934 Va. Acts 137-40.

the same era, regulations limiting magazine capacity were also common: twenty-three States imposed some limitation, typically restricting the number of rounds to between five and eighteen.[27]

Rhode Island's magazine-capacity limitation is relevantly similar to this tradition of regulating unusually dangerous weapons and accessories. With respect to how the enactments affect the right to self-defense: both types of measures regulate specific dangerous weapons or accessories used for criminal and other violent purposes, rather than standard weapons of self-defense. The analogical reasoning prescribed by *Bruen* does not require that a historical tradition be the same "type" of regulation as the modern one, nor does it suggest that the only analogue for a weapon-specific ban is another weapon-specific ban. Rather, *Bruen* and *Heller* both relied on the *degree* of burden when evaluating proposed historical analogues. *See Bruen*, 142 S. Ct. at 2145 (examining whether analogues imposed a comparably "substantial burden"); *Heller*, 554 U.S. at 632 (similar); *see also Bondi*, 61 F.4th at 1325 (analogues burdened right "more severely" and "to an even greater extent" than challenged statute). Rhode Island's magazine-capacity limitation imposes, at most, a negligible burden on the right to self-defense, *see Worman*, 922 F.3d at 37, just as

---

[27] *See, e.g.*, 1933 Cal. Stat. 1169, 1170; No. 80, § 1, 1932 La. Acts 336, 337; An Act to Regulate the Sale, Possession and Transportation of Machine Guns, no. 18, §§ 1-2, 1931 Ill. Laws 452-53; An Act to Prohibit the Use of Machine Guns and Automatic Rifles in Hunting, ch. 235, § 5711, 1923 Vt. Acts and Resolves 930.

the tradition of regulating specific and particularly dangerous weapons used for criminality likewise did not meaningfully burden self-defense capabilities.

The purpose of Rhode Island's statute is also relevantly similar to the purpose of this tradition of regulation: to enhance public safety in the face of new weapon technology that has threatened, or already inflicted, significant harm on American citizens. The Bowie-knife restrictions of the early 1800s, for example, were intended "to promote personal security, and to put down lawless aggression and violence." *State v. Reid*, 1 Ala. 612, 617 (1840). And the early twentieth-century regulation of machine guns and semiautomatic weapons stemmed from concern over the "growth of armed gangsterism [that] resulted in the use of more deadly weapons by criminals." J. Brabner-Smith, *Firearm Regulation*, 1 Law & Contemp. Probs. 400, 405 (1934). Modern-day laws restricting magazine capacity are likewise a response to the proliferation of LCMs in a contemporary form of lawlessness and violence: mass public shootings. Attacks with large-capacity magazines result in "more shots fired, persons wounded, and wounds per victim than do other gun attacks." *Heller II*, 670 F.3d at 1263 (cleaned up). Unsurprisingly, semiautomatic rifles "equipped with LCMs have been the weapons of choice in many of the deadliest mass shootings in recent history." *Worman*, 922 F.3d at 39. Scores of large-capacity magazines were recovered from the scene of the Las Vegas shooting, for example, after the shooter used them to spray a staggering 1,057 bullets into the concertgoers below over the

course of ten minutes.[28]

In choosing to restrict the capacity of magazines within its borders, Rhode Island acted to prevent these harms, without correspondingly burdening the right to self-defense. *See Heller II*, 670 F.3d at 1264 ("the 2 or 3 second pause during which a criminal reloads his firearm can be of critical benefit to law enforcement" (cleaned up)). Its choice is consistent with a long tradition of relevantly similar historical antecedents, and it comports fully with the Second Amendment.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the order of the District Court denying the motion for a preliminary injunction.

Respectfully submitted,

ANDREA JOY CAMPBELL
    *Attorney General of Massachusetts*
Julie Green, 1st Cir. No. 93492
Grace Gohlke, 1st Cir. No. 1204282
    *Assistant Attorneys General*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2085
julie.green@mass.gov

Date: June 28, 2023

---

[28] Las Vegas Metropolitan Police Department, Criminal Investigative Report of the 1 October Mass Casualty Shooting 34-36, 96-107 (Aug. 3, 2018), https://tinyurl.com/yc2ewzh3.

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*The District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 West Randolph Street
Chicago, IL 60601

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA  17120

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

## CERTIFICATES OF COMPLIANCE AND SERVICE

### Certificate of Compliance with Rule 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 6,450 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ Grace Gohlke

### Certificate of Service

I hereby certify that on June 28, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. Counsel of record for all parties are registered as ECF Filers and will therefore be served by the CM/ECF system.

/s/ Grace Gohlke

# **ADDENDUM**

Because this Addendum consists exclusively of statutes submitted to the Court in accordance with Fed. R. App. P. 28(f), it is not subject to the 25-page limit set forth in First Circuit Local Rule 28.0(a)(2).

1771-72 Mass. Province Laws 167, ch. 9 ................................................ ADD-31

1772 N.Y. Laws 682, ch. 1549 .......................................................... ADD-35

1782 Mass. Acts 119, ch. 46 ............................................................ ADD-40

1784 N.Y. Laws 627, ch. 28 ............................................................ ADD-43

1819 Ind. Acts 39 ...................................................................... ADD-48

1821 Maine Laws 98, ch. 25 ............................................................ ADD-52

1821 Tenn. Acts 15, ch. 13 ............................................................ ADD-57

1825 N.H. Laws 73, ch. 61 ............................................................. ADD-61

1832 Conn. Acts 391, ch. 25 .......................................................... ADD-65

1837 Ala. Laws 7, ch. 77, § 2 ......................................................... ADD-68

W. Ball, Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, § 13, 280 (1838) .................................................. ADD-71

1837 Ga. Acts 90, § 1 ................................................................. ADD-76

1837-38 Tenn. Acts 200, ch. 137 ..................................................... ADD-80

1838 Fla. Laws 36, no. 24, § 1 ........................................................ ADD-84

1838 Va. Acts 76, ch. 101 ............................................................. ADD-87

1839 Ala. Laws 67, ch. 77, § 1 ........................................................ ADD-91

1852 Tenn. Acts 246, ch. 169 ......................................................... ADD-95

1879 Tenn. Acts 135, ch. 96 .......................................................... ADD-99

29

1881 Ark. Acts 191, no. 96, § 3 .................................................................. ADD-103

1882 Mass. Acts 212, ch. 269 .................................................................. ADD-107

1923 Vt. Acts and Resolves 930, ch. 235, § 5711 .................................. ADD-110

An Act to Regulate and License the Selling, Purchasing, Possessing and
    Carrying of Certain Firearms,
    1927 Mich. Pub. Acts 888, no. 372, § 3 ............................................ ADD-113

1927 R.I. Pub. Laws 256, ch. 1052, §§ 1, 4 .......................................... ADD-122

An Act to Regulate the Sale, Possession and Transportation of Machine
    Guns, 1931 Ill. Laws 452, no. 18, §§ 1-2 .......................................... ADD-131

An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other
    Dangerous Weapons in the District of Columbia,
    Pub. L. No. 72-275, 47 Stat. 650 (1932) .......................................... ADD-136

1932 La. Acts 336, no. 80, § 1 .............................................................. ADD-143

1933 Cal. Stat. 1169, 1170 .................................................................. ADD-149

1933 Minn. Laws 231, ch. 190, § 1 ...................................................... ADD-155

1934 Va. Acts 137, ch. 96 .................................................................. ADD-160

National Firearms Act of 1934,
    Pub. L. No. 73-474, 48 Stat. 1236 (1934) ........................................ ADD-166

# 1771-72
# (MASSACHUSETTS)

[1st Sess.]      Province Laws. — 1771–72.                    **167**

itants, in order to chuse such officers as, by law, towns are [e][*i*]pow-
ered to chuse in the month of March, annually; at which said first
meeting all the then present inhabitants shall be admitted to vote.
[*Passed July 4*\* ; *published July 5.*

---

## CHAPTER 8.

AN ACT FOR REVIVING AND CONTINUING AN ACT MADE TO PREVENT
DAMAGE BEING DONE ON THE LANDS CALLED NOBSCUSSET, IN THE
TOWNSHIP OF YARMOUTH.

Whereas the act made and passed in the thirtieth year of his      Preamble.
late majesty, King George the Second, intitled " An Act to prevent   1757–58, chap. 6.
damage being done on the lands lying in the township of Yarmouth,
called Nobscusset," which act has been found useful and beneficial,
is expired, —
    *Be it therefore enacted by the Governor, Council and House of
Representatives,*
    [Sect. 1.]    That the aforesaid act, and every clause, matter and   Act of 30th
thing therein contained, be and the same is, hereby, revived and shall   George II., re-
continue in force until the first day in July, which will be in the year   vived.
of our Lord one thousand seven hundred and eighty-one, and to the
end of the then next session of the general court, and no longer.
    *And be it further enacted,*
    [Sect. 2.]    That such person or persons as may have been chosen   Persons chosen
at the anniversary meeting of the inhabitants of the town of Yar-   at Yarmouth,
mouth, in March last, to see to the observance of said act and to   empowered.
prosecute the breakers thereof, or that may, at any time during the
continuance of the said hereby-revived act, be chosen or appointed
by said town for that purpose, are hereby as fully impowered (being
first sworn to the faithful discharge of such trust) to take effectual
care that said act be duly observed, and the transgressors thereof
duly prosecuted, as if said act had not expired ; and upon his or their
refusing to accept of and be sworn to such office or trust, shall be
subject to the same forfeiture, to be applied to the same use, as is
therein mentioned ; and upon such refusal the inhabitants of said
town may, and they are hereby, authorized to appoint another person
or persons to that trust, and so, *toties quoties*, during the continuance
of said act.    [*Passed July 4*\* ; *published July 5.*

---

## CHAPTER 9.

AN ACT FOR ERECTING TWO PUBLICK MAGAZINES FOR THE SAFE
KEEPING OF POWDER; THE ONE IN THE TOWN OF BOSTON, AND THE
OTHER IN THE TOWN OF WATERTOWN.

Whereas it is with good reason apprehended that the present situation   Preamble.
of the magazine or powder-house on the common or training-field in
Boston is unsafe for lodging and keeping the great quantities of gun-

\* Signed July 5, according to the record.

ADD-32

2    Document: 00118025275    Page: 49    Date Filed: 06/28/2023    Entry

powder which are commonly placed therein, and that it is also **expe-dient** to have another public magazine out of the town of Boston, in addition to that in Charlestown, —

*Be it therefore enacted by the Governor, Council and House of Representatives,*

Two powder-houses to be built; one in Boston, one in Watertown.

[SECT. 1.]    That two public[k] magazines, or powder-houses, be built of stone or brick, and suitably finished, as soon as may be, at the publick expence, fit for stor[e]ing and safe keeping of gunpowder; the one in the town of Boston, behind, or at the north-western end of, the hills on the northern side of the common, or training-field, there; and the other, within the town of Watertown, in the county of Middlesex, in such place in said town as may be agreed upon by a committee that may be appointed by the general assembly to build said magazine; and that from and after the finishing such new magazines, all the gunpowder in the present magazine[s] shall, without delay, at the

Powder to be removed as the commander-in-chief shall direct.

expence of the respective owners thereof, be removed from thence into one of the new magazines, or into both of them, or into the magazine at Charlestown, in such proportions as the commander-in-chief shall order; and that all the gunpowder which shall be imported and landed, in the port of Boston aforesaid, after finishing such new magazines, or either of them, shall be carried into and placed in one

Forfeiture, in case.

or both of them, or in the magazine at Charlestown, according to such order as aforesaid, and not el[e]s[e]where, on pain of forfeiting all such gunpowder as shall be lodged or kept in any other place; one moiety thereof to and for the use of this province, and the rest, to the informer; to be recovered by bill, plaint or information in any court of record in this province. And the owner or owners of such gunpowder shall also forfeit the sum of ten pounds for every half-barrel of such gunpowder, and after that rate for every greater quantity, lodged in any other place; to be recovered by action of debt, in any court proper for the trial thereof, by him that shall sue for the same:

Town stocks to be under the direction of the selectmen.

*saving, nevertheless,* that the ordinary town stocks of gunpowder, of each and every town or district within this province, may be placed and kept in any other suitable place or places, as the selectmen thereof, respectively, shall appoint; and that a quantity of gunpowder, not exceeding five-and-twenty pounds, may be kept in any shop for sale

Quantity that may be kept in private shops.

(provided it be kept in brass or tin tunnels): *saving,* likewise, all needful stocks and gunpowder for any fort, fortress or garrison within this province; which may, nevertheless, be lodged and kept in such fortress: *saving, also,* all such public[k], or provincial, stocks of gunpowder as by the commander-in-chief, for the time being, shall be ordered to be lodged in any other place or places.

*And be it further enacted,*

Keeper to be appointed by the commander-in-chief;

[SECT. 2.]    That a keeper shall, from time to time, be appointed by the commander-in-chief, [by] for each of the said magazines, who shall duly attend, each one, his respective magazine, at such hours and times as shall be directed and ordered by the commander-in-chief, for taking in and delivering out, all such gunpowder as shall, from time to time, be wanted by the respective owners thereof; and whose duty it shall be, in all respects, to take due care of all the gunpowder therein, for the preservation thereof, and not to neglect turning the

— his duty;

same, once [in] every month, at least, as long as it shall remain therein: and that no powder be taken in or delivered out, but between the hours of sun-rising and sun-s[i][e]tting.

*And be it further enacted,*

— his allowance.

[SECT. 3.]    That for all gunpowder which shall be put into the said magazines, or either of them, *saving* such as belong to the public

stock, there shall be paid into the hands of the respective keepers
thereof, for the use of the province, one shilling for each barrel, upon
receipt thereof ; and sixpence for each barrel, by the month, for three
months after the first month from the receipt thereof ; and fourpence
for each barrel, for every month afterwards ; as long as it shall remain
therein : which monies, to be received by the several keepers of the
said magazines, respectively, they shall each of them account for,
upon oath, to the commander-in-chief and the council ; and the same
shall be applied towards defr[e]aying the charges of keeping and
attending the said magazines, managing and taking due care of the
gunpowder therein ; and if there shall, at any time, be a deficiency
for those purposes, it shall be made up and paid out of the province
treasury ; and if, at any time, there should be a surplusage, it shall be
paid into the province treasury.   [*Passed and published July 5.*]

# 1772
# (NEW YORK)

as aforefaid; that evey fuch Perfon and Perfons, fhall forfeit *Three-pence per* Pound, for every Pound of Flax fo fold, contrary to this Act, and at and after that Rate for every greater Quantity, to be fued for and recovered by Action of Debt, with Cofts of Suit, in a fummary Way, by any Perfon who will fue for and profecute the fame before any Juftice of the Peace within the City of *New-York*, to be levied by Procefs, to be directed to either of the Conftables, or other proper Officer of the City, commanding them, or either of them, to levy the fame by Diftrefs and Sale of the Offenders Goods and Chattels; which Forfeiture when recovered as aforefaid, to be applied by the Perfon recovering the fame, to his or her own Ufe; and if any Perfon or Perfons, fhall prefume to counterfeit the Label or Mark of the faid Infpector, he, fhe, or they fo offending, fhall forfeit for every fuch Offence, the Sum of *Five Pounds,* to be fued for, recovered and applied in Manner aforefaid.

*And for counterfeiting Labels or Marks.*

IV. **And be it further Enacted,** That *Obadiah Wells,* fhall be, and hereby is appointed Infpector of Flax within the City of *New-York*; which faid Infpector before he does any Thing in Execution of the faid Office, fhall take an Oath before the Mayor or Recorder of the City of *New-York*, in the Words following, *to wit.* I A. B. *do fwear, that I will faithfully, truly and impartially, according to the beft of my Judgment, Skill and Underftanding, execute, do and perform, the Office and Duty of an Infpector and Examiner of Flax, according to the true Intent and Meaning of an Act, entitled,* An *Act* for the Infpection of Flax in the City of *New-York; and I will not directly or indirectly, buy or fell any Flax, during the Time I continue Infpector of the fame, except for the private Ufe of my Family.* So help me G O D. And if the Officer hereby appointed, fhall by any Accident be rendered incapable, or neglect to execute the faid Office, or mifbehave himfelf therein, or fhall happen to die, then and fo often, and from Time to Time, in fuch Cafes, it fhall and may be lawful, to and for the Mayor, Recorder, and Aldermen of the City of *New-York*, or the major Part of them, to fupply his Place by fome other fit and capable Perfon, who fhall thereupon be the Officer for putting this Act in Execution, until another be appointed by Act or Acts hereafter to be paffed for that Purpofe; which Officer fo appointed, fhall take the Oath abovementioned, have the fame Powers, and be liable to the fame Penalties, as the Officer particularly appointed by this Act; any Law, Ufage, or Cuftom to the contrary notwithftanding.

*Infpector's Oath.*

*If the Officer is rendered incapable of acting, the Mayor, &c. to appoint another.*

V. **Provided always, and be it Enacted** *by the Authority aforefaid,* That the faid Infpector fhall be obliged to procure a Houfe or Store proper for the Infpection of the faid Flax, to be fituated near the Water, between *Peck's* and *Burling-Slips,* in this City.

*Infpector to provide a Store near the Water.*

This Act to continue in Force, from the tenth Day of *April* next, until the firft Day of *February,* One thoufand feven hundred and feventy-four.

*Act of Force until 1ft Feb. 1774.*

---

C H A P. MDXLIX.

*An* A C T *to prevent the Danger arifing from the pernicious Practice of lodging Gun-Powder in Dwelling-Houfes, Stores, or other Places within the City of* New-York, *or on board of Veffels within the Harbour.* Pafs'd the 24th March, 1772.

WHEREAS the City of *New-York* has lately been greatly endangered by the ftoring of Gun-Powder to the Southward of *Frefh-Water,* contrary to Law, notwithftanding the Corporation have long fince provided a Powder-Houfe for that Purpofe.

*Preamble.*

I. **Be**

Digitized from Best Copy Available

## WILLIAM TRYON, Efq; Governor. 683

I. **Be it therefore Enacted** *by his Excellency the Governor, the Council, and the General Affembly, and it is hereby Enacted by the Authority of the fame,* That from and after the paffing of this Act, it fhall not be lawful for any Perfon or Perfons, other than Shop-keepers and Retailers of Gun-Powder, to have or keep in any Place within two Miles of the City-Hall of the faid City, more than Six Pounds of Gun-Powder, nor for Shop-keepers and Retailers more than Twenty-eight Pounds Weight of Gun-Powder, and that in four feparate Stone Jugs, or Leathern Bags, each of which fhall not contain more than Seven Pounds of Gun-Powder, upon Pain of forfeiting all fuch Gun-Powder ; and the Sum of *Forty Pounds* for every Hundred Weight, and in that Proportion for a greater or lefs Quantity ; and upon Pain of forfeiting all fuch Quantities which any Perfon may lawfully keep as aforefaid, and which fhall not be feparated as above directed, with full Cofts of Suit to any Perfon or Perfons who will inform and fue for the fame, by any Action, Bill, or Information, in any of his Majefty's Courts of Record in this Colony ; which Courts are hereby impowered and required to give fpecial Judgment in fuch Actions, Bills, or Informations to be brought upon this Act, as well for the Recovery of fuch Gun-Powder in Specie, as for the Penalty aforefaid, befides Cofts, and to award effectual Execution thereon.

*Retailers of Gun-powder not to keep more than 28 lb. within 2 Miles of the City-Hall, and other Perfons not more than 6 lb.*

*on Forfeiture of the Gun-powder, and alfo of £. 40, for each C. wt.*

II. **And be it further Enacted** *by the Authority aforefaid,* That it fhall be lawful for the Mayor or Recorder, or any two Juftices of the Peace of the City and County of *New-York,* upon Demand made by any one or more Houfholder or Houfholders, being an Inhabitant or Inhabitants of the faid City, within two Miles of the City-Hall of the faid City, affigning a reafonable Caufe of Sufpicion, on Oath ; of the Sufficiency of which Caufe the faid Mayor or Recorder, or Juftices, is and are to judge, to iffue his or their Warrant or Warrants, under his or their Hands and Seals, for fearching in the Day-Time for Gun-Powder within the Limits aforefaid, any fuch Building or Place whatfoever, or any fuch Ship or Veffel within twelve Hours after her Arrival and faftening to the Wharf, or to any other Ship or Veffel along Side of the Wharf or Key, of which Building, Place, Ship or Veffel fuch reafonable Caufe of Sufpicion fhall be affigned, on Oath, as aforefaid ; and that upon every or any fuch Search, it fhall be lawful for the Searchers or Perfons finding the fame, immediately to feize, and then, or at any Time within twelve Hours after fuch Seizure, to amove, or Caufe to be amoved, all fuch Gun-Powder as fhall be found within the Limits aforefaid, or on board of fuch Veffel as aforefaid, upon any fuch Search, exceeding the Quantity allowed by this Act, to fome proper Magazine, now or to be built for the Purpofe of Storing of Gun-Powder ; and the fame being fo amoved, it fhall be lawful to detain and keep the fame until it fhall be determined in one of his Majefty's Courts of Record of this Colony, whether the fame fhall be forfeited by Virtue of this Act ; and the Perfon or Perfons fo detaining the fame, fhall not in the mean Time be fubject or liable to any Action or Suit for the keeping or detaining the fame, until it fhall be determined, whether the fame be forfeited as aforefaid.

*Warrants to iffue to fearch Ships or Places where Gun-powder is fufpected to be lodged, contrary to this Act.*

*Power to feize and remove all above the Quantity allowed.*

*Perfons feizing, not fubject to any Suit for the Detenfion, until it fhall be determined whether forfeited or not.*

III. **Provided always, and be it Enacted** *by the fame Authority,* That nothing is this Act contained, fhall be conftrued to countenance or authorize any Perfon having fuch Warrant, to take Advantage of the fame, for ferving any civil Procefs of any kind whatfoever, but that all fuch Service fhall be abfolutely null and void.

*Service of civil Procefs at the Time of fearching, void.*

IV. **Provided**

Case: 23-1072    Document: 00118025275    Page: 54    Date Filed: 06/28/2023    Entry ID: 6576678

12th *GEORGE* III. A. D. 1772.

*No Suit to be maintained on this Act by Collusion with the Owners of the Gun-powder.*

IV. **Provided also, and it is hereby further enacted** *by the Authority aforesaid,* That it shall not be lawful for any Person or Persons interested in such Gun-Powder, or any Person or Persons by Collusion with the Owners or Proprietors thereof, to have or maintain any Action, Bill, or Information, upon this Act ; any Thing herein contained to the contrary notwithstanding.

*Not more than Five C. wt. to be carried at a Time, thro' the Streets.*

*and that to be covered with Bags or Leather Cases,*

*on Penalty of forfeiting the Gunpowder.*

*Act not to extend to Ships of War or the King's Stores.*

V. And for preventing the dangerous Carriage of Gun-Powder, in and through the Streets of the City of *New-York,* within two Miles of the City Hall of the said City : **Be it Enacted** *by the Authority aforesaid,* That from and after the passing of this Act, it shall not be lawful for any Person or Persons, to carry or convey in or through any of the Streets or Lanes within the Limits aforesaid, more than Five Hundred Pounds Weight of Gun-Powder at a Time ; and that all Gun-Powder which shall be carried or conveyed in any Carts or Carriages, or by Hand or otherwise, in or thro' any of the Streets or Lanes aforesaid, after the Time aforesaid, shall be in tight Casks, well headed and hooped, and shall be put into Bags or Cases of Leather, and intirely covered therewith, so as that no such Gun-Powder be spilt or scattered in the Passage thereof ; and if at any Time after the passing of this Act, any Gun-Powder shall be carried or conveyed by any Person or Persons, in or through any of the Streets or Lanes aforesaid, in any greater Quantity, or in any other Manner than as aforesaid, all such Gun-Powder shall be forfeited, and shall and may be seized by any Person or Persons, to his or their own Use and Benefit, the Person or Persons so offending, being thereof lawfully convicted before two Justices of the Peace. *Provided always,* That this Act or any Thing herein contained, shall not extend or be construed to extend in any wise, to affect any Ship of War, Storehouse, or Magazine belonging to his Majesty, his Heirs or Successors, wherein Gun-Powder or other Stores shall be kept, for the Use of the Public or the Powder House above-mentioned.

*General Issue.*

VI. **And be it further Enacted** *by the Authority aforesaid,* That if any Suit or Action shall be commenced or prosecuted against any Person or Persons, for any Thing done in Pursuance of this Act, in every such Case, such Person or Persons, shall and may plead the general Issue, and give this Act and the special Matter in Evidence, at any Tryal to be had thereupon, and that the same was done in Pursuance, or by the Authority of this Act ; and if a Verdict shall pass for the Defendant or Defendants, or the Plaintiff or Plaintiffs, shall become non-suit or discontinue his, her, or their Suit or Action after Issue joined, or if upon Demurrer or otherwise, Judgment shall be given against the Plaintiff or Plaintiffs, the Defendant or Defendants, shall and may recover treble Costs, and shall have the like Remedy for the same, as any Defendant or Defendants, hath or have in any other Case by Law.

*Limitations of Actions to be brought against Persons executing this Act.*

VII. **Provided always, and be it Enacted** *by the Authority aforesaid,* That all Suits, Actions, and Prosecutions to be brought, commenced or prosecuted against any Person or Persons, for any Thing done or to be done, in Pursuance or by Authority of this Act, shall be laid and tryed in the County where the Fact was committed, and shall be commenced and prosecuted without wilful Delay, within six Calendar Months next after the Fact committed, and not otherwise.

*Firemen may seize for their own Use, Gun-powder found during any Fire.*

VIII. **And be it further Enacted** *by the Authority aforesaid,* That if any Powder other than such Quantity as any Person by this Act, may lawfully keep in his Custody, shall be found during any Fire, or Alarm of Fire

Digitized from Best Copy Available

## WILLIAM TRYON, Esq; Governor.     685

Fire in the faid City, by any of the Firemen of the faid City, it fhall be lawful for him to feize the fame, without Warrant from a Magiftrate, and to hold and have the fame to his own Ufe; any Thing in this Act to the contrary notwithftanding.

This Act to be and continue of Force from the paffing thereof, until the Twenty-fifth Day of *March*, One Thoufand Seven Hundred and Seventy-four.

---

### C H A P. MDL.

*An* A C T *for the better Support of the Hofpital to be erected in the City of* New-York, *for fick and indigent Perfons.*

Pafs'd the 24th March, 1772.

WHEREAS his Majefty has been gracioufly pleafed by Letters Patent or Charter, under the Great Seal of this Colony, to eftablifh a Corporation under the Name of, *The Society of the Hofpital in the City of* NEW-YORK *in* AMERICA; for the benevolent Defign of healing fuch fick ..fons, who from their extreme Indigence, are become Objects of Charity. *And whereas* the faid Society have by their Petition to the General Affembly, not only fuggefted, that without the Aid of the Public, the Inftitution is in Danger of failing; but given the fulleft and moft explicit Affurances, that the Benefits thereof fhall not be denied to any poor difeafed Perfons, and that they mean to proceed uninfluenced by any contracted or partial Attachments, and without civil or religious Diftinctions of any Kind. *And whereas* a Society eftablifhed for Ends, fo laudable, and conducted by Principles fo generous, humane and benevolent, deferves the Encouragement of the Public;

*Preamble.*

I. **Be it therefore Enacted** *by his Excellency the Governor, the Council, and the General Affembly, and it is hereby Enacted by the Authority of the fame,* That the Treafurer of this Colony for the Time being, fhall, out of any Fund in the Treafury, pay, and he is hereby required to pay unto the Treafurer, for the Time being, of the faid Society of the Hofpital in the City of *New-York*, in *America*, the Sum of *Eight Hundred Pounds* annually, for and during the Term of Twenty Years, to be computed from the firft Day of *February* next; which Sum of *Eight Hundred Pounds*, fo to be paid, fhall become chargeable upon the Duty of Excife, laid or to be laid, on ftrong Liquors retailed in the City of *New-York*.

*£. 800, to be paid annually for 20 Years, chargeable on the Excife in* New-York, *for the Ufe of the Hofpital.*

II. **And be it alfo Enacted** *by the fame Authority,* That the Monies that may hereafter arife by the Duty of Excife to be laid on ftrong Liquors retailed in the feveral Cities, Counties, Towns, Boroughs, and Manors within this Colony, for and during the Term of Twenty Years, to be computed from the firft Day of *February* next, and not appropriated by this Act, fhall be paid by the Commiffioners to be appointed for collecting the Duty of Excife on ftrong Liquors retailed within this Colony, unto the Treafurer of the Counties feverally, where fuch Duty fhall be collected, to be annually difpofed of and applied to the Ufe of fuch Counties, in fuch Manner as the Majority of the Supervifors of the Counties refpectively, fhall think proper. *Provided always,* That if the Duty on Excife in. the City of *New-York*, fhould in any Year exceed the faid Sum of *Eight Hundred Pounds*, that fuch Excefs fhall be paid, and the Commiffioner to be

*The Excife in the other Counties appropriated to repairing Highways during 20 Years.*

8 L             appointed,

Digitized from Best Copy Available

# 1782
# (MASSACHUSETTS)

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the Authority of the same,* That a Sum not exceeding *Two Thousand Pounds* be raised by a Lottery or Lotteries, for and to the Purpose of re-building the said Mills; and that *John Pitts* and *John White,* Esquires, and Mr. *William Paine,* or any two of them, shall be Managers of the said Lottery or Lotteries, who shall be sworn to the faithful Performance of their Trust; which said Managers shall make and publish in such News Papers as they shall judge proper, a Scheme for the said Lottery or Lotteries, as soon as may be; and they shall also publish therewith all necessary Rules and Regulations for the Management thereof. And all Prizes which may be drawn in the said Lottery or Lotteries, shall be paid without any Deduction, provided they are demanded within Six Months after the Drawing of the said Lottery or Lotteries, otherwise the Money arising from such Prizes, shall be appropriated to the Purpose aforesaid.

*£2000 to be raised by Lottery.*

*Names of the Managers.*

*And be it further enacted,* That if any Person shall forge, counterfeit, or alter any Lottery Ticket issued by Virtue of this Act, or shall pass or utter any such forged, counterfeited or altered Ticket, knowing the same to be false, forged, counterfeited or altered, or shall advise or assist in forging, altering, or counterfeiting the same, every Person so offending, and being thereof convicted before the Supreme Judicial Court of this Commonwealth, shall be punished by being set on the Gallows for the Space of one Hour, with a Rope round his Neck, or shall pay a Fine not exceeding *One Hundred Pounds,* to the Use of this Commonwealth, or suffer not more than Twelve Months Imprisonment, nor less than Two, or be publicly whipped, not exceeding Thirty-nine Stripes, at the Discretion of the said Supreme Judicial Court, according to the Nature and Circumstances of the Offence.

*Persons guilty of Forgery.*

*Penalty.*

*February 26, 1783.*

---

### 1782. — Chapter 46.

[January Session, ch. 13.]

AN ACT IN ADDITION TO THE SEVERAL ACTS ALREADY MADE FOR THE PRUDENT STORAGE OF GUN POWDER WITHIN THE TOWN OF *BOSTON.*

*Chap.* 46

*Whereas the depositing of loaded Arms in the Houses of the Town of* Boston, *is dangerous to the Lives of those who*

*Preamble.*

Case: 23-1072    Document: 00118025275    Page: 58    Date Filed: 06/28/2023    Entry ID: 6576678

are disposed to exert themselves when a *Fire* happens to break out in the said *Town:*

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the Authority of the same,* That if any Person shall take into any Dwelling House, Stable, Barn, Out House, Ware House, Store, Shop, or other Building within the Town of *Boston,* any Cannon, Swivel, Mortar, Howitzer, Cohorn, or Fire Arm, loaded with, or having Gun Powder in the same, or shall receive into any Dwelling House, Stable, Barn, Out House, Store, Ware House, Shop, or other Building, within the said Town, any Bomb, Grenade, or other Iron Shell, charged with, or having Gun Powder in the same, such Person shall forfeit and pay the Sum of *Ten Pounds,* to be recovered at the Suit of the Firewards of the said Town, in an Action of Debt, before any Court proper to try the same ; one Moiety thereof to the Use of the said Firewards, and the other Moiety to the Support of the Poor of the Town of *Boston.*

*And be it further enacted by the Authority aforesaid,* That all Cannon, Swivels, Mortars, Howitzers, Cohorns, Fire Arms, Bombs, Granades, and Iron Shells of any Kind, that shall be found in any Dwelling House, Out House, Stable, Barn, Store, Ware House, Shop, or other Building, charged with, or having in them any Gun Powder, shall be liable to be seized by either of the Firewards of the said Town : And upon Complaint made by the said Firewards to the Court of Common Pleas, of such Cannon, Swivels, Mortars, or Howitzer, being so found, the Court shall proceed to try the Merits of such Complaint by a Jury ; and if the Jury shall find such Complaint supported, such Cannon, Swivel, Mortar, or Howitzer, shall be adjudged forfeit, and be sold at public Auction ; and one Half of the Proceeds thereof shall be disposed of to the Firewards, and the other Half to the Use of the Poor of the Town of *Boston.* And when any Fire Arms, or any Bomb, Granade, or other Shell, shall be found in any House, Out House, Barn, Stable, Store, Warehouse, Shop, or other Building, so charged, or having Gun Powder in the same, the same shall be liable to be seized in Manner aforesaid ; and on Complaint thereof, made and supported before a Justice of the Peace, shall be sold and disposed of as is above provided for Cannon.

*Be it further enacted,* That Appeals shall be allowed in Prosecutions upon this Act as is usual in other Cases.

*March 1, 1783.*

*Persons prohibited taking into their Dwellings, &c. any piece of Ordnance loaded with Gun Powder.*

*Penalty.*

*Pieces of Ordnance charged with Gun Powder found in any Dwelling-House, &c. liable to be seized.*

*How disposed of in Cases of Forfeiture.*

*Appeals allowed.*

# 1784
# (NEW YORK)




DATE DOWNLOADED: Mon Jun 26 17:22:49 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1784 627 .

ALWD 7th ed.
, , 1784 627 .

Chicago 17th ed.
"," New York - 7th Legislative Session : 627-629

AGLC 4th ed.
'' New York - 7th Legislative Session 627

OSCOLA 4th ed.
'' 1784 627          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
 Conditions of the license agreement available at
 *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

*And be it further enacted by the authority aforesaid* That whenever any person shall refuse to appear and make affidavit in pursuance of such summons, a warrant shall issue from such judge or magistrate to compel his appearance, and if on his appearance he shall refuse to make affidavit, or affirmation if a Quaker, of the fact which may be within his knowledge touching the matters in question, he shall be committed to the common gaol of the county, there to remain without bail or mainprise for the term of six callender months. <span style="float:right">Warrant against to issue witnesses refusing to appear.</span>

# CHAP. 27.

AN ACT to repeal an act entitled An act to revive and amend an act entitled an act more effectually to prevent robberies within this State.

PASSED the 10th of April, 1784.

*Be it enacted by the People of the State of New York, represented in Senate and Assembly, and it is hereby enacted by the authority of the same,* That the act entitled "An act to revive and amend an act entitled an act more effectually to prevent robberies within this State," passed the first day of July, one thousand seven hundred and eighty, shall be, and the same is hereby repealed. <span style="float:right">Act named repealed.</span>

# CHAP. 28.

AN ACT to prevent the danger arising from the pernicious practice of lodging gun powder in dwelling houses, stores, or other places within certain parts of the city of New York, or on board of vessels within the harbour thereof.

PASSED the 13th of April, 1784.

WHEREAS the storing of gun powder within the city of New York is dangerous to the safety thereof. <span style="float:right">Preamble.</span>

*Be it therefore enacted by the People of the State of New York, represented in Senate and Assembly, and it is hereby enacted by the authority of the same,* That from and after the passing of this act, it shall not be lawfull for any merchant, shopkeeper, or retailer, or any other person, or persons whatsoever, to have or keep any quantity of gun powder exceeding twenty-eight pounds weight, in any one place, less than one mile to the northward of the city hall of the said city, except in the public magazine at the Fresh-water, and the said quantity of twenty-eight pounds weight, which shall be lawfull for any person to have and keep at any place within this city, shall be seperated into four stone jugs or tin cannisters, which shall not contain more than seven pounds each, on pain of forfeiting all such gun powder, and the sum of fifty pounds for every hundred weight, and in that proportion for a greater or lesser quantity, and upon pain of forfeiting such quantity which any person may lawfully keep as aforesaid, and which shall not be seperated as above directed, with full costs of suit to any person, or persons, who will inform and sue for the same, by any action, bill, or information, in any of the courts of record, in this city, who are hereby impowered, and required, to give special judgment in such action bills or informations, to be brought <span style="float:right">Unlawful to keep gunpowder in quantities exceeding twenty-eight pounds except in public magazine, etc.</span> <span style="float:right">Penalty.</span>

by virtue of this act, as well for the recovery of the value of such gun
powder in specie, as for the penalty aforesaid, besides costs, and to
award, effectual execution thereon, provided always that all suits, actions,
or prosecutions to be brought, commenced, or prosecuted, against any
person or persons, for any thing done in pursuance of this act, shall be
commenced and prosecuted without willful delay, within two callender
months next after the fact was committed, and not otherwise.

*And whereas* vessels arriving from sea, and having onboard as part of
their cargo a quantity of gun powder.

*Be it enacted by the authority aforesaid,* That the commander, or owner
or owners, of all such ships or vessels, having gun powder onboard,
shall, within twenty-four hours after her arrival in the harbour, and
before they hawl along side of any wharf, pier or key within the city,
land the said gun powder, by means of their boat or boats, or any other
craft, at any place along the ship yards on the East river, or at any place
to the northward of the air furnace on the North river, which may be
most contiguous to the magazine at Fresh water, and shall cause the same
o be stored there, or in any other proper magazine, which now is or
ereafter may be built for that purpose, at any place to the northward
thereof, on pain of forfeiting all such gun powder, to any person or
persons, who will inform and sue for the same, in like manner, as is
herein before directed, with respect to the having and storing of gun
powder within the city as aforesaid.    And in order to prevent any fatal
consequences which may arise, from the carriage of gun powder, in and
through the streets of the city of New York, by carts, carriages, or by
hand, or otherways, it shall be in tight cask, well headed and hooped,
and shall be put into bags or leather-cases, and intirely covered there-
with, so as that none be spilt or scattered in the passage thereof, on pain
of forfeiting all such gun powder, as shall be conveyed through any of
the streets aforesaid in any other manner than is herein directed, and it
shall and may be lawfull for any person or persons, to seize the same to
his or their own use and benefit — provided the person or persons so
offending, be thereof lawfully convicted, before the mayor, recorder, or
any two justices of the city aforesaid.    And that it shall and may be
lawfull, for the mayor recorder, or any two justices of the peace of the
city and county of New York, upon demand made by any inhabitant
or inhabitants of the said city, who assigning a reasonable cause of sus-
picion on oath, of the sufficiency of which the said mayor or recorder,
or justices, is and are to judge, to issue his or their warrant or war-
rants, under his or their hands and seals, for searching in the day time
for gun powder in any building or place whatsoever, within the limits
aforesaid, or any ship or vessel within forty eight hours after her arrival
in the harbour, or at any time after any such ship or vessel shall and may
have hawled alongside of any wharf pier or key within the limits afore-
said, and that upon any such search, it shall be lawfull for the searchers
or persons finding the same, immidiatly to seize, and at any time within
twelve hours after such seizure, to cause the same to be removed to the
magazine at Fresh water, or to any other proper magazine, which now is
or hereafter may be at any place north of Fresh water aforesaid, and the
same being so removed, it shall be lawfull to detain and keep the same
untill it shall be determined by the mayor, recorder or any two of the
justices of the peace of the city and county aforesaid, whether the same
shall be forfeited by virtue of this act, and the person or persons so
detaining the same, shall not be subject or liable to any action or suit,
for the detention thereof, provided always that nothing in the act con-

*Side notes:*
Gunpow-
der on
vessels to
be landed
before
vessel
hauls
alongside
of wharf,
etc.

How gun-
powder to
be trans-
ported
through
streets of
city.

Warrant
to search
in day
time for
gun pow-
der unlaw-
fully
stored
may be
issued,
etc.

tained, shall be construed to authorize any person, having such warrant to take advantage of the same, for serving any civil process of any kind whatsoever.

*And be further enacted by the authority aforesaid,* That if any gun powder, exceeding the quantity which any person by this act may lawfully keep in his custody, shall be found during any fire, or alarm of fire, in the said city, by any of the firemen of the said city, it shall be lawfull for him to seize the same, without warrant from a majestrate, and to hold and have the same to his own use, any thing in this act to the contrary notwithstanding. This act to be and continue in force from the passing thereof, untill the twenty-eight day of February in the year of our Lord one thousand, seven hundred and eighty six. *If found during any fire may be seized without warrant.*

# CHAP. 29.

AN ACT to lengthen the terms of the inferior courts of common pleas and general sessions of the peace, in the counties of Westchester, Queens and Richmond; and for other purposes therein mentioned.

PASSED the 13th of April, 1784.

WHEREAS the duration of the terms of the inferior courts of common pleas and general sessions of the peace, in the counties of Westchester, Queens and Richmond; which, in the county of Westchester, continue from the fourth Tuesday in May until the Friday following, and from the first Tuesday in November until the Friday following, in every year; in Queens county, from the third Tuesday in May until the Friday following, and from third Tuesday in September until the Friday following, in every year; and in Richmond county, from the first Tuesday in May until the Friday following, and from the last Tuesday in September until the Friday following, in every year, are found from experience, to be too short for the discharge of the necessary business in the said respective courts. *Preamble.*

*Be it therefore enacted by the People of the State of New York represented in Senate and Assembly, and it is hereby enacted by the authority of the same,* That the terms of the inferior courts of common pleas and general sessions of the peace in the county of Westchester, shall hereafter commence on the fourth Monday in May and first Monday in November, in every year, and shall continue until the several Saturdays next following, inclusive; that the terms of the inferior courts of common pleas and general sessions of the peace in Queens county, shall commence on the third Mondays in May and September, in every year, and shall continue until the several Saturdays next following, inclusive; and that the inferior courts of common pleas and general sessions of the peace in the county of Richmond, shall commence on the first Monday in May and last Monday in September, in every year, and shall continue until the several Saturdays next following, inclusive. That all process issued out of the said respective courts, and made returnable on the usual return days, and all recognizances by which any person or persons shall be bound to appear on the said usual return days, shall be deemed good and valid on such days, although such days of return and appearance, are by this act, respectively altered. *Terms of the courts, when to commence and when to close.* *Process issued returnable on usual return days valid.*

ADD-47

# 1819
# (INDIANA)

DATE DOWNLOADED: Fri Mar 31 09:16:42 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1819 39 .

ALWD 7th ed.
, , 1819 39 .

Chicago 17th ed.
"," Indiana - 4th Session : 39-40

AGLC 4th ed.
" Indiana - 4th Session 39

OSCOLA 4th ed.
" 1819 39          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

[ 39 ]

## CHAPTER XXIII.

*AN ACT to prohibit the wearing of conceal-*
*ed weapons.*

APPROVED, January 14, 1820.

SEC. 1.   *BE it enacted by the General*
*Assembly of the State of Indiana,* That
any person wearing any dirk, pistol, *Persons*
sword in cane, or any other unlawful *wearing con-*
weapon, concealed, shall be deemed *cealed weap-*
guilty of a misdemeanor, and on convic- *ble*
tion thereof, by presentment or indict-
ment, shall be fined n any sum not ex-
ceeding one hundred dollars, for the use
of county seminaries: *Provided however,* *Proviso*
that this act shall not be so construed as
to affect travellers.

## CHAPTER XXIV.

*AN ACT supplemental to "an act for the*
*appointment of County Surveyors.*

APPROVED, January 14, 1820.

SEC. 1.   *BE it enacted by the General*
*Assembly of the State of Indiana,* That *County sur-*
whenever hereafter any dispute may *veyor inter-*
arise about the division of any land *ested in par-*
within this state, wherein the county *ition Circuit*
surveyor of the county, where the lands *court to ap-*
lie, may be a party, or in any manner *point survey-*
interested, it shall be lawful for the Cir- *or*
cuit Court on application of either par-

Digitized from Best Copy Available

[ 40 ]

ty, to appoint some suitable person in said county, whose duty it shall be to proceed to divide the same, for which service, the person so appointed, shall be entitled to the same fees as county surveyors are entitled to, for similar services.

## CHAPTER XXV.

*AN ACT authorizing the arrest and securing fugitives from Justice.*

APPROVED, January 14, 1820.

SEC. 1.   *BE it enacted by the General Assembly of the State of Indiana,* That if any person shall commit any crime in any of the United States, or the territories thereof, and shall flee into this state, it shall be lawful for any Judge of the Supreme or Circuit Court, or justice of the peace, within this state, on the oath or affirmation of any person charging such fugitive with a crime, to issue his warrant, and cause such fugitive to be arrested, and brought before him, and after hearing the proofs and allegations for and against such fugitive, if in the opinion of such Judge or justice, the proof is evident, or presumption strong, as to the guilt of the person charged, it shall be the duty of such Judge or Justice, to commit such fugitive from justice, to the common jail of the county, where such arrest may be made, for any length of time, not exceeding one month,

*Side notes:*
Fugitives from justice to be apprehended

Justice to issue his warrant and proceedings thereon

Fugitive to be committed

Digitized from Best Copy Available

# 1821
# (MAINE)



DATE DOWNLOADED: Fri Jan 27 13:50:59 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Laws of the State of Maine (1830).

ALWD 7th ed.
. Ls of the State of Maine (1830).

APA 7th ed.
(1830). Laws of the State of Maine. Hallowell, Glazier, Master & Co.

Chicago 17th ed.
Laws of the State of Maine. Hallowell, Glazier, Master & Co.

McGill Guide 9th ed.
Ls of the State of Maine (Hallowell: Glazier, Master & Co., 1830)

AGLC 4th ed.
Laws of the State of Maine (Glazier, Master & Co., 1830

MLA 9th ed.
Laws of the State of Maine. Hallowell, Glazier, Master & Co. HeinOnline.

OSCOLA 4th ed.
Laws of the State of Maine. Hallowell, Glazier, Master & Co.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

98    FIRE.—GUNPOWDER.

cial Court, to parties and witnesses, as are allowed in the
regular Courts of law ; and that the said two Justices, *quo-
rum unus,* shall have the same fees, and be allowed the same
sums for the trial aforesaid, as are allowed to Justices in the
process of forcible entry and detainer.

[*Approved March* 8, 1821.]

## CHAPTER XXV.

An Act for the prevention of damage by Fire, and the safe keeping of
Gunpowder.

Selectmen to make regulations as to the keeping of gunpowder in certain towns.

SEC. 1. **B**E *it enacted by the Senate and House of Represent-
atives, in Legislature assembled,* That the Selectmen of each
town within this State, containing not less than fifteen hundred
inhabitants, be, and they hereby are, authorized and empow-
ered to make rules and regulations, from time to time, in con-
formity with which, all gunpowder which is or may be with-
in such town, shall be kept, had or possessed therein ; and no
person or persons shall have, keep or possess within such
town, any gunpowder, in any quantity, manner, form or
mode, other than may be prescribed by the rules and regu-
lations aforesaid.

Penalty for violating such regulations.

SEC. 2. *Be it further enacted,* That any person or per-
sons who shall keep, have or possess any gunpowder, within
any town, contrary to the rules and regulations which shall
be established by the Selectmen of such town, according to
the provisions of this Act, shall forfeit and pay a fine of not
less than twenty dollars, and not exceeding one hundred dol-
lars, for each and every offence, to be recovered by action of
debt in any Court proper to try the same.

Mode of recovery.

Powder kept contrary to regulations may be seized and libelled.

SEC. 3. *Be it further enacted,* That all gunpowder which
shall be had, kept or possessed, within any town, contrary to
the rules and regulations which shall be established by the
Selectmen of such town, according to the provisions of this
Act, may be seized by any one or more of the Selectmen of
such town, and shall within twenty days next after the seizure

Proceedings on such libel.

thereof, be libelled, by filing with any Justice of the Peace
in such town, a libel, stating the time, place and cause of seiz-
ure, and the time and place when and where trial shall be had
before said Justice, and a copy of said libel shall be served
by the Sheriff, or his deputy, on the person or persons, in
whose possession the said gunpowder shall have been seized
by delivering a copy thereof to each such person, or leaving
such copy at his or her usual place of abode, seven days at
least, before the time which shall be specified in said libel,
for the trial thereof, that such person may appear, and show
cause why the gunpowder, so seized or taken, should not be
adjudged forfeit ; and if any person shall appear to show
cause why the same should not be adjudged forfeit, such ap-

pearance shall be entered on record, by said Justice; and if the gunpowder, seized as aforesaid, shall be adjudged forfeit, the person or persons, whose appearance shall have been recorded as aforesaid, shall pay all costs of prosecution, and execution shall issue therefor: *Provided however*, That the person or persons, whose appearance shall have been recorded, may appeal from the judgment rendered by said Justice of the Peace, to the next Court of Common Pleas to be holden for the County where such town is situated: and the party so appealing, before such appeal shall be allowed, shall recognize, with sufficient surety or sureties to the libellant, to prosecute his said appeal and to pay all such costs as may arise after said appeal; and no further proceedings shall be had upon the judgment appealed from; and in case the party appealing shall neglect to enter his appeal, the Court appealed to, may, upon complaint, proceed to affirm the judgment of the Justice, with additional costs. *Appeal from Justice's judgment,* *after proceedings.*

SEC. 4. *Be it further enacted,* That any person who shall suffer injury by the explosion of any gunpowder, had or possessed, or being within any town, contrary to the rules and regulations which shall be established in such town, according to the provisions of this Act, may have an action of the case in any Court proper to try the same, against the owner or owners of such gunpowder, or against any other person or persons, who may have had the possession or custody of such gunpowder, at the time of the explosion thereof, to recover reasonable damages for the injury sustained. *Persons damaged by explosion of powder illegally kept, may obtain redress.*

SEC. 5. *Be it further enacted,* That it shall, and may be lawful for any one or more of the Selectmen of any town to enter any building, or other place, in such town, to search for gunpowder, which they may have reason to suppose to be concealed or kept, contrary to the rules and regulations which shall be established in such town, according to the provisions of this Act, first having obtained a search warrant therefor according to law. *Selectmen may enter buildings to search for powder.*

SEC. 6. *Be it further enacted,* That when any stove, chimney or stove pipe, within any town containing not less than fifteen hundred inhabitants, shall be defective, or out of repair, or so constructed or placed, that any building, or other property shall be in danger of fire therefrom, the Selectmen of said town shall give notice in writing, to the possessor or possessors of such stove, chimney or stove pipe, to remove or repair the same; and if such possessor shall for the term of six days after the giving of such notice, unnecessarily neglect to remove, or effectually repair such stove, chimney or stove pipe, such possessor shall, for each and every such neglect, forfeit and pay a fine of not less than ten dollars, nor more than fifty dollars, to be recovered by action of the case, in any Court proper to try the same. *Penalty for suffering stoves, chimnies or stove pipes to be defective, &c.* *Action of case.*

SEC. 7. *Be it further enacted,* That the fines, forfeitures

106                           CRACKERS, &c.—FIRE ENGINES.

Appropriation of fines, &c.

and penalties, which shall arise under this Act, shall accrue, one moiety thereof to the use of the town within which the offence shall be committed, and the other moiety to the use of the person who shall prosecute or sue for the same.

Above regulations not to be in force till published by Selectmen, &c.

SEC. 8.  *Be it further enacted*, That the rules and regulations, which shall be established in any town, according to the provisions of this Act, shall be of no force or effect, until such rules and regulations, together with this Act, shall have been published by the Selectmen of such town, three weeks successively, by printing in some newspaper printed within the County, or by posting up attested copies in three several public places in said town.

[*Approved March* 19, 1821.]

## CHAPTER XXVI.

An Act to prevent damage from firing Crackers, Squibs, Serpents and Rockets, within this State.

Crackers, squibs, &c. not to be fired without license.

**B**E it enacted by the Senate and House of Representatives, in Legislature assembled, That if any person shall offer for sale, set fire to, or throw any lighted cracker, squib, rocket or serpent within this State, without the license of the Selectmen of the several towns, respectively, first obtained

Punishment.

therefor, he shall forfeit, for every such offence, the sum of five dollars ; one moiety to the use of the poor of that town, in which the offence shall be committed, and the other moiety to the use of the prosecutor ; to be recovered by action of debt, or by information before any Justice of the Peace of the County, in which the offence shall be committed, with the costs of suit.

[*Approved February* 20, 1821.]

## CHAPTER XXVII.

An Act more effectually to secure Fire Engines from being injured.

Persons wantonly injuring fire engines,

**B**E it enacted by the Senate and House of Representatives, in Legislature assembled, That if any person shall wantonly or maliciously, spoil, break, injure, damage or render useless, any engine, or any of the apparatus thereto belonging, prepared by any town, society, person or persons, for the extinguishment of fire, and shall be convicted thereof,

punished on conviction in S. J. Court.

before the Supreme Judicial Court, he shall be punished by a fine not exceeding five hundred dollars, or by imprisonment, not exceeding two years, at the discretion of the Court ; and be further ordered to recognize, with sufficient surety or sureties, for his good behaviour for such term as the Court shall order.

[*Approved March* 2, 1821.]

# 1821
# (TENNESSEE)

HEINONLINE

DATE DOWNLOADED: Fri Mar 31 09:19:30 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1821 15 .

ALWD 7th ed.
, , 1821 15 .

Chicago 17th ed.
"," Tennessee - 14th General Assembly, 1st Session : 15-16

AGLC 4th ed.
" Tennessee - 14th General Assembly, 1st Session 15

OSCOLA 4th ed.
" 1821 15          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

13

equity in this state, where any person or persons <span style="float:right">take the bene-<br>fit of prison<br>rules.</span> may be surrendered by his or their bail in discharge of themselves, it shall and may be lawful for the person or persons so surrendered to take the benefit of the prison rules of the county, under the same rules, regulations, and restrictions prescribed for the benefit of defendants arrested and in custody under a writ of *capias ad satisfaciendum.*

JAMES FENTRESS,
Speaker of the House of Representatives.
W. HALL,
Speaker of the Senate, *pro tem.*

October 18, 1821.

## CHAPTER XII.

*An Act prescribing certain duties of Sheriffs in this state.*

Be it enacted by the General Assembly of the State *Sheriff to,* of Tennessee, That hereafter it shall not be law- *appoint not* *more than two* ful for any sheriff within this state to appoint more *deputies. No* than two deputies within the county for which he *Justice to be a* shall have been appointed sheriff, nor shall it be law- *deputy.* ful for a Justice of the Peace to act as deputy sheriff during his continuance in office : *Provided* nothing herein shall be so construed as to apply to, or prohibit special deputations on urgent occasions, and deputations for the purpose of holding elections.

JAMES FENTRESS,
Speaker of the House of Representatives.
W. HALL,
Speaker of the Senate, *pro tem.*

October 19, 1821.

## CHAPTER XIII.

*An Act to prevent the wearing of dangerous and unlawful weapons.*

Be it enacted by the General Assembly of the State *Fine for* of Tennessee, That from and after the passage of *carrying wea-* *pons.* this act, each and every person so degrading himself, by carrying a dirk, sword cane, French knife, Spanish stiletto, belt or pocket pistols, either public or private, shall pay a fine of five dollars for every such offence, which may be recovered by warrant before any Justice of the Peace, in the name of the county and for its use, in which the offence may have been committed ; and it shall be the duty of a Justice to issue a warrant on the application on oath of any

Digitized from Best Copy Available

16

person applying ; and that it shall be the duty of every Judge, Justice of the Peace, Sheriff, Coroner and Constable within this state to see that this act shall have its full effect : *Provided nevertheless,* That nothing herein contained shall affect any person that may carry a knife of any size in a conspicuous manner on the strop of a shot pouch, or any person that may be on a journey to any place out of his county or state.

*Exception as to travellers and the strop of a shot pouch.*

JAMES FENTRESS,
Speaker of the House of Representatives.
W. HALL,
Speaker of the Senate, *pro tem.*

October 19, 1821.

## CHAPTER XIV.

*An Act directing the proceedings in cases of forcible entry and detainer.*

SEC. 1. *Be it enacted by the General Assembly of the State of Tennessee,* That no person or persons shall enter upon or into any lands, tenements or other possessions, and detain or hold the same but where entry is given by law, and then only in a peaceable manner.

*What shall be a forcible entry and detainer.*

SEC. 2. *Be it enacted,* That if any person shall enter upon or into any lands, tenements, or other possessions and detain and hold the same with force or strong hand, or with weapons, or by breaking open the doors, windows or other part of a house whether any person be in it or not, or by any kind of violence whatsoever, or by threatening to kill, maim, or beat the party in possession, or by such words, circumstances or actions as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors or carrying away the goods of the party in possession, or by entering peaceably, and then turning by force or frightening by threats or other circumstances of terror, the party out of possession, in such case every person so offending shall be deemed guilty of a forcibly entry and detainer, within the meaning of this act.

*Whatever makes an entry forcible, makes a detainer forcible.*

SEC. 3. *Be it enacted,* That no person who shall lawfully or peaceably enter upon, or into any lands, tenements, or other possessions, shall hold or keep the same unlawfully, and with force or strong hand, or weapons, or violence, or menaces, or terrifying words, circumstances or actions aforesaid, and it is

Digitized from Best Copy Available

# 1825
# (NEW HAMPSHIRE)

THE

# L A W S

OF THE

## STATE OF NEW-HAMPSHIRE,

PASSED

## JUNE SESSION, 1825.

PUBLISHED BY AUTHORITY.

CONCORD:

PRINTED BY ISAAC HILL.

AD1825.

election," passed December 16, 1824, be and the same is hereby repealed. · *Approved July 2, 1825.* Repeal.

---

## CHAPTER LXI.

*AN ACT to regulate the keeping and selling, and the trans-* Passed July
*porting of gun-powder.* 2, 1825.

SECT. 1. BE it enacted by the Senate and House of Representatives in General Court convened, That there shall not at any time be kept in any ware-house, store, shop, What quantity or other building in the compact part of any town or village in this State, a greater quantity of gun-powder than Penalty for three quarter cask or seventy-five pounds; and any per- keeping more. son or persons so keeping a greater quantity, shall forfeit and pay for every day during which such greater quantity of gun-powder shall be kept as aforesaid, a sum not exceeding five dollars, nor less than one dollar, to be How recoverrecovered by any person sueing for the same in an ac- able. tion of debt before any justice of the peace, or court proper to try the same, with costs of suit, one half for To whose use. the use of the prosecutor and the other half for the use of the town in which such gunpowder is kept; or, if sued for by the firewards or selectmen of any town, then the whole of said forfeiture shall be kept for the use of said How expendtown, to be expended by said firewards or selectmen in ed. purchasing materials necessary and proper for extinguishing fires. And the said firewards or selectmen are Firewards, &c. hereby authorized and empowered to seize any gunpow- may seize powder kept as aforesaid in a greater quantity than one quar- der. ter cask, and cause the same to be condemned in any court proper to hear and try the same, the avails of which shall be expended for the purposes aforesaid.

SECT. 2. *And be it further enacted,* That every person keeping gunpowder to sell by retail in less quantity than seventy-five pounds, and who shall not at all times keep How powder the same in a tin canister or canisters or other incombus- shall be kept tible vessel or vessels, covered and secured from fire, or for retail. in casks which shall be enveloped in substantial and close Penalty for not leathern bags or sacks, shall forfeit and pay for each and so keeping. every day, he, she or they shall so keep it, a sum not exceeding five dollars nor less than one dollar, to be sued How recoverafor and recovered with costs of suit in the manner and ble. for the uses and purposes aforesaid.

SECT. 3. *And be it further enacted,* That gunpowder Manner of shall not be transported or carried through the compact transporting. part of any town or village, in any cart, waggon or other open carriage, in a greater quantity than one hundred pounds at any one time, nor unless the casks containing the gunpowder so transported be more than twenty-five

A D D — 69

74                          *Alteration of Names.*

pounds be enveloped in substantial and close leathern
bags or sacks; and any person or persons transporting
gunpowder as aforesaid, in a greater quantity and with-
out being enveloped as aforesaid, except the same be con-
veyed in a closely covered carriage, shall forfeit and pay
**Penalty for not** a sum not more than fifty dollars nor less than ten dol-
**so transporting.** lars, to be sued for and recovered with costs of suit, in
the manner and for the uses and purposes aforesaid.

SECT. 4. *And be it further enacted,* That no person
shall at any time transport or carry from town to town
**Shall not be** or from place to place any gunpowder for the purpose of
**peddled.** peddling, or selling it by retail, on penalty that the own-
er or owners, or person or persons selling it, or offering
**Penalty a-** it for sale, shall forfeit and pay a sum not exceeding five
**gainst ped-** dollars nor less than one dollar for each cask of gunpow-
**dling.** der so transported or carried and sold or offered for sale,
to be recovered with costs of suit and applied to the same
uses and purposes as herein before directed.

SECT. 5. *And be it further enacted,* That if any person
or persons shall sell or offer for sale by retail any gun-
**Shall not be** powder in any highway, or in any street, lane, or alley,
**sold by retail** or on any wharf, or on any parade or common, such per-
**in any street,** son so offending shall forfeit and pay for each and every
**&c.,** offence a sum not more than five dollars nor less than
one dollar, to be recovered and applied as aforesaid.

SECT. 6. *And be it further enacted,* That if any person
or persons shall within this State, in the night time be-
tween sunsetting and sunrising, sell or offer to sell by re-
**nor in the night** tail, or deal out any gunpowder, such person so offending
**time.** shall forfeit and pay for each and every such offence a
sum not more than five dollars nor less than one dollar,
to be recovered and applied as aforesaid.

SECT. 7. *And be it further enacted,* That all prosecu-
**Limitation of** tions for offences against this act shall be commenced
**prosecutions.** within three months after the offence shall have been
committed, and not afterwards.

*Approved July* 2, 1825.

---

### CHAPTER LXII.

**Passed July**   *AN ACT to alter the names of sundry persons therein*
**2, 1825.**                        *mentioned.*

WHEREAS certain persons have petitioned the legislature
to alter their names, and their request appearing rea-
sonable; Therefore,

BE *it enacted by the Senate and House of Representa-
tives in General Court convened,* That Elis Leathers of
Barnstead, shall hereafter be called and known by the

# 1832
# (CONNECTICUT)

shall not be construed to apply or extend to any vessel ar- Limitation o
riving or coming from any foreign port, or place, or from former act.
any port or place in the United States, south of the Capes of
the Delaware, which shall have entered any port or place in
the United States, north of the said Capes of the Delaware,
where there are quarantine regulations, and have been vis-
ited by a health officer, received a clean bill of health, and
shall have been permitted to go to the wharves and unload
thereat.

*Provided*, such clean bill of health, or a certified copy Proviso
thereof, shall be left with the collector of the port within
twenty-four hours after the arrival of such vessel.

MARTIN WELLES,

Speaker of the House of Representatives.

THADDEUS BETTS,

President of the Senate.

May 31st, 1832—Approved.

JOHN S. PETERS

# CHAP. XXV.

## An Act regulating the mode of keeping of Gun Powder.

Sec. 1. **B**E it enacted by the Senate and House of Rep- Order for re-
resentatives, in General Assembly convened, moval of gun
That hereafter it shall be lawful for the select-men of each powder.
and every town within this State, or a majority of them, by
their order, in writing, directed to the owners or persons ha-
ving charge of the same, to cause to be removed to some
safe and convenient place within said town, and within such
time, as in said order may be prescribed, any quantity of gun
powder so deposited or kept, within the limits of said town,
as in the opinion of said select-men, or a majority of them, may
endanger the persons or dwellings of any individuals what-
soever.   Whereupon it shall become the duty of the persons Duty of per-
thus notified, to remove the said gun powder within the time, sons notified.
and to the place specified in said order.

Sec. 2. That in case the said gun powder shall not be re-
moved pursuant to said order, as is hereinbefore prescribed, Authority of
the said select-men, or a majority of them, may remove or select-men to
cause the same to be removed to such place within said town, remove.
as in their opinion shall be deemed safe and convenient.
And they shall have and retain a lien upon the said powder Lien.
for all necessary expenses in removing and keeping the
same.

Sec. 3. That those persons who may hereafter wish to

4

392                                *May Session,* 1832.

Place of deposite for gunpowder, how designated.

deposit, or keep, within the limits of any town in this State, gunpowder in quantity exceeding fifty pounds, may require the select-men of such town, or a majority of them to designate some safe and convenient place for that purpose; and it shall thereupon become the duty of such selectmen, or a majority of them, in writing, to designate and appoint a suitable place within their respective towns, for such purpose; at which place, thus designated, it shall be lawful thenceforth to deposit and keep gunpowder according to the true intent and meaning of this Act, until the select-men of said town, or a majority of them, for the time being, shall order the same to be removed pursuant to the foregoing provisions of this Act.

Penalty.

SEC. 4. That if any person shall violate the provisions of this act as hereinbefore specified, he shall forfeit the sum of fifty dollars, one half thereof to the treasury of the town within which the offence is committed, and the other half to the person who may sue for and recover the same, in an action of debt.

Proviso.

*Provided,* if any person shall consider himself aggrieved by the doings of the select-men, he may petition the next county court, which may grant the proper relief.

MARTIN WELLES,
Speaker of the House of Representatives.
THADDEUS BETTS,
President of the Senate.

May 30th, 1832—Approved.

JOHN S. PETERS.

## CHAP. XXVI.

## An Act in addition to an Act entitled " An Act to regulate the Inspection of Provisions."

Hundred of staves and hoops.

BE it enacted by the Senate and House of Representatives in General Assembly convened, That in all sales of staves or hoops which shall be made subsequently to the first day of July next, one hundred staves, and not the number of one hundred and twenty, and one hundred hoops, and not the number of one hundred and twenty, shall constitute the hundred of each of said articles; and the aliquot parts of a hundred shall be reckoned accordingly; any law, usage or custom to the contrary notwithstanding.

MARTIN WELLES,
Speaker of the House of Representatives.
THADDEUS BETTS,
President of the Senate.

May 31st, 1832—Approved.

JOHN S. PETERS.

# 1837
# (ALABAMA)

HEINONLINE

DATE DOWNLOADED: Mon Mar 27 09:45:05 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1837 7 .

ALWD 7th ed.
, , 1837 7 .

Chicago 17th ed.
"," Alabama - General Assembly, Called Session - 1837 : 7-8

AGLC 4th ed.
" Alabama - General Assembly, Called Session - 1837 7

OSCOLA 4th ed.
" 1837 7          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

Treasurer of the State, to deposit in the Bank of the State and its several branches, all that portion of the public revenue of the United States, which he has received or which he may hereafter receive, as the portion of Alabama, in the following proportion: One fifth in the Bank of the State at Tuscaloosa, one fifth in the Branch Bank at Montgomery, one fifth in the Branch Bank at Mobile, one fifth in the Branch Bank at Decatur, and one fifth in the Branch Bank at Huntsville; taking therefor certificates of deposite, and all laws or parts of laws, contravening the provisions of this act, be and the same are hereby repealed: *Provided*, That the amount of the surplus revenue already received and which may hereafter be received, shall be deposited in said Bank and its Branches, in the above and foregoing proportions, on or before the first day of May next.

*Treasurer to deposit the surplus revenue in the Bank and Branches.*

Approved June 30, 1837.

---

No. 11.]       AN ACT
To suppress the use of Bowie Knives.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That if any person carrying any knife or weapon, known as Bowie Knives or Arkansaw Tooth-picks, or either or any knife or weapon that shall in form, shape or size, resemble a Bowie Knife or Arkansaw Tooth-pick, on a sudden rencounter, shall cut or stab another with such knife, by reason of which he dies, it shall be adjudged murder, and the offender shall suffer the same as if the killing had been by malice aforethought.

*Penalty for carrying Bowie knives*

Sec. 2. *And be it further enacted,* That for every such weapon, sold or given, or otherwise disposed of in this State, the person selling, giving or disposing of the same, shall pay a tax of one hundred dollars, to be paid into the county Treasury; and if any person so selling, giving or disposing of such weapon, shall fail to give in the same in his list of taxable property, he shall be subject to the pains and penalties of perjury.

*Persons selling Bowie knives to be taxed.*

Approved June 30, 1837.

---

[No. 12.]       AN ACT
To enlarge the prison bounds in the different counties in this State:

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the several sections of an act passed in the year 1824, requiring the Judge of the county court and commissioners of roads and revenue, to mark and lay out the bounds of prisoners, be and the same is hereby repealed; and that from and after the passage of this act, the bounds of the different counties shall be the limits within which prisoners confined for debt shall be restricted, on entering into bond, as now required by law, to keep within the prison bounds; and hereafter the plaintiffs in suits shall not be compelled to pay the sustenance and support of prisoners who take the benefit of the bounds.

*Prison bounds enlarged.*

Approved June 30, 1837.

---

[No. 13.]       AN ACT
For the relief of the purchasers of the Sixteenth Section, Township four, Range six, West, in the county of Lawrence and for other purposes.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the President and Directors of the Branch of the Bank of the

ADD-70

# 1837
# (ARKANSAS)

HEINONLINE

DATE DOWNLOADED: Thu Mar 23 16:53:46 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
William McK. Ball, Editor; Roane, Sam. C., Editor. Revised Statutes of the State of
Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D.
1837 (1838).

ALWD 7th ed.
Ball, William McK., Editor; Roane, Sam. C., Editor. Revised Statutes of the State of
Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D.
1837 (1838).

APA 7th ed.
Ball, W. (1838). Revised Statutes of the State of Arkansas, Adopted at the October
Session of the General Assembly of Said State, A.D. 1837. Boston, Weeks, Jordan.

Chicago 17th ed.
Ball William McK., Editor; Roane, Sam. C., Editor. Revised Statutes of the State of
Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D.
1837. Boston, Weeks, Jordan.

McGill Guide 9th ed.
William McK. Ball, Editor; Roane, Sam. C., Editor, Revised Statutes of the State of
Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D.
1837 (Boston: Weeks, Jordan., 1838)

AGLC 4th ed.
William McK. Ball, Editor; Roane, Sam. C., Editor, Revised Statutes of the State of
Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D.
1837 (Weeks, Jordan., 1838

MLA 9th ed.
Ball, William McK., Editor, and Sam. C. Roane, Editor. Revised Statutes of the State
of Arkansas, Adopted at the October Session of the General Assembly of Said State,
A.D. 1837. Boston, Weeks, Jordan. HeinOnline.

OSCOLA 4th ed.
Ball, William McK., Editor; Roane, Sam. C., Editor. Revised Statutes of the State of
Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D.
1837. Boston, Weeks, Jordan.        Please note: citations are provided as a
general guideline. Users should consult their preferred citation format's style
manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

**278**     CRIMINAL JURISPRUDENCE.     [CHAP. XLIV.

brought before him, and on investigating the charge, he shall discharge, bail, or commit in default of bail, as the case may require.

## DIVISION VIII.

### OFFENCES AGAINST THE PUBLIC PEACE, AND AFFECTING THE SECURITY OF PERSONS AND PROPERTY.

#### ART. I.—RIOTS, ROUTS, &c.

SECTION
1. Punishments for riots, &c.
2. Officer to make proclamation to disperse.
3. On refusal to obey, officer to summon the posse and arrest the offenders.
4. If armed, the officer may summon the militia.
5. Persons summoned, to obey promptly.
6. Taking violent possession of real estate.
7. Acts against public health, morals or justice, or the administration of law.
8. Agreements to commit felony, and ad-

SECTION
vances thereto, without actual commission.
9. Conspiracies to cheat, and advances thereto, without actual commission.
10. Conspiracies to indict, and advances thereto, without actual commission.
11. Doing any act prohibited, or failing to do any act required by law.
12. Punishment of misdemeanors, where not defined.
13. Wearing concealed weapons.

SEC. 1. If three or more persons assemble together, with the intent, or being assembled, shall agree mutually, to assist each other to do an unlawful act, with force or violence, against the person or property of another, or against the peace, or to the terror of the people, and shall accomplish the purpose intended, or do any unlawful act in furtherance of such purpose, in a violent or turbulent manner ; every person so offending, or who shall aid or assist in doing any unlawful act, shall be adjudged guilty of a misdemeanor, and shall be punished by imprisonment not exceeding one year, or by fine, not exceeding five hundred dollars, or both by fine and imprisonment, at the discretion of the court.

SEC. 2. When three or more persons shall be riotously, unlawfully or tumultuously assembled, as specified in the last preceding section, it shall be the duty of every judge, justice of the peace, sheriff, coroner and constable, who shall have knowledge, or be informed thereof, to make proclamation among the persons so assembled, or as near them as he can safely come, charging and commanding them immediately to disperse themselves, and peaceably to depart to their habitations or lawful business.

SEC. 3. If upon such proclamation being made, the persons so assembled shall not immediately disperse and depart as commanded, or if they shall resist such officer, or prevent the making such procla-

mation, such officer shall command those present, and the power of the county if necessary, and shall disperse such unlawful assembly, arrest the offenders, and take them before some judicial officer, to be dealt with according to law.

SEC. 4.  If any person so assembled shall be armed, or make forcible resistance to the officer so making, or attempting to make such proclamation, such officer shall summon to his aid a sufficient number of the militia, or other persons in arms, to disperse such assembly, arrest the offenders, and maintain the authority of the law.

SEC. 5.  All militia officers and others, who shall be summoned under the provisions of this act, shall give prompt obedience to such officer.

SEC. 6.  Every person who shall take, or keep possession of any real estate by actual force or violence, without the authority of law, or who being armed with a deadly or dangerous weapon, shall by violence to any person entitled to the possession, or by putting in fear of immediate danger to his person, obtain or keep possession of any such real estate or property, without legal authority, shall on conviction be adjudged guilty of a misdemeanor, and be fined not less than fifty dollars, and be imprisoned not exceeding one year.

SEC. 7.  If any person shall commit any act, injurious to the public health or public morals, or to the perversion or obstruction of public justice, or the due administration of the laws, he shall be deemed guilty of a misdemeanor.

SEC. 8.  If two or more persons shall agree and conspire to commit any felony, and make some advance thereto, without committing the felony, they shall be deemed guilty of a misdemeanor.

SEC. 9.  If two or more conspire to cheat any person out of any money or other property by false pretences or false tokens, and make some advance thereto, they shall be deemed guilty of a misdemeanor.

SEC. 10.  If one or more persons shall contrive and intend to have any person indicted, on any false criminal charge, and make some advance thereto, although such person may not be indicted, he or they shall be deemed guilty of a misdemeanor.

SEC. 11.  Where the performance of any act is prohibited, or the performance of any act is required, by any statute, and no penalty for the violation of such statute is imposed, either in the same section containing such prohibition, or requiring such act or duty, or in any other section or statute, the doing of such prohibited act, or the neglect of such required act or duty, shall be deemed a misdemeanor.

**280**    CRIMINAL JURISPRUDENCE.    [CHAP. XLIV.

SEC. 12. Every person who shall be convicted of any misde-
meanor, the punishment of which is not defined in this or some other
statute, shall be punished by imprisonment, not exceeding one year,
or by fine not exceeding two hundred and fifty dollars, or by fine and
imprisonment both.

SEC. 13. Every person who shall wear any pistol, dirk, butcher
or large knife, or a sword in a cane, concealed as a weapon, unless
upon a journey, shall be adjudged guilty of a misdemeanor, and upon
conviction thereof, in the county in which the said offence shall have
been committed, shall be fined in any sum not less than twentyfive
dollars, nor more than one hundred dollars, one half to be paid into
the county treasury, the other half to the informer, and shall also be
imprisoned not less than one, nor more than six months.

### ART. II.—LIBEL.

SECTION
1. Definition of.
2. Punishment of.
3. The truth of the libel may be given in
   evidence.
4. Proclaiming a person a coward, for not
   fighting a duel, &c.

SECTION
5. Publisher or printer required to testify.
6. Punishment of publisher or printer re-
   fusing to testify.
7. Their testimony not to be used against
   themselves.

SEC. 1. A libel is a malicious defamation, expressed either by
writing, printing, or by signs or pictures, or the like, tending to blacken
the memory of one who is dead, or to impeach the honesty, integrity,
veracity, virtue or reputation, or to publish the natural defects, of one
who is living, and thereby expose him to public hatred, contempt and
ridicule.

SEC. 1. Every person, whether writer, printer or publisher, con-
victed of the crime of libel, shall be fined in any sum not exceeding
five thousand dollars, and may also be imprisoned, not exceeding one
year, at the discretion of the jury who shall pass on the case ; and
when any such case shall be decided without the intervention of a jury,
then at the discretion of the court.

SEC. 3. In all prosecutions for libel, under the provisions of the
preceding sections, the truth thereof may be given in evidence in
justification.

SEC. 4. If any person shall, in any newspaper, handbill or other
advertisement, written or printed, publish or proclaim any other person
as a coward, or use any other opprobrious or abusive language, for not

**1837
(GEORGIA)**



DATE DOWNLOADED: Mon Mar 27 13:43:36 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1837 3 .

ALWD 7th ed.
, , 1837 3 .

Chicago 17th ed.
"," Georgia - Annual Session : 3-288

AGLC 4th ed.
" Georgia - Annual Session 3

OSCOLA 4th ed.
" 1837 3        Please note: citations are provided as a general guideline. Users
should consult their preferred citation format's style manual for proper citation
formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

## DEADLY WEAPONS.

AN ACT to guard and protect the citizens of this State,
against the unwarrantable and too prevalent use of deadly
weapons.

SECTION 1. *Be it enacted by the Senate and House of Re-
presentatives of the State of Georgia, in General Assembly met,
and it is hereby enacted by the authority of the same,* That from
and after the passage of this act, it shall not be lawful for any
merchant, or vender of wares or merchandize in this State, or
any other person or persons whatsoever, to sell, or offer to sell,
or to keep, or have about their person or elsewhere, any of the
hereinafter described weapons, to wit: Bowie, or any other
kind of knives, manufactured and sold for the purpose of wear-
ing, or carrying the same as arms of offence or defence, pis-
tols, dirks, sword canes, spears, &c., shall also be contemplated
in this act, save such pistols as are known and used, as horse-
man's pistols, &c.

SEC. 2. *And be it further enacted by the authority aforesaid,*
That any person or persons within the limits of this State, vio-
lating the provisions of this act, except as hereafter excepted,
shall, for each and every such offence, be deemed guilty of a
high misdemeanor, and upon trial and conviction thereof, shall
be fined, in a sum not exceeding five hundred dollars for the
first offence, nor less than one hundred dollars at the direction
of the Court; and upon a second conviction, and every after
conviction of a like offence, in a sum not to exceed one thou-
sand dollars, nor less than five hundred dollars, at the discre-
tion of the Court.

SEC. 3. *And be it further enacted by the authority aforesaid,*
That it shall be the duty of all civil officers, to be vigilent in
carrying the provisions of this act into full effect, as well also as
Grand Jurors, to make presentments of each and every offence
under this act, which shall come under their knowledge.

SEC. 4. *And be it further enacted by the authority aforesaid,*
That all fines and forfeitures arising under this act, shall be
paid into the county Treasury, to be appropriated to county
purposes: *Provided, nevertheless,* that the provisions of this
act shall not extend to Sheriffs, Deputy Sheriffs, Marshals,
Constables, Overseers or Patrols, in actual discharge of their
respective duties, but not otherwise: *Provided, also,* that no
person or persons, shall be found guilty of violating the before
recited act, who shall openly wear, externally, Bowie Knives,
Dirks, Tooth Picks, Spears, and which shall be exposed
plainly to view: *And provided, nevertheless,* that the provis-
ions of this act shall not extend to prevent venders, or any oth-

DEEDS. 91

er persons who now own and have for sale, any of the aforesaid weapons, before the first day of March next.

SEC. 5. *And be it further enacted by the authority aforesaid,* That all laws and parts of laws militating against this act, be, and the same are, hereby repealed.

JOSEPH DAY,
Speaker of the House of Representatives,

ROBERT M. ECHOLS,
President of the Senate.

Assented to, 25th December, 1837.
GEORGE R. GILMER, Governor.

---

## DEEDS.

AN ACT to admit certain Deeds to be recorded and read in evidence ; and also, to prescribe the effect of certain other Deeds.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Georgia, in General Assembly met, and it is hereby enacted by the authority of the same,* That from and after the passing of this act, all Deeds for lands which may have been recorded upon the usual proof of execution, but not recorded within the time prescribed by the laws of this State, shall be admitted in evidence, without further proof ; and when the originals are lost or destroyed, and that being made judicially known to the Court, copies of the same may be introduced and read in evidence, on any trial before any Court of law or equity, in this State.

SEC. 2. *And be it further enacted by the authority aforesaid,* That all Deeds executed, according to the laws of this State, but not yet recorded, may nevertheless be recorded within twelve months from the passage of this act, upon the usual proof of their execution ; and when so recorded, the same or copies thereof, when the originals are shown to be lost or destroyed, may be read in evidence without further proof.

SEC. 3. *And be it further enacted by the authority aforesaid,* That all Deeds conveying lands hereafter executed upon being attested or proved in the manner required by the laws of this State, shall be admitted to record, at any time, and after being recorded, shall be received in evidence in any Court of Law or Equity, without further proof of the execution thereof.

SEC. 4. *And be it further enacted by the authority aforesaid,* That in all cases where two or more Deeds shall hereafter be executed by the same person or persons, conveying the same

# 1837
# (TENNESSEE)

DATE DOWNLOADED: Thu Mar 23 16:41:15 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1837-1838 200 .

ALWD 7th ed.
, , 1837-1838 200 .

Chicago 17th ed.
"," Tennessee - 22nd General Assembly, 1st Session : 200-201

AGLC 4th ed.
" Tennessee - 22nd General Assembly, 1st Session 200

OSCOLA 4th ed.
" 1837-1838 200          Please note: citations are provided as a general
guideline. Users should consult their preferred citation format's style manual for
proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

200

to perform the duties enjoined on them by the second section of an act, passed at Nashville, the 19th of February, 1836, chapter XLVIII, that it shall be the duty of the several county surveyors to do and perform said services within their respective counties, and that said county surveyors shall be allowed the same fees, and be subject to the same penalties that said principal surveyors were entitled to, and liable for, in processioning said lands, and that said county surveyors shall return a plat and certificate of each tract so processioned by them to the entry taker of the county, who shall forthwith record the same in his survey book, for which services the said entry taker shall be allowed the same fees as for other services of the same kind, and that said several tracts of land shall be liable to attachment and final judgment for all expenses in processioning and recording the same.

JOHN COCKE,
*Speaker of the House of Representatives.*
TERRY H. CAHAL,
*Speaker of the Senate.*

Passed January 18th, 1838.

———

## CHAPTER CXXXVII.

An Act to suppress the sale and use of Bowie Knives and Arkansas Tooth Picks in this State.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That if any merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons whatsoever, shall sell or offer to sell, or shall bring into this State, for the purpose of selling, giving or disposing of in any other manner whatsoever, any Bowie knife or knives, or Arkansas tooth picks, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or any Arkansaw tooth pick, such merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons for every such Bowie knife or knives, or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick so sold, given or otherwise disposed of, or offered to be sold, given or otherwise disposed of, shall be guilty of a misdemeanor, and upon conviction thereof upon indictment or presentment, shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail for a period not less than one month nor more than six months.

Knives not to be sold or given away

SEC. 2. That if any person shall wear any Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in

Not to be worn

Digitized from Best Copy Available

form, shape or size resemble a Bowie knife or Arkansas
tooth pick under his clothes, or keep the same concealed
about his person, such person shall be guilty of a misdemea-
nor, and upon conviction thereof shall be fined in a sum
not less than two hundred dollars, nor more than five hun-
dred dollars, and shall be imprisoned in the county jail not
less than three months and not more than six months.

SEC. 3.   That if any person shall maliciously draw or *Penalty of draw-*
attempt to draw any Bowie knife, Arkansas tooth pick, *ing a knife*
or any knife or weapon that shall in form, shape or size re-
semble a Bowie knife or Arkansas tooth pick, from under
his clothes or from any place of concealment about his per-
son, for the purpose of sticking, cutting, awing, or intimi-
dating any other person, such person so drawing or attempt-
ing to draw, shall be guilty of a felony, and upon convic-
tion thereof shall be confined in the jail and penitentiary
house of this State for a period of time not less than three
years, nor more than five years.

SEC. 4.   That if any person carrying any knife or wea- *Penalty for using*
pon known as a Bowie knife, Arkansas tooth pick, or any *knife*
knife or weapon that shall in form, shape or size resemble a
Bowie knife, on a sudden rencounter, shall cut or stab ano-
ther person with such knife or weapon, whether death en-
sues or not, such person so stabbing or cutting shall be
guilty of a felony, and upon conviction thereof shall be con-
fined in the jail and penitentiary house of this State, for a
period of time not less than three years, nor more than fif-
teen years.

SEC. 5.   That this act shall be in force from and after *Of prosecutions*
the first day of March next. And it shall be the duty of the
several judges of the circuit courts in this State to give the
same in charge to the grand jury every term of the respec-
tive courts, and any civil officer who shall arrest and prose-
cute to conviction and punishment any person guilty of any
of the offences enumerated in this act, shall be entitled to
the sum of fifty dollars, to be taxed in the bill of costs, and
the attorney general shall be entitled to a tax fee of twenty ·
dollars in each case, when a defendant shall be convicted,
and no prosecutor required on any presentment or indict-
ment for any of the offences enumerated in this act.

JOHN COCKE,
*Speaker of the House of Representatives.*
TERRY H. CAHAL,
*Speaker of the Senate.*

Passed January 27th, 1838.

26

Digitized from Best Copy Available

# 1838
# (FLORIDA)

DATE DOWNLOADED: Mon Mar 27 13:41:32 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1838 36 .

ALWD 7th ed.
, , 1838 36 .

Chicago 17th ed.
"," Florida - 16th Session : 36-36

AGLC 4th ed.
" Florida - 16th Session 36

OSCOLA 4th ed.
" 1838 36          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

( 36 )

the statute of which this is an amendment, she shall make her election either of dower or of a childs part, within twelve months after the probate of the will or granting letters of administration, or she shall be confined to her dower.

*Widow may make her election of dower.*

Sec. 2. That if a widow take dower, she shall be entitled only to a life estate in the real property, to return at her death, to the estate of her deceased husband for distribution; if she takes a childs part, she shall have in the property set apart to her, a fee simple estate in the real property, and an absolute title to the personal property including slaves, with power to control or dispose of the same by will, deed or otherwise.

*Fee simple title in widow.*

Passed February 6th 1838.—Approved 8th Feb. 1838.

———

No. 24. AN ACT in addition to An Act, (approved January 30th, 1835,) entitled An Act to prevent any person in this Territory from carrying arms secretly.

Section 1. Be it enacted by the Governor and Legislative Council of the Territory of Florida, That from and after the passage of this act, it shall not be lawful for any person or persons in this Territory to vend dirks, pocket pistols, sword canes, or bowie knives, until he or they shall have first paid to the treasurer of the county in which he or they intend to vend weapons, a tax of two hundred dollars per annum, and all persons carrying said weapons openly shall pay to the officer aforesaid a tax of ten dollars per annum; and it shall be the duty of said officer to give the parties so paying a written certificate, stating that they have complied with the provisions of this act. Four fifths of all monies so collected to be applied by the county courts to county purposes, the other fifth to be paid to the prosecuting attorney.

*Venders to get license.*

*moneys how appropriated.*

Sec. 2. Be it further enacted, That if any person shall be known to violate this act, he or they so offending, shall be subject to an indictment, and on conviction, to a fine of not less than two hundred nor exceeding five hundred dollars, at the discretion of the court.

*Penalty.*

Sec. 3. Be it further enacted, That it shall be the duty of the several Judges of the Superior Courts of this Territory, to give this act in charge to the grand juriors of their respective districts at each term of the court.

*Judges to charge grand juries.*

Passed 5th Febuary, 1838.—Approved 10th Feb. 1838.

# 1838
# (VIRGINIA)

DATE DOWNLOADED: Mon Mar 27 09:41:11 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1838 76 .

ALWD 7th ed.
, , 1838 76 .

Chicago 17th ed.
"," Virginia - 1838 Session : 76-77

AGLC 4th ed.
" Virginia - 1838 Session 76

OSCOLA 4th ed.
" 1838 76          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

CHAP. 99.—An ACT to prevent free persons of colour who leave the state from returning to it in certain cases.

(Passed April 7, 1838.)

Free negroes leaving state to be educated not permitted to return.

1. *Be it enacted by the general assembly,* That if any free person of colour, whether infant or adult, shall go or be sent or carried beyond the limits of this commonwealth for the purpose of being educated, he or she shall be deemed to have emigrated from the state, and it shall not be lawful for him or her to return to the same; and if any such person shall return within the limits of the state contrary to the provisions of this act, he or she being an infant, shall

Infants so returning how dealt with.

be bound out as an apprentice until the age of twenty-one years, by the overseers of the poor of the county or corporation where he or she may be, and at the expiration of that period, shall be sent out of the state agreeably to the provisions of the laws now in force, or which may hereafter be enacted to prohibit the migration of free persons of colour to this state; and if such person be an adult, he

Adults how punished.

or she shall be sent in like manner out of the commonwealth; and if any person having been so sent off, shall thereafter return within the state, he or she so offending shall be dealt with and punished in the same manner as is or may be prescribed by law in relation to other persons of colour returning to the state after having been sent therefrom.

Commencement.

2. This act shall be in force from and after the first day of August next.

CHAP. 100.—An ACT abolishing the punishment of burning in the hand in all cases.

(Passed February 8, 1838.)

Burning in hand abolished.

1. *Be it enacted by the general assembly,* That so much of any law of this commonwealth as authorizes or inflicts the punishment of burning in the hand in any case whatever, shall be, and the same is hereby repealed. And every person who may be hereafter convicted of any offence within the benefit of clergy, shall be punished in the mode now prescribed by law, except only the burning in the hand.

Commencement.

2. This act shall be in force from the passing thereof.

CHAP. 101.—An ACT to prevent the carrying of concealed weapons.

[Passed February 2, 1838.]

Penalty for carrying concealed weapons.

1. *Be it enacted by the general assembly,* That if any person shall hereafter habitually or generally keep or carry about his person any pistol, dirk, bowie knife, or any other weapon of the like kind, from the use of which the death of any person might probably ensue, and the same be hidden or concealed from common observation, and he be thereof convicted, he shall for every such offence forfeit and pay the sum of not less than fifty dollars nor more than five hundred dollars, or be imprisoned in the common jail for a term not less than one month nor more than six months, and in each instance at the discretion of the jury; and a moiety of the penalty recovered in any prosecution under this act, shall be given to any person who may voluntarily institute the same.

Courts to ascertain if murders or felonies be perpetrated by concealed weapons.

2. *And be it further enacted,* That if any person shall hereafter be examined in any county or corporation court upon a charge of murder or felony, perpetrated by shooting, stabbing, maiming, cutting or wounding, and it shall appear that the offence charged was

in fact committed by any such weapon as is above mentioned, and that the same was hidden or concealed from or kept out of the view of the person against whom it was used, until within the space of one half hour next preceding the commission of the act, or the infliction of the wound, which shall be charged to have caused the death, or constituted the felony, it shall be the duty of the examining court to state that the fact did so appear from the evidence; and if the court shall discharge or acquit the accused, such discharge or acquittal shall be no bar to an indictment for the same offence in the superior court having jurisdiction thereof, provided the same be found within one year thereafter. And whether the accused shall be by such court sent on for further trial or discharged, it shall be lawful to charge in the indictment that the offence was committed in any of the modes herein before described; and upon the trial it shall be the duty of the jury (if they find the accused not guilty of the murder or felony) to find also whether the act charged was in fact committed by the accused, though not feloniously, and whether the same was committed or done with or by means of any pistol, dirk, bowie knife, or other dangerous weapon, which was concealed from or kept out of the view of the person on or against whom it was used, for the space before mentioned, next preceding such use thereof; and if the jury find that the act was so committed, they shall assess a fine against the accused, and it shall be lawful for the court to pronounce judgment as in cases of misdemeanor. *Acquittal no bar to indictment in superior court.* *Offence how charged in indictment.* *Verdict of jury what to contain.* *Penalty.*

3. This act shall be in force from and after the first day of June next. *Commencement.*

---

CHAP. 102.—An ACT to extend the act for the temporary relief of the banks of this commonwealth.

(Passed February 20, 1838.)

1. *Be it enacted by the general assembly*, That the first, second and seventh sections of the act passed on the twenty-fourth day of June, eighteen hundred and thirty-seven, entitled, "an act for the temporary relief of the banks of this commonwealth, and for other purposes," shall be, and the same are hereby continued in force till the twentieth day of March next. *Laws for temporary relief of banks extended.* *See post. ch. 109. Acts extra session 1837, pp. 3, 4, § 1, 2, 7.*

2. *Be it further enacted*, That so much of the provisions of the act, entitled, "an act increasing the banking capital of the commonwealth," passed March the twenty-fifth, eighteen hundred and thirty-seven, as relates to the Bank of Virginia, the Farmers bank of Virginia, and the Bank of the Valley of Virginia, shall be and the same is hereby suspended until the first day of April next. *Part of act increasing banking capital suspended. Acts 1836-7, pp. 68-74.*

3. This act shall commence and be in force from the passage thereof. *Commencement.*

---

CHAP. 103.—An ACT further to extend the act for the temporary relief of the banks of this commonwealth.

(Passed March 16, 1838.)

1. *Be it enacted by the general assembly*, That the first, second and seventh sections of the act passed on the twenty-fourth day of June, eighteen hundred and thirty-seven, entitled, "an act for the temporary relief of the banks of this commonwealth," be and the same is hereby continued in force till the expiration of the present session of the legislature, any law to the contrary notwithstanding. *Laws for temporary relief of banks further extended.*

2. This act shall be in force from its passage. *Commencement.*

# 1839
# (ALABAMA)

**HEINONLINE**

DATE DOWNLOADED: Fri Mar 31 12:15:56 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1838 67 .

ALWD 7th ed.
, , 1838 67 .

Chicago 17th ed.
"," Alabama - General Assembly, Annual Session : 67-68

AGLC 4th ed.
" Alabama - General Assembly, Annual Session 67

OSCOLA 4th ed.
" 1838 67          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

seal, appoint such officers as they may think proper and remove the same for improper conduct or neglect of duty.

Sec. 2. *And be it further enacted*, The said Trustees or body corporate shall be priviledged to purchase, accept of and be invested **Trustees may hold property** with all manner of property, either real, personal, or mixed, to them and their successors in office, to have and to hold the same for the proper use and benefit of said Academy; *Provided*, the whole value of said property shall never exceed twenty thousand dollars.

Sec. 3. *And be it further enacted*, That when any vacancy **Vacancies how filled.** may occur by death, resignation, or otherwise, of any of the Trustees of said Academy, the survivors or residue of said Trustees, shall fill the same in such manner as shall be pointed out by the by-laws and regulations of said corporation; and that a majority of said board of Trustees shall be competent to transact all business pertaining to said corporation, and their acts shall be as binding and valid as if the whole board were present.

Sec. 4. *And be it further enacted*, That all property owned **Property not taxable.** by said Trustees in their aforesaid corporate capacity, shall be and it is hereby declared free from all taxation.

Approved Feb. 1st, 1839.

[No. 76.]
AN ACT
To declare Chockolocco Creek a public highway from Davis' to Bagleys Mills in the County of Talladega.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Chockolocco Creek from Davis' to Bagleys Mills in the County of Talladega is hereby declared a public highway.

Sec. 2. *And be it further enacted*, That if any person or persons, shall obstruct the navigation of said creek, by building milldams, felling trees, or in any other way, such person or persons, shall forfeit and pay the sum of five hundred dollars; one half to the State, and the other half to any person who may sue for the same, recoverable before any court of law having jurisdiction of the same and shall also forfeit and pay all damages which any person or persons, may sustain by reason of such obstructions, recoverable in like manner, and all such obstructions may be removed by order of the County or Circuit Courts of Talladega county as a public nuisance.

Approved Feb. 1, 1839.

[No. 77.]
AN ACT
To suppress the evil practice of carrying weapons secretly.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That if any person shall carry concealed about his person any species of fire arms, or any bowie knife, Arkansaw tooth-pick, or any other knife of the like kind, dirk, or any other deadly weapon, the person so offending, shall on conviction thereof, before any court having competent jurisdiction, pay a fine not less than fifty nor more than five hundred dollars, to be assessed by the jury trying the case; and be imprisoned for a term not exceeding three months, at the discretion of the Judge of said court.

1839.                    68

Judges to give this law a charge to ary

Sec. 2. *And be it further enacted*, That it shall be the duty of the Judges of the several Circuit Courts of this State to give this act specially in charge to the Grand Juries, at the commencement of each term of said Courts.

Sec. 3. *And be it further enacted*, That the Secretary of State shall cause this act to be published for three months in the papers of Mobile, Montgomery, Tuscumbia, Huntsville, Wetumpka and Tuscaloosa, which publishers shall be paid out of any money in the Treasury not otherwise appropriated.    Approved Feb. 1, 1839.

[No. 79]            AN ACT
To incorate the town of Mooresville in the county of Limestone.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the town of Mooresville, in the county of Limestone, be and the same is hereby incorporated, including all the territory within one fourth of a mile in every direction, from the store house of White and Dewoody in said town.

Sec. 2. *And be it further enacted*, That all free white male persons of said town living and residing within the limits of said incorporation above the age of twenty-one years, are hereby authorised to vote for and elect persons residing in said town, or corporate limits as trustees of said corporation, a majority of whom shall constitute a quorum to do business who are empowered to superintend the police of said town by passing such by-laws not contrary to the laws of the United States and of this State as they may think proper for the Government of said town, and for the suppression and removal of nuisances, within the above mentioned boundaries.

Sec. 3. *And be it further enacted*, That said trustees or a majority of them, are hereby authorised to assess such taxes on all property lying within the limits of said corporation as they may think proper, for all the purposes of a proper police and necessary revenue therefor.

Sec. 4. *And be it further enacted*, That the said trustees shall meet on the day next succeeding the election and choose from among themselves a President who shall preside and keep order at all meetings of the trustees; and the President of said trustees is hereby vested with all the powers and privileges of a Justice of the peace within the corporate limits of said town, and at the same time and place, the said trustees shall elect a treasurer for the corporation and a constable, and the said constable so elected shall be vested with all the powers, privileges, and duties of a constable within the corporate limits aforesaid, and to whom the taxes aforesaid shall be given in on oath, and who shall collect and pay over the same to the treasurer of said town within ten days after the same is collected.

Sec. 5. *And be it further enacted*, That the election of trustees shall be held on the second Monday in March 1839, and forever thereafter, on the same day in each succeeding year, from eleven o'clock, A. M. to four o'clock P. M., under the direction of a Justice of the Peace of said county; and two house-holders or free-holders residing within the limits aforesaid.

ADD-94

# 1852
# (TENNESSEE)




DATE DOWNLOADED: Mon Jun 26 17:29:05 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1851-1852 246 .

ALWD 7th ed.
, , 1851-1852 246 .

Chicago 17th ed.
"," Tennessee - 29th General Assembly, 1st Session : 246-247

AGLC 4th ed.
" Tennessee - 29th General Assembly, 1st Session 246

OSCOLA 4th ed.
" 1851-1852 246          Please note: citations are provided as a general
guideline. Users should consult their preferred citation format's style manual for
proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

246

dollars, instead of one hundred dollars, as now provided; and when the resolution of the president and directors is adopted by the stockholders, or a majority of them, at a called or regular meeting, the same shall become a part of the charter of said corporation.

SEC. 2. *Be it enacted*, That this amendment of the charter, when adopted by the stockholders, shall have no effect or operation upon any person or persons who have insured property at the office of said corporation or their agencies, or who are creditors of said corporation before the time when said amendment shall be adopted, but the corporation and stockholders shall, to such previous creditors or insured, be responsible as they were before the amendment was made.

Bonus.

SEC. 3. *Be it enacted*, That the bonus to be paid to the State, shall be the same amount as before the reduction of the capital.

Nashville Marine Fire Ins. & Life and Trust Co.

SEC. 4. *Be it enacted*, That the provisions of this act shall extend to and embrace the Nashville, Marine Fire Insurance and Life and Trust Company.

JORDAN STOKES,
*Speaker of the House of Representatives.*
M. R. HILL,
*Speaker of the Senate.*

Passed, February 26, 1852.

CHAPTER CLXIX.

AN ACT providing for the safe keeping of Gunpowder, and for other purposes.

Mayor and Aldermen may authorize building of magazines.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, That the mayor and aldermen of the incorporated towns in this State, shall have the power to authorize the building of magazines for the deposite and safe keeping of gunpowder, at such distance from the limits of the corporation as may be deemed safe and prudent.

To record suitable places.

SEC. 2. *Be it enacted*, That it shall be the duty of the mayor and aldermen, or other corporate authorities, to make an order in writing upon the records of their corporation, designating and appointing suitable places, within their respective counties, for such gunpowder magazines, at which places it shall be lawful to deposite and keep gunpowder, and such corporate authorities shall and may adopt and prescribe such rules, regula-

Digitized from Best Copy Available

247

tions and restrictions, in regard to the construction of said magazines, as may in their opinion best secure the community from danger.

Sec. 3. *Be it further enacted,* That an act heretofore Lawrenceburg. passed, incorporating the inhabitants of Lawrence-burg, in the county of Lawrence, be so amended, as to extend all the rights, power and privileges conferred by an act of the General Assembly, incorporating the inhabitants of the town of Columbia, in the county of Maury.

JORDAN STOKES,
*Speaker of the House of Representatives.*
M. R. HILL,
*Speaker of the Senate.*

Passed, February 24, 1852.

---

## CHAPTER CLXX.

AN ACT to authorize the formation of limited partnerships, and to amend an act, passed the 3d February, 1842, entitled "an act to encourage domestic manufactures."

Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That the first section of the said act of the 3d of February, 1842, be so amended as to read as follows: Limited partnerships for the transaction of any mercantile, mechanical or manufacturing business within this State, may be formed by two or more persons, upon the terms, with the rights and powers, and subject to the conditions and liabilities in this act prescribed; but the provisions of this law shall not be construed to authorize any such partnership for the purpose of banking or making insurance.

Sec. 2. *Be it enacted,* That the second section of said act, of February, 1842, be so amended as to read "one or more individuals, who shall be called general partners," instead of "two or more."

JORDAN STOKES,
*Speaker of the House of Representatives.*
M. R. HILL,
*Speaker of the Senate.*

Passed, February 23, 1852.

Digitized from Best Copy Available

ADD-98

# 1879
# (TENNESSEE)

DATE DOWNLOADED: Fri Jan 27 15:29:18 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1879 135 .

ALWD 7th ed.
, , 1879 135 .

Chicago 17th ed.
"," Tennessee - 41st General Assembly, 1st Session : 135-136

AGLC 4th ed.
" Tennessee - 41st General Assembly, 1st Session 135

OSCOLA 4th ed.
" 1879 135

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

[  135  ]

## CHAPTER XCV.

AN ACT to change the day in which the Criminal Docket shall be taken up for Marshall County, Tennessee.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That an Act passed March 22nd, 1877, entitled, "An Act to repeal the Act establishing a Criminal Court in the counties of Williamson, Maury, Giles and Marshall," be so amended that Section 5 of said Act shall hereafter read, that the Criminal Docket shall be taken up on the second Monday of the term of court, instead of the first Thursday of the term, as heretofore fixed by said Act, and that the second Monday of the term shall be the day on which the criminal part of said term of court shall commence for said Marshall County hereafter.

SEC. 2. *Be it further enacted,* That this Act take effect from and after its passage, the public welfare requiring it.

Passed March 14, 1879.

H. P. FOWLKES,
*Speaker of the House of Representatives.*
J. R. NEAL,
*Speaker of the Senate.*

Approved March 17, 1879.

ALBERT S. MARKS,
*Governor.*

———

## CHAPTER XCVI.

AN ACT to Prevent the Sale of Pistols.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That it shall be a misdemeanor for any person to sell, or offer to sell, or to bring into the

[ 136 ]

State for the purpose of selling. giving away, or otherwise disposing of belt or pocket pistols, or revolvers, or any other kind of pistols, except army or navy pistol ; *Provided* that this Act shall not be enforced against any persons now having license to sell such articles until the expiration of such present license.

*Sale of pistols forbidden.*

SEC. 2. *Be it further enacted*, That any person guilty of a violation of this Act, shall be subject to presentment or indictment, and on conviction, shall pay a fine of not less than twenty-five nor more than one hundred dollars, and be imprisoned at the discretion of the court.

*Penalty.*

SEC. 3. *Be it further enacted*, That it shall be the duty of the Criminal and Circuit Judges, and other Judges whose courts have criminal jurisdiction, to give this Act specially in charge to the grand jury at each term of the court.

*Judges to charge.*

SEC. 4. *Be it further enacted*, That it shall be the duty of the grand juries to send for witnesses, in all cases where they have good reason to believe, that the provisions of this Act have been violated. And upon satisfactory evidence of its violation, they shall make presentments of the same without a prosecutor.

*Grand jury powers.*

SEC. 5. *Be it further enacted*, That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

SEC. 6. *Be it further enacted*, That this Act shall take effect from and after its passage, the public welfare requiring it.

Passed March 14, 1879.

H. P. FOWLKES,
*Speaker of the House of Representatives.*
J. R. NEAL,
*Speaker of the Senate.*

Approved March 17, 1879.

ALBERT S. MARKS,
*Governor.*

----

## CHAPTER XCVII.

### AN ACT to amend the Law Taxing Wagons.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That sub-Section 38 of Section 553a

ADD-102

# 1881
# (ARKANSAS)

DATE DOWNLOADED: Fri Jan 27 14:31:22 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
1881 191 .

ALWD 7th ed.
, , 1881 191 .

Chicago 17th ed.
"," Arkansas - 23rd General Assembly, Regular Session : 191-192

AGLC 4th ed.
" Arkansas - 23rd General Assembly, Regular Session 191

OSCOLA 4th ed.
" 1881 191

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

buildings and grounds shall hereafter be used exclusively for
State purposes, the title to the same being in the State.

SEC. 2. That this act take effect and be in force thirty days
after its passage, allowing that time for said county to vacate
said rooms, &c.

Approved, April 1st, 1881.

---

## No. XCVI.

*AN ACT To Preserve the Public Peace and Prevent Crime.

SECTION

1 Carrying of certain weapons constituted a misdemeanor; *proviso*, excepting
   officers, and persons journeying.
2 Carrying such weapons otherwise than in the hand, a misdemeanor.
3 Selling or disposing of such weapons, a misdemeanor.
4 Violation of act punishable by fine from $50 to $200.
5 Justices of the Peace knowing of violations of provisions of act and refusing
   to proceed, to be fined and removed.
6 Same penalty denounced any other officer knowing of such offense.
7 Violators of act how proceeded against.
8 Conflicting laws repealed; act in force 90 days after passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That any person who shall wear or carry, in
any manner whatever, as a weapon, any dirk or bowie knife,
or a sword, or a spear in a cane, brass or metal knucks,
razor, or any pistol of any kind whatever, except such pistols
as are used in the army or navy of the United States, shall be
guilty of a misdemeanor ; *Provided,* That officers, whose duties
require them to make arrests, or to keep and guard prisoners,
together with the persons summoned by such officers, to aid
them in the discharge of such duties, while actually engaged
in such duties, are exempted from the provisions of this act.
*Provided, further*, That nothing in this act be so construed as
to prohibit any person from carrying any weapon when upon a
journey, or upon his own premises.

*192*          *ACTS OF ARKANSAS.*

SEC. 2. Any person, excepting such officers, or persons on a journey, and on his premises, as are mentioned in section one of this act, who shall wear or carry any such pistol as in [is] used in the army or navy of the United States, in any manner except uncovered, and in his hand, shall be deemed guilty of a misdemeanor.

SEC. 3. Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to any person *any person* any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol, of any kind whatever, except such as are used in the army or navy of the United States, and known as the navy pistol, or any kind of cartridge, for any pistol, or any person who shall keep any such arms or cartridges for sale, shall be guilty of a misdemeanor.

SEC. 4. Any person convicted of a violation of any of the provisions of this act, shall be punished by a fine of not less than fifty nor more than two hundred dollars.

SEC. 5. Any justice of the peace in this State, who, from his own knowledge, or from legal information, knows, or has reasonable grounds to believe, any person guilty of the violation of the provisions of this act, and shall fail or refuse to proceed against such person, shall be deemed guilty of a nonfeasance in office, and upon conviction thereof, shall be punished by the same fines and penalties as provided in section four of this act, and shall be removed from office.

SEC. 6. Any officer in this State, whose duty it is to make arrests, who may have personal knowledge of any person carrying arms contrary to the provisions of this act, and shall fail or refuse to arrest such person and bring him to trial, shall be punished, as provided in section four of this act.

SEC. 7. All persons violating any of the provisions of this act may be prosecuted in any of the courts of this State, having jurisdiction to try the same.

SEC. 8. All laws or parts of laws, in conflict with the provisions of this act are hereby repealed, and this act to take effect and be in force ninety days after its passage.

Approved, April 1st, 1881.

# 1882
# (MASSACHUSETTS)

212                    1882. — CHAPTERS 268, 269.

*Chap.* 268   AN ACT TO PROVIDE FOR THE CORRECTION OF OMISSIONS IN
                        THE REGISTRATION OF VOTERS.

*Be it enacted, etc., as follows:*

Name on voting list the preceding year, if omitted by mistake the current year, may be placed on list by order of assessors.

If a qualified voter of any city or town whose name was on the voting list of such city or town for the preceding year, who has been assessed for a poll tax for the current year, and who has paid a state or county tax assessed upon him for the preceding or current year, finds after the close of registration that his name is not placed on the voting list of the current year by reason of the same being omitted by clerical error or mistake from the list of polls as assessed and transmitted by the board of assessors to the board charged with the preparation of the voting list, the board of assessors shall, upon the personal application of such voter, correct such omission or mistake, and give to him a certificate of such correction, to be presented by him in person to the board charged with the preparation of the voting list, who shall, on the receipt thereof, place the name of such voter on the voting list of the precinct, ward or town in which he was entitled to be registered ;

Certificate to be issued if application is made on the day of election.

or if application is made on the day of election the said board last mentioned shall give to such voter a certificate, on presentation of which to the election officers of his precinct, ward or town he shall be allowed to vote therein ; and such certificate shall be returned and preserved in like manner as the ballots cast in such precinct, ward or town.                    *Approved May 26, 1882.*

*Chap.* 269   AN ACT TO PROVIDE FOR NOTICE OF THE PLACE OF STORAGE
                      OF GUNPOWDER AND OTHER EXPLOSIVE COMPOUNDS.

*Be it enacted, etc., as follows:*

Notice to be given to chief engineer of fire department, of place of storage of explosive compounds.

SECTION 1.   Any person who shall hereafter store or keep for sale gunpowder or any other explosive compound above the quantity of one pound in any building in any city or town of this Commonwealth shall, immediately on the receipt of such gunpowder or other explosive compound, deliver to the chief engineer of the fire department of such city or town, except in Boston, and in Boston to

Special provision applicable to Boston.

the board of fire commissioners, a statement in writing of the amount of such gunpowder or other explosive compound kept, or proposed to be kept, together with a description of the building and part of the building in which the same is kept, or proposed to be kept, sufficiently accurate for identification ; and no person shall store or keep for sale gunpowder or any other explosive compound in

any other place: *provided*, that in any town where there is no fire department such statement shall be delivered to one of the fire wards in such town.

Section 2.   Any person violating any of the provisions of this act shall be punished by a fine not exceeding one hundred dollars. *Penalty.*

Section 3.   This act shall take effect upon its passage.

*Approved May 26, 1882.*

---

An Act for the better protection of children.     *Chap.* 270

*Be it enacted, etc., as follows :*

Section 1.   Whoever, being the parent of a child less than two years old, abandons it within or without any building in this Commonwealth, or, having made a contract or provision for the board or maintenance of such child, absconds or fails to perform any such contract or provision, and for a period of four weeks after such absconding or failure neither visits nor removes such child, nor during said period notifies the overseers of the poor of the city or town where such parent resides of his or her inability to support such child, shall be punished by imprisonment, if a man, in the house of correction, and if a woman in the reformatory prison for women not exceeding two years, or, in case death shall result from such abandonment, not exceeding five years; but this act shall not apply to cases in which the omission to visit, remove or support such child, or to give such notice, arises from physical or mental disability. *Penalty on parent for abandonment of child less than two years old.*

Section 2.   Every person who knowingly and with wrongful intent aids or abets the abandonment of any such child, as set forth in the preceding section, shall be punished by a fine not exceeding one hundred dollars or by imprisonment not exceeding two years in the house of correction. *Penalty for aiding or abetting.*

Section 3.   Every person who receives for board a child under the age of one year, knowing or having reason to believe it to be illegitimate, shall forthwith notify the overseers of the poor of the city or town in which he resides of the fact of such reception, and, if requested by such overseers, shall also so notify the state board of health, lunacy and charity.   The parent or parents of such child shall, when called upon by said board, or such overseers, give to said board or such overseers satisfactory security for the maintenance of such child.   The parents of such children shall, when called upon, give true answers *Person receiving for board an illegitimate child under age of one year to notify overseers of the poor.*

# 1923
# (VERMONT)

**HEINONLINE**

DATE DOWNLOADED: Fri Mar 24 10:20:53 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
Public Laws of Vermont, 1933 (1933).

ALWD 7th ed.
. Public Ls of Vermont, 1933 (1933).

APA 7th ed.
(1933). Public Laws of Vermont, 1933. Montpelier, Vt., Pub. by authority The Capital
City Press.

Chicago 17th ed.
Public Laws of Vermont, 1933. Montpelier, Vt., Pub. by authority The Capital City
Press.

McGill Guide 9th ed.
Public Ls of Vermont, 1933 (Montpelier, Vt.: Pub. by authority The Capital City
Press., 1933)

AGLC 4th ed.
Public Laws of Vermont, 1933 (Pub. by authority The Capital City Press., 1933

MLA 9th ed.
Public Laws of Vermont, 1933. Montpelier, Vt., Pub. by authority The Capital City
Press. HeinOnline.

OSCOLA 4th ed.
Public Laws of Vermont, 1933. Montpelier, Vt., Pub. by authority The Capital City
Press.        Please note: citations are provided as a general guideline. Users
should consult their preferred citation format's style manual for proper citation
formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

930                      DEPARTMENT OF FISH AND GAME.              [Title 25.

Lake in the town of Barnard, or who possesses such a fish, shall be
fined five dollars and five dollars additional for each fish so taken or
possessed. A person who takes more than twenty pounds of legal pike
perch from such waters in one legal day shall be fined five dollars for
each pound of fish so taken in excess of twenty pounds; provided how-
ever, when two or more persons, angling from the same boat, take more
than forty pounds of such fish from such waters in one legal day, each
shall be fined five dollars for each pound of such fish so taken in excess of
forty pounds.

1925, No. 121.
1923, No. 120, § 1.
1923, No. 125, § 1.
G. L. § 6376.

SEC. 5708. Lake Mitchell; special provisions. The fish mentioned
in section 5655 may be taken or possessed by the method known as fly
fishing in the waters of Lake Mitchell in the town of Sharon from May
1 to October 1, subject to the provisions of such section.

# CHAPTER 235.

## (5709-5754)

### BIRDS AND QUADRUPEDS.

#### Manner of Taking, General Provisions.

G. L. § 6407.

SEC. 5709. Use of gun; time, etc. A person who takes game,
except with a gun fired at arm's length, unless otherwise provided, or
who takes the same between sunset and sunrise, unless otherwise pro-
vided, shall be fined ten dollars and five dollars additional for each bird
or quadruped so taken or possessed. A person may take birds and
quadrupeds during the open season therefor, with the aid of a dog, unless
otherwise prohibited.

G. L. § 6408.

SEC. 5710. Use of set guns. A person who at any time sets or
uses any device the object of which is to discharge a firearm for the
purpose of taking any bird or animal shall be fined not more than five
hundred dollars nor less than fifty dollars, and shall also be liable for
twice the amount of damage caused by his act to be recovered by the
person so damaged, in an action of tort, on this statute.

1923, No. 130, § 1.

SEC. 5711. Use of machine guns and automatic rifles; penalty.
A person engaged in hunting for game who uses, carries, or has in his
possession a machine gun of any kind or description, or an automatic
rifle of military type with a magazine capacity of over six cartridges,
shall be fined not more than five hundred dollars nor less than fifty
dollars. The presence of such a firearm in a hunting camp shall be
presumptive evidence that the possessor of such a firearm has violated
the provisions of this section.

1923, No. 129, § 3.

SEC. 5712. Shooting from motor vehicle or logging train;
penalty. A person who from a motor vehicle or logging train takes
quadrupeds or game birds by shooting shall be fined not more than
fifty dollars nor less than ten dollars and five dollars additional for each
quadruped or bird so taken.

1923, No. 129, § 2.

SEC. 5713. Snaring prohibited, penalty. A person who takes an
animal by snaring, or who possesses a snare with intent to use the same
shall be fined not more than fifty dollars nor less than twenty-five dollars.

G. L. § 6410.

SEC. 5714. Same; use of motor boat or jack; presumptive
evidence. A person who takes a wild duck or a wild goose from a boat
propelled otherwise than by hand shall be fined ten dollars and five
dollars additional for each bird so taken. A person who takes such a
bird with the aid of a jack or other light shall be fined one hundred dollars
and five dollars additional for each bird so taken. The presence of a

# 1927
# (MICHIGAN)

# PUBLIC ACTS

OF

# THE LEGISLATURE

OF THE

## STATE OF MICHIGAN

PASSED AT THE

## REGULAR SESSION OF 1927

CONTAINING JOINT RESOLUTIONS AND AMENDMENTS
TO THE CONSTITUTION



COMPILED BY

### JOHN S. HAGGERTY

SECRETARY OF STATE

LANSING, MICHIGAN.
ROBERT SMITH CO., STATE PRINTERS,
1927.

other purpose. Such persons shall hold office during the term of their employment by the state highway department but the authority herein vested shall cease upon the termination of such employment. The persons so appointed shall by reason of such appointment be members of the department of public safety during the terms of such appointment but shall serve without pay as members thereof.

Approved June 2, 1927.

---

## [No. 372.]

AN ACT to regulate and license the selling, purchasing, possessing and carrying of certain firearms; to prohibit the buying, selling or carrying of certain firearms without a license therefor; to prohibit the possession of certain weapons and attachments; to prohibit the pawning of certain firearms; to prohibit the sale, offering for sale, or possession for the purpose of sale of written or printed matter containing any offer to sell or deliver certain firearms or devices within this state; to provide penalties for the violations of this act, and to repeal act number two hundred seventy-four of the public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen.

*The People of the State of Michigan enact:*

SECTION 1. The word "pistol" as used in this act shall mean any firearm, loaded or unloaded, thirty inches or less in length. The word "purchaser" shall mean any person who receives a pistol from another by purchase, gift or loan. The word "seller" shall mean any person who sells, furnishes, loans or gives a pistol to another. *Words defined.*

SEC. 2. No person shall purchase a pistol as defined in this act without first having obtained a license therefor as *License before purchase.*

888                    PUBLIC ACTS, 1927—No. 372.

prescribed herein. The commissioner or chief of police, or his duly authorized deputy, in incorporated cities or in incorporated villages having an organized department of police, and the sheriff, or his authorized deputy, in parts of the respective counties not included within incorporated cities or villages, are hereby authorized to issue licenses to purchase **To whom granted.** pistols to applicants residing within the respective territories herein mentioned. No such license shall be granted to any person except he be nineteen years of age or over, and has resided in this state six months or more, and in no event shall such a license be issued to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. Applications for such licenses shall be signed by the applicant under oath upon forms provided by the commis- **Executed in duplicate.** sioner of public safety. Licenses to purchase pistols shall be executed in duplicate upon forms provided by the commissioner of public safety and shall be signed by the licensing authority. One copy of such license shall be delivered to the applicant and the duplicate of such license shall be retained by such licensing authority as a permanent official record for a period of six years. Such license shall be void unless used **Misdemeanor; penalty.** within ten days after the date of its issue. Any person who shall sell to another any pistol as defined in this act without complying with the requirements of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail not more than ninety days, or both such fine and imprisonment in the discretion of the court. Such license shall be signed in ink by the holder thereof in the presence of the person selling, loaning or giving a pistol to such licensee and shall thereupon be taken up by such person, signed by him in ink and shall be delivered or sent by registered mail within forty-eight hours to the commissioner of public safety. The seller shall certify upon said license in the space provided therefor the name of the person to whom such pistol was delivered, the make, style, calibre and number of such pistol, and shall further certify that such purchaser signed his name on said license in the presence of the seller. The provisions of this section shall not apply to the purchase of pistols from wholesalers by dealers regularly engaged in the business of selling pistols at retail, nor to the sale, barter or exchange of pistols kept solely as relics, souvenirs or curios.

**Unlawful to manufacture, etc., certain firearms, etc.** SEC. 3. It shall be unlawful within this state to manufacture, sell, offer for sale, or possess any machine gun or firearm which can be fired more than sixteen times without reloading, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb or bombshell, or any blackjack, slung shot, billy, metallic **Penalty for violation.** knuckles, sandclub, sandbag or bludgeon. Any person convicted of a violation of this section shall be guilty of a felony and shall be punished by a fine not exceeding one thousand

dollars or imprisonment in the state prison not more than five years, or by both such fine and imprisonment in the discretion of the court. The provisions of this section shall not apply, however, to any person, firm or corporation manufacturing firearms, explosives or munitions of war by virtue of any contracts with any department of the government of the United States, or with any foreign government, state, municipality or any subdivision thereof.

SEC. 4. Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto, or knife having a blade over three inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Felony, what deemed. Penalty.*

SEC. 5. No person shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him. No person shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license therefor as herein provided. Any person violating the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars or imprisonment in the state prison for not more than five years, or by both such fine and imprisonment in the discretion of the court. *Unlawful to carry, etc., dagger, etc.*

SEC. 6. The prosecuting attorney, the commissioner or chief of police and the commissioner of public safety or their respective authorized deputies in incorporated cities or in incorporated villages having an organized department of police, and the prosecuting attorney, the commissioner of public safety or their authorized deputies, and the sheriff, under-sheriff or chief deputy sheriff in parts of the respective counties not included within incorporated cities or villages shall constitute boards exclusively authorized to issue licenses to carry pistols concealed on the person to applicants residing within the respective territories herein mentioned. The county clerk of each county shall be clerk of such licensing boards, which boards shall be known in law as "The Concealed Weapon Licensing Board." No such license to carry a pistol concealed on the person shall be granted to any person except he be nineteen years of age or over and has resided in this state six months or over, and in no event shall such license be issued unless it appears that the applicant has good reason to fear injury to his person or property, or has *Concealed weapon licensing board. To whom license granted.*

890                PUBLIC ACTS, 1927—No. 372.

other proper reasons, and that he is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. **Chairman of board.** The prosecuting attorney shall be the chairman of the said board, which shall convene at least once in each calendar month and at such other times as they shall be called to convene by the chairman. Such licenses shall be issued only upon written application signed by the applicant and on his oath and upon forms provided by the commissioner of public safety. Such licenses shall issue only with the approval of a majority of said board and shall be executed in triplicate upon forms provided by the commissioner of public safety and shall be signed in the name of the concealed weapon licensing board by the county clerk and the seal of the circuit court affixed thereto. One copy of such license shall be delivered to the applicant, the duplicate of said license shall be retained by the county clerk as a permanent official record for a period of six years, and the triplicate of such license shall be forwarded to the commissioner of public safety who shall file and index licenses so received by him and keep the same as a permanent official record for a period **Duration of license.** of six years. Each license shall be issued for a definite period of not more than one year, to be stated in the license, and no renewal of such license shall be granted except upon the filing of a new application. Every license issued hereunder shall bear the imprint of the right thumb of the licensee, or, if that be not possible, of the left thumb or some other finger of such licensee. Such licensee shall carry such license upon his person at all times when he may be carrying a pistol concealed upon his person and shall display such license upon the request of any peace officer.

**When license to expire.**    Sec. 7. All licenses heretofore issued in this state permitting a person to carry a pistol concealed upon his person shall expire at midnight, December thirty-one, nineteen hundred twenty-seven.

**When license revoked.**    Sec. 8. The licensing board herein created by section six may revoke any license issued by it upon receiving a certificate of any magistrate showing that such licensee has been convicted of violating any of the provisions of this act, or has been convicted of a felony. Such license may also be revoked whenever in the judgment of said board the reason for granting such license shall have ceased to exist, or whenever said board shall for any reasonable cause determine said licensee to be an unfit person to carry a pistol concealed upon his person. No such license shall be revoked except upon written complaint and then only after a hearing by said board, of which at least seven days' notice shall be given to the licensee either by personal service or by registered mail to his last known address. The clerk of said licensing board is hereby authorized to administer an oath to any person testifying before such board at any such hearing.

SEC. 9.  On or before the first day of November, nineteen hundred twenty-seven, any person within this state who owns or has in his possession a pistol as defined in this act, shall, if he reside in an incorporated city or an incorporated village having an organized police department, present such weapon for safety inspection to the commissioner or chief of police of such city or village; if such person reside in a part of the county not included within the corporate limits of such city or village he shall so present such pistol for safety inspection to the sheriff of such county.  Any person owning or coming into possession of a pistol after the first day of November, nineteen hundred twenty-seven, shall forthwith present such pistol for safety inspection in the manner provided in this section.  A certificate of inspection shall thereupon be issued in triplicate on a form provided by the commissioner of public safety, containing the name, age, address, description and signature of the person presenting such pistol for inspection, together with a full description thereof; the original of such certificate shall be delivered to the registrant; the duplicate thereof shall be mailed to the commissioner of public safety and filed and indexed by him and kept as a permanent official record for a period of six years, and the triplicate of such certificate shall be retained and filed in the office of said sheriff, or commissioner or chief of police. as the case may be.  The provisions of this section shall not apply to wholesale or retail dealers in firearms or to collections of pistols kept solely for the purpose of display, as relics, souvenirs, curios or antiques, nor to weapons heretofore registered under the provisions of section eleven of act number three hundred thirteen of the public acts of nineteen hundred twenty-five.  Any person who fails to comply with the provision of this section shall be guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or imprisonment in the county jail not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

*Safety inspection of weapons.*

*Certificate issued.*

SEC. 10.  No pawnbroker shall accept a pistol in pawn. Any person violating this section of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or imprisonment in the county jail for not more than ninety days or by both such fine and imprisonment in the discretion of the court.

*Pistol not accepted in pawn.*

SEC. 11.  No person shall wilfully alter, remove or obliterate the name of the maker, model, manufacturer's number or other mark of identity of any pistol.  Possession of any such firearm upon which the number shall have been altered, removed or obliterated, shall be presumptive evidence that such possessor has altered, removed or obliterated the same.  Any person convicted under this section shall be punished by a fine not to exceed five hundred dollars or by imprisonment

*Alteration of pistol unlawful.*

in the state prison not to exceed two years or by both such fine and imprisonment in the discretion of the court.

**Exceptions to act.**

SEC. 12.   The provisions of section two, three, five and nine shall not apply to any peace officer of the state or any sub-division thereof who is regularly employed and paid by the state or such subdivision, or to any member of the army, navy or marine corps of the United States, or of organizations authorized by law to purchase or receive weapons from the United States or from this state, nor to the national guard or other duly authorized military organizations when on duty or drill, nor to the members thereof in going to or returning from their customary places of assembly or practice, nor to a person licensed to carry a pistol concealed upon his person issued by another state, nor to the regular and ordinary trans-portation of pistols as merchandise, or to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

**When un-lawfully possessed.**

SEC. 13.   When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases that any pistol or other weapon or device mentioned in this act is unlawfully possessed or carried by any person, such magistrate shall, if he be satisfied that there is reasonable cause to believe the matters in said complaint be true, issue his warrant directed to any peace officer, commanding him to search the person or place described in such complaint, and if such pistol, weapon or device be there found, to seize and hold the same as evidence of a violation of this act.

**Forfeited to state.**

SEC. 14.   All pistols, weapons or devices carried or pos-sessed contrary to this act are hereby declared forfeited to the state.

**Certain books, etc., unlawful to sell, etc.**

SEC. 15.   It shall be unlawful to sell or deliver within this state, or to offer or expose for sale, or to have in possession for the purpose of sale, any book, pamphlet, circular, maga-zine, newspaper or other form of written or printed matter offering to sell or deliver, or containing an offer to sell or deliver to any person within this state from any place without this state any pistol or any weapon or device mentioned in section three hereof. The provisions of this section shall not apply to sales of or offers to sell pistols at wholesale to per-sons regularly engaged in the business of selling such pistols at wholesale or retail, nor to sales or offers to sell such pistols made or authorized by the United States government or any department or agency thereof.

**Penalty for violation.**

SEC. 16.   Any person violating the provisions of section fifteen of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed one hundred dollars, or by imprisonment in the county jail not to exceed ninety days, or by both such fine and imprison-ment in the discretion of the court.

SEC. 17. Act number two hundred seventy-four of the **Acts repealed.** public acts of nineteen hundred eleven, being sections fifteen thousand two hundred thirty-six, fifteen thousand two hundred thirty-seven, fifteen thousand two hundred thirty-eight, fifteen thousand two hundred thirty-nine, fifteen thousand two hundred forty, fifteen thousand two hundred forty-one, fifteen thousand two hundred forty-two, fifteen thousand two hundred forty-three, fifteen thousand two hundred forty-four, fifteen thousand two hundred forty-five and fifteen thousand two hundred forty-six of the compiled laws of nineteen hundred fifteen; act number three hundred thirteen of the public acts of nineteen hundred twenty-five; and section sixteen of chapter one hundred sixty-two of the revised statutes of eighteen hundred forty-six, being section fifteen thousand six hundred forty-one of the compiled laws of nineteen hundred fifteen, are hereby repealed: *Provided. however,* That any **Proviso.** proceedings pending under any of said sections herein repealed shall not be affected hereby but shall be concluded in accordance with the law of such repealed section or sections.

SEC. 18. This act is declared to be severable, and should **Saving clause.** any section hereof be hereafter declared unconstitutional or otherwise invalid, the remainder of the act shall not be affected thereby.

Approved June 2, 1927.

----

### [No. 373.]

AN ACT to amend section twenty-five of chapter thirty of act number three hundred fourteen of the public acts of nineteen hundred fifteen, entitled "An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms of civil actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act." being section thirteen thousand two hundred fifty-three of the compiled laws of nineteen hundred fifteen, as amended by act number two hundred forty-three of the public acts of nineteen hundred seventeen, and to add a new section thereto to stand as section thirty-one.

### *The People of the State of Michigan enact:*

SECTION 1. Section twenty-five of chapter thirty of act **Section** number three hundred fourteen of the public acts of nineteen **amended.**

# 1927
# (RHODE ISLAND)



HEINONLINE

DATE DOWNLOADED: Wed Apr  5 15:31:23 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1927 256 .

ALWD 7th ed.
, , 1927 256 .

Chicago 17th ed.
"," Rhode Island - General Assembly, January Session : 256-262

AGLC 4th ed.
'' Rhode Island - General Assembly, January Session 256

OSCOLA 4th ed.
'' 1927 256        Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

256     JANUARY SESSION, 1927—CHAPTER 1052.

## CHAPTER 1052.

H 729 A
Approved
April 22, 1927.

AN ACT TO REGULATE THE POSSESSION OF FIREARMS.

*It is enacted by the General Assembly as follows:*

Certain words
and phrases,
how construed:

SECTION 1. When used in this act the following words and phrases shall be construed as follows:

"Pistol."

"Pistol" shall include any pistol or revolver, and any shot gun, rifle or similar weapon with overall length less than twenty-six inches, but shall not include any pistol without a magazine or any pistol or revolver designed for the use of blank cartridges only.

"Machine
gun."

"Machine gun" shall include any weapon which shoots automatically and any weapon which shoots more than twelve shots semi-automatically without reloading.

"Firearm."

"Firearm" shall include any machine gun or pistol.

"Person."

"Person" shall include firm, association or corporation.

"Licensing
authorities."

"Licensing authorities" shall mean the board of police commissioners of a city or town where such board has been instituted, the chief of police or superintendent of police of other cities and towns having a regular organized police force, and in towns where there is no chief of police or superintendent of police it shall mean the town clerk who may issue licenses upon the recommendation of the town sergeant;

"Crime of
violence."

"Crime of violence" shall mean and include any of the following crimes or an attempt to commit any of the same, viz.: murder, manslaughter, rape, mayhem, assault or battery involving grave bodily injury, robbery, burglary, and breaking and entering.

"Sell."

"Purchase."

"Purchasing."

"Sell" shall include let or hire, give, lend and transfer, and the word "purchase" shall include hire, accept and borrow, and the expression "purchasing" shall be construed accordingly."

ADD-124

Sec. 2. If any person shall commit or attempt to commit a crime of violence when armed with or having available any firearm, he may in addition to the punishment provided for such crime of violence be punished as provided in this act. In the trial of a person for committing or attempting to commit a crime of violence the fact that he was armed with or had available a pistol without license to carry the same, or was armed with or had available a machine gun, shall be prima facie evidence of his intention to commit said crime of violence.

*Additional punishment under this act.*

*What to be prima facie evidence of intention to commit crime of violence.*

Sec. 3. No person who has been convicted in this state or elsewhere of a crime of violence shall purchase, own, carry or have in his possession or under his control any firearm.

*Who to be denied firearms.*

Sec. 4. No person shall, without a license therefor, issued as provided in section six hereof, carry a pistol in any vehicle or concealed on or about his person, except in his dwelling house or place of business or on land possessed by him, and no person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this act.

*Carrying of pistol forbidden, except when.*

*Machine gun.*

Sec. 5. The provisions of section four shall not apply to sheriffs, deputy sheriffs, the superintendent and members of the state police, prison or jail wardens or their deputies, members of the city or town police force or other duly appointed law enforcement officers, nor to members of the army, navy or marine corps of the United States, or of the national guard, when on duty, or of organizations by law authorized to purchase or receive firearms from the United States or this state, nor to officers or employees of the United States authorized by law to carry a concealed firearm, nor to duly authorized military organizations when on duty, nor to the members thereof when at or going to or from

*Sec. 4 not to apply to whom.*

258    JANUARY SESSION, 1927—CHAPTER 1052.

their customary places of assembly, nor to the regular and ordinary transportation of pistols as merchandise, nor to any person while carrying a pistol unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business, or in moving goods from one place or abode or business to another.

License to carry concealed pistol may be issued, to whom, when and how.

SEC. 6. The licensing authorities of any city or town shall upon application of any person having a bona fide residence or place of business within such city or town, or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the authorities of any other state or subdivision of the United States, issue a license to such person to carry concealed upon his person a pistol within this state for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol, and

License, form of.

that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the attorney-general and shall bear the fingerprint, name, address, description and signature of the licensee and the reason given for desiring a license.

Triplicate license, how disposed of.

The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent to the attorney-general and the triplicate shall be preserved for six years by the licensing authorities issuing said

Fee for license.

license. A fee of two dollars may be charged and shall be paid for each license, to the officer issuing the same.

Applicant for license to give bond.

Before issuing any such permit the applicant for the same shall be required to give bond to the city or town treasurer in the penal sum of three hundred dollars, with surety satisfactory to the authority issu-

ADD-126

JANUARY SESSION, 1927—CHAPTER 1052.    259

ing such permit, to keep the peace and be of good behavior. Every such permit shall be valid for one year from the date when issued unless sooner revoked. The fee charged for the issuing of such license or permit shall be applied in accordance with the provisions of section thirty-three of chapter 401 of the general laws.

SEC. 7. The attorney-general may issue a permit to any banking institution doing business in this state or to any public carrier who is engaged in the business of transporting mail, money, securities or other valuables, to possess and use machine guns under such regulations as the attorney-general may prescribe. *Attorney-general may issue permit to banking institutions, etc.*

SEC. 8. It shall be unlawful within this state to manufacture, sell, purchase or possess except for military or police purposes, any muffler, silencer or device for deadening or muffling the sound of a firearm when discharged. *Muffler or silencer or firearm forbidden.*

SEC. 9. Any person, except a member of the state police, the sheriff or his deputies, or a member of the police force of any city or town, or a member of the army, navy, or marine corps of the United States, or of the national guard or organized reserves when on duty, who possesses, or carries on or about his person or in a vehicle, a bomb or bomb shell, except for blasting or other commercial use, or who, with intent to use the same unlawfully against the person or property of another, possesses or carries any explosive substance, or any noxious liquid, gas or substance, shall be guilty of a violation of this act and punished as hereinafter provided. *Possession or carrying of bomb, explosive substance, or noxious liquid, gas, etc., forbidden.*

SEC. 10. No property right shall exist in any firearm unlawfully possessed, carried or used, and all such firearms are hereby declared to be nuisances and forfeited to the state. When such forfeited firearms shall be *Certain firearms to be nuisances and forfeited. Disposition of forfeited firearms.*

260    JANUARY SESSION, 1927—CHAPTER 1052.

taken from any person, they shall be surrendered to the chief or superintendent of police in the city or town in which they are taken, or to the town sergeant of such town where there is no chief of police or superintendent. The officer to whom they are surrendered shall, except upon a certificate of a justice of the superior court or the attorney-general that the non-destruction thereof is necessary or proper to the ends of justice, proceed to destroy all such firearms at stated intervals of not more than one year. Provided, however, that if any such firearm shall be found to be the property of an innocent owner, it shall be returned to such owner if and when no longer needed for purposes of evidence.

**Giving of false information, etc., forbidden.** SEC. 11. No person shall in purchasing or otherwise securing delivery of a pistol or in applying for a license to carry the same, give false information or offer false evidence of his identity.

**Mark of identification not to be removed from firearm.** SEC. 12. No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any firearm. Possession of any firearm upon which any such mark shall have been changed, altered, removed, or obliterated, shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

**This act not to apply to antique firearms.** SEC. 13. This act shall not apply to antique firearms unsuitable for use nor to collections of firearms as curios, souvenirs, or for educational, scientific or any similar purposes without intent to use such firearms.

**Penalties for violation of the provisions of this act.** SEC. 14. Any violation of any provision of this act shall be punished by a fine of not more than one thousand dollars or imprisonment for not more than five years, or by both such fine and imprisonment.

JANUARY SESSION, 1927—CHAPTER 1052.    261

SEC. 15.  No negative allegation of any kind need be averred or proved in any complaint under this act and the carrying or use of any firearm contrary to the provisions of this act shall be evidence that the possession, carrying or use of any such firearm is unlawful, but the respondent in any such case may show any fact that would render the possession, or use, or carrying of such firearm lawful.

*Negative allegation need not be averred, etc.*

SEC. 16.  Every officer authorized to make an arrest may without complaint and warrant arrest any person who has in his possession any firearm whenever such officer has reasonable ground to suspect that such person possesses or is using or is carrying such firearm contrary to law.  Any person so arrested may be detained a reasonable time, not exceeding twenty-four hours, for the purpose of making an investigation concerning such person, but no person so arrested shall be detained longer than twenty-four hours without complaint being made against him before some proper court or justice.  If the officer making the arrest shall at any time within the said twenty-four hours satisfy himself that there is no ground for making a criminal complaint against such person, he shall thereupon be discharged from custody.

*Officer may arrest without complaint and warrant.*

*Person arrested may be detained not exceeding 24 hours.*

SEC. 17.  In the case of the conviction under this act of a person who is not a citizen of the United States, it shall be the duty of the clerk of the court in which such conviction is secured to certify the fact of such conviction to the proper officer of the United States government having supervision of the deportation of aliens.

*Conviction of alien to be certified to U. S. officer in charge of deportation.*

SEC. 18.  The provisions and penalties prescribed in this act shall take the place of the provisions and penalties of sections thirty-two to thirty-five inclusive of chapter 401 of the general laws in so far as such pro-

*Provisions and penalties of this act to be substituted for certain others provided by law.*

visions and penalties of said sections of said chapter 401 relate to the possession and carrying of air guns, pistols or firearms of any description, and upon the passage of this act said provisions and penalties of said sections in so far as they relate to air guns, pistols and firearms shall be repealed.

**Certain pending legal proceedings not affected by this act.** SEC. 19. No offense committed, or forfeiture incurred, under any law hereby amended and before the time when this act goes into effect, and no suit, prosecution or indictment pending at the time when this act goes into effect, for any offence committed or for the recovery of any fine or penalty or forfeiture incurred under any law hereby amended, shall be affected by the passage of this act, but, proceedings relating to the same shall be taken and continued as if this act had not been passed.

**This act, how cited.** SEC. 20. This act shall take effect upon its passage and may be cited as the Firearms Act.

## CHAPTER 1053.

**H 779 Approved April 22, 1927.** AN ACT IN AMENDMENT OF SECTION 17 OF CHAPTER 98 OF THE GENERAL LAWS, ENTITLED "MOTOR VEHICLES AND THE OPERATION THEREOF."

*It is enacted by the General Assembly as follows*:

Section 1. Section 17 of chapter 98 of the general laws, entitled "Motor vehicles and the operation thereof," is hereby amended so as to read as follows:

**Rules of the road for operation of motor vehicle.** "Sec. 17. Upon approaching any person standing or walking in the traveled portion of any public highway, or a horse or any other draft animal being led, ridden or driven therein, or a crossing of intersecting public highways, or a bridge, or a sharp turn, or a curve, or a steep descent, and also in passing such

# 1931
# (ILLINOIS)

DATE DOWNLOADED: Thu Mar 30 09:25:29 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1931 1 .

ALWD 7th ed.
, , 1931 1 .

Chicago 17th ed.
"," Illinois - 57th General Assembly, Regular Biennial Session : 1-928

AGLC 4th ed.
" Illinois - 57th General Assembly, Regular Biennial Session 1

OSCOLA 4th ed.
" 1931 1        Please note: citations are provided as a general guideline. Users
should consult their preferred citation format's style manual for proper citation
formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

452                CRIMINAL CODE

owner or by destroying it or disposing of it according to the laws of the State of Illinois. Any officer of the law violating the provisions of this section is guilty of a misdemeanor and subject to a fine of not less than $100 nor more than $500, or imprisonment in the county jail for not less than one month nor more than six months, or both such fine and imprisonment.

APPROVED July 3, 1931.                (Smith-Hurd, p. 1030)

## MACHINE GUNS.

§ 1.  Definitions.
§ 2.  Unlawful sale, possession, etc.— Exceptions.
§ 3.  Regulations for manufacturers and merchants.
§ 4.  Register to be kept.
§ 5.  Penalties.
§ 6.  Search warrants.
§ 7.  Committing crime when armed with machine gun—Penalty.

(SENATE BILL No. 18. APPROVED JULY 2, 1931.)

AN ACT to regulate the sale, possession and transportation of machine guns.

*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

SECTION 1. For purposes of this Act the term "machine gun" applies to and includes all firearms commonly known as machine rifles, machine guns and sub-machine guns of any calibre whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device.

The term "manufacturer" shall apply to and include all persons manufacturing machine guns; and

The term "merchant" shall apply to and include all persons dealing with machine guns as merchandise.

§ 2. It is unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun within this State, except that

1. Sheriffs, constables, marshals, police officers and other duly appointed peace officers may purchase, possess, carry and transport machine guns.

2. The provisions of this Act shall not apply to the Army, Navy, or Marine Corps of the United States, the National Guard, and organizations authorized by law to purchase or receive machine guns from the United States, or from this State, and the members of such Corps, National Guard and organizations while on duty, may possess, carry and transport machine guns.

3. Persons, organizations or institutions possessing war relics may purchase and possess machine guns which are relics of any war in which the United States was involved, may exhibit and carry such machine guns in the parades of any military organization, and may sell, offer to sell, loan or give such machine guns to other persons, organizations or institutions possessing war relics.

4. Guards or messengers employed by common carriers, banks and trust companies, and pay-roll guards or messengers may possess and carry machine guns while actually employed in and about the shipment,

transportation or delivery, or in the guarding of any money, treasure, bullion, bonds or other thing of value, and their employers may purchase or receive machine guns and keep them in their possession when such guns are not being used by such guards or messengers.

5. Manufacturers and merchants may sell, keep or offer for sale, loan or give away, purchase, possess and transport, machine guns, in the same manner as other merchandise except as hereinafter provided, and common carriers may possess and transport unloaded machine guns, as other merchandise.

§ 3. No manufacturer or merchant shall permit any machine gun to pass from his possession to the possesion of any person other than

1. A manufacturer or a merchant.

2. A common carrier for shipment to a manufacturer or merchant.

3. A duly authorized agent of the government of the United States, or of this State, acting in his official capacity.

4. A person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of section 2 of this Act.

Manufacturers or merchants shall not deliver a machine gun to any of the persons authorized to purchase such gun under the provisions of exceptions 1 and 4 of section 2 hereof, unless such person presents a written permit to purchase and possess a machine gun, signed by the sheriff of the county wherein such manufacturer or merchant has his place of business or delivers such machine gun. The manufacturer or merchant shall retain such permit and keep it on file in his place of business. Each sheriff shall keep a record of all such permits issued by him.

§ 4. Every manufacturer or merchant shall keep a register of all machine guns manufactured or handled by him. This register shall show the date of the sale, loan, gift, delivery or receipt of any machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received, and the purpose for which the person to whom the machine gun was sold, loaned, given or delivered, purchased or obtained said machine gun.

Upon demand, every manufacturer or merchant shall permit any sheriff or deputy sheriff, or any police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register herein required and all written permits to purchase or possess a machine gun, which he has retained and filed in his place of business, for inspection by such officer.

§ 5. Any manufacturer or merchant who

1. Passes possession of a machine gun to any person not authorized to purchase and/or possess such gun under the provisions hereof; or

2. Passes possession of a machine gun to a person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of section 2 of this Act, without first receiving the written permit of a sheriff, as herein required; or

3. Fails to keep an accurate register, as provided in section 4; or

4. Fails, or is unable to produce or account for a sheriff's permit

454                    CRIMINAL CODE

for each machine gun sold by him for which a permit is necessary under the provisions of section 3 hereof, upon conviction, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years.

Any other person who sells, keeps or offers for sale, loans or gives away, purchases, possesses, carries or transports any machine gun within this State, except as authorized by this Act, upon conviction, shall be imprisoned in the penitentiary for not less than one nor more than ten years.

Whoever, having been convicted of murder, robbery, burglary or assault with intent to commit a felony, thereafter violates any of the provisions of this Act, upon conviction, shall be imprisoned in the penitentiary for not less than three nor more than ten years.

§ 6. Warrants to search any house or place and seize any machine gun possessed in violation of this Act, may issue in the same manner and under the same restrictions as is provided by law in the case of personal property stolen, and the court upon application of the State's attorney shall have jurisdiction to order any machine gun so illegally possessed and seized, delivered to any officer, department or agency of the State or political subdivision of the State authorized by this Act to possess machine guns or to order the same sold to any person authorized to possess the same the proceeds to be covered into the treasury of the county in which the violation occurred.

§ 7. Any person committing or attempting to commit arson, assault, burglary, kidnapping, larceny, rioting, or robbery while armed with a machine gun shall be imprisoned in the penitentiary for his natural life, or for a term not less than five years.

APPROVED July 2, 1931.

---

### MOB VIOLENCE.

§ 1.  Amends sections 4 and 5, Act of 1905.

§ 4.  Damage by violence—Penalty — Action against municipality.

§ 5.  Heirs of victims may recover from municipality.

(HOUSE BILL No. 974.  APPROVED JULY 3, 1931.)

AN ACT to amend sections 4 and 5 of "An Act to suppress mob violence," approved May 16, 1905.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

SECTION 1. Sections 4 and 5 of "An Act to suppress mob violence," approved May 16, 1905, are amended to read as follows:

§ 4. Any person or persons composing a mob under the provisions of this Act, who shall by violence inflict material damage to the property or serious injury to the person of any other person upon the pretense of exercising correctional powers over such person or persons, by violence and without authority of law, shall be deemed guilty of a felony, and shall suffer imprisonment in the penitentiary not exceeding five years; and any person so suffering material damage to property or injury to person by a mob shall have an action against the county,

# 1932
# (DISTRICT OF COLUMBIA)





DATE DOWNLOADED: Wed Apr  5 08:25:21 2023
SOURCE: Content Downloaded from *HeinOnline*


Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of
evidence, and for other purposes., Public Law 72-275 / Chapter 465, 72 Congress. 47
Stat. 650 (1922-1933) (1932).

ALWD 7th ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of
evidence, and for other purposes., Public Law 72-275 / Chapter 465, 72 Congress. 47
Stat. 650 (1922-1933) (1932).

APA 7th ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of
evidence, and for other purposes., Public Law 72-275 Chapter 465, 72 Congress. 47
Stat. 650 (1922-1933) (1932).

Chicago 17th ed.
"Public Law 72-275 / Chapter 465, 72 Congress, Session 1, An Act: To control the
possession, sale, transfer and use of pistols and other dangerous weapons in the
District of Columbia, to provide penalties, to prescribe rules of evidence, and for
other purposes.," U.S. Statutes at Large 47 (1932): 650-654

McGill Guide 9th ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of
evidence, and for other purposes., Public Law 72-275 / Chapter 465, 72 Congress. 47
Stat. 650 (1922-1933) (1932).


AGLC 4th ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of
evidence, and for other purposes., Public Law 72-275 / Chapter 465, 72 Congress. 47
Stat. 650 (1922-1933) (1932)

MLA 9th ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of
evidence, and for other purposes., Public Law 72-275 / Chapter 465, 72 Congress. 47
Stat. 650 (1922-1933) (1932). HeinOnline.

OSCOLA 4th ed.
To control the possession, sale, transfer and use of pistols and other dangerous
weapons in the District of Columbia, to provide penalties, to prescribe rules of

ADD-137

States, for the purpose of having such communication delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to such addressee in the United States, and as a result thereof such communication is delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to the address to which it is directed in the United States, then such person shall be punished in the same manner and to the same extent as provided in section 1 of this Act: *Provided*, That any person violating this section may be prosecuted either in the district into which such letter or other communication was carried by the United States mail for delivery according to the direction thereon, or in which it was caused to be delivered by the United States mail to the person to whom it was addressed.

*Punishment for.*
*Proviso.*
*Jurisdiction.*

Approved, July 8, 1932.

---

[CHAPTER 465.]

July 8, 1932.
[H. R. 8754.]
[Public, No. 275.]

AN ACT

To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes.

*Unauthorized use, etc., of pistols and other dangerous weapons in District of Columbia.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

*Definitions.*

## DEFINITIONS

*"Pistol."*

SECTION 1. "Pistol," as used in this Act, means any firearm with a barrel less than twelve inches in length.

*"Sawed-off shotgun."*

"Sawed-off shotgun," as used in this Act, means any shotgun with a barrel less than twenty inches in length.

*"Machine gun."*

"Machine gun," as used in this Act, means any firearm which shoots automatically or semiautomatically more than twelve shots without reloading.

*"Person."*

"Person," as used in this Act, includes, individual, firm, association, or corporation.

*"Sell" and "pur-chase," etc.*

"Sell" and "purchase" and the various derivatives of such words, as used in this Act, shall be construed to include letting on hire, giving, lending, borrowing, and otherwise transferring.

*"Crime of violence."*

"Crime of violence" as used in this Act, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary.

## COMMITTING CRIME WHEN ARMED

*Committing crime of violence when armed.*
*Punishment for.*

SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the

crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years.

## PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

Persons forbidden to possess certain firearms.

SEC. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol, within the District of Columbia.

Convicted of a crime.

## CARRYING CONCEALED WEAPONS

SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

Illegally carrying, etc., dangerous weapon.

## EXCEPTIONS

Exceptions.

SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

Law enforcement officers.

Army, Navy, or Marine Corps.

National Guard, etc., on duty.

Other organizations.

Carrying to places of assembly, etc.

Manufacturer, etc.

## ISSUE OF LICENSES TO CARRY

Licenses.

SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

**652**    72d CONGRESS. SESS. I. CH. 465. JULY 8, 1932.

## SELLING TO MINORS AND OTHERS

**Selling to minors or others.**

Sec. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

## TRANSFERS REGULATED

**Time, etc., provisions.**

Sec. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law-enforcement officers, and, when delivered, said pistol shall be securely wrapped and shall be unloaded. At the time of applying for the purchase **Register to be kept.** of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the **Limitation.** other copy for six years. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the **Wholesale trade.** superintendent of police of the District of Columbia. This section shall not apply to sales at wholesale to licensed dealers.

## DEALERS TO BE LICENSED

**Dealers to be licensed.**

Sec. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession with intent to sell, any pistol, machine gun, sawed-off shotgun, or blackjack without being licensed as hereinafter provided. No wholesale dealer shall, within the District of Columbia, sell, or have in his possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed-off shotgun, or blackjack.

## DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

**Conditions, etc., for issuing dealers' licenses.**
*Ante, p. 558.*

Sec. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this Act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

-1072   Document: 00118025275   Page: 157   Date Filed: 06/28/2023   Entry ID:

3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of eighteen years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia.

4. A true record shall be made in a book kept for the purpose, *Records.* the form of which may be prescribed by the Commissioners, of all pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale.

5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years.

6. No pistol or imitation thereof or placard advertising the sale *Display, etc., forbidden.* thereof shall be displayed in any part of said premises where it can readily be seen from the outside. No license to sell at retail shall be granted to anyone except as provided in this section.

### FALSE INFORMATION FORBIDDEN

SEC. 11. No person, shall, in purchasing a pistol or in applying *False information or evidence forbidden.* for a license to carry the same, or in purchasing a machine gun, sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity.

### ALTERATION OF IDENTIFYING MARKS PROHIBITED

SEC. 12. No person shall within the District of Columbia change, *Alteration, etc., of identification marks, prohibited.* alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol, machine gun, or sawed-off shotgun. Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: *Provided,* *Proviso. Experimental work.* *however,* That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or the District of Columbia engaged in experimental work.

### EXCEPTIONS

SEC. 13. This Act shall not apply to toy or antique pistols unsuit- *Toys, etc., excepted.* able for use as firearms.

654            72d CONGRESS.  SESS. I.  CHS. 465, 466.  JULY 8, 1932.

## POSSESSION OF CERTAIN DANGEROUS WEAPONS

Possession of certain dangerous weapons forbidden.

SEC. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: *Provided, however,* That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen, or other duly appointed law-enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers and retail dealers licensed under section 10 of this Act.

*Proviso.*
Exceptions.

## PENALTIES

Punishment for violations.

SEC. 15. Any violation of any provision of this Act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

## CONSTITUTIONALITY

Invalidity of any provision not to affect remainder.

SEC. 16. If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

## CERTAIN ACTS REPEALED

Vol. 31, p. 1328, repealed.

SEC. 17. The following sections of the Code of Law for the District of Columbia, 1919, namely, sections 855, 856, and 857, and all other Acts or parts of Acts inconsistent herewith, are hereby repealed.

Approved, July 8, 1932.

---

[CHAPTER 466.]

JOINT RESOLUTION

July 8, 1932.
[H. J. Res. 462.]
[Pub. Res., No. 35.]

Making an appropriation to provide transportation to their homes for veterans of the World War temporarily quartered in the District of Columbia.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That to enable the Administrator of Veterans' Affairs, upon the request of any honorably discharged veteran of the World War, temporarily quartered in the District of Columbia, who is desirous of returning to his home, to provide such veteran with railroad transportation thereto prior to July 15, 1932, together with travel subsistence at the rate of 75 cents per day, there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $100,000: *Provided,* That all amounts expended under this appropriation in behalf of any veteran shall constitute a loan without interest which, if not repaid to the United States, shall be deducted from any amounts payable to such veteran on his adjusted-service certificate.

World War veterans. Appropriation for, to provide transportation from District of Columbia to their homes. *Post,* p. 701.

*Proviso.*
Credited as a loan.

Approved, July 8, 1932.

ADD-142

# 1932
# (LOUISIANA)

HEINONLINE

DATE DOWNLOADED: Mon Mar 27 09:52:00 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1932 336 .

ALWD 7th ed.
, , 1932 336 .

Chicago 17th ed.
"," Louisiana - Regular Session, Extraordinary Sessions 1930 and 1931, Constitutional Amendments - 1930 : 336-339

AGLC 4th ed.
" Louisiana - Regular Session, Extraordinary Sessions 1930 and 1931, Constitutional Amendments - 1930 336

OSCOLA 4th ed.
" 1932 336          Please note: citations are provided as a general guideline. Users should consult their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

336

Section 2. That all laws or parts of laws in conflict with or inconsistent with the provision of this Act be and the same are hereby repealed.

Approved by the Governor: July 7, 1932.

A true copy:

E. A. CONWAY,
    Secretary of State.

## ACT No. 79.

House Bill No. 753.                    By Mr. Bauer.

### AN ACT

Authorizing the Louisiana Highway Commission, with the approval of the Governor, to sell, at public or private sale, automobile, trucks, tractors, engineering implements, road machinery, and, all other equipment owned by the Commission and not actually in use for any public purpose, or when the use to which the same was devoted, or the use for which the same was acquired, has in fact been abandoned or discontinued, and repealing all laws in conflict herewith.

Louisiana Highway Commission authorized to dispose of automobiles, trucks, tractors, etc.

Section 1. Be it enacted by the Legislature of Louisiana, That the Louisiana Highway Commission, with the approval of the Governor, is hereby authorized to sell and dispose of, at public or private sale, for such price and on such terms as it may deem best any automobiles, trucks, tractors, engineering implements, road machinery and all other equipment of whatsoever nature or kind, owned by the Commission and not actually used for any public purpose, or when the use to which the same was devoted or the use for which the same was acquired, has in fact been abandoned or discontinued.

Section 2. That all laws or parts of laws in conflict herewith be and the same are hereby repealed.

Approved by the Governor: July 7, 1932.

A true copy:

E. A. CONWAY,
    Secretary of State.

## ACT No. 80.

House Bill No. 424.                    By Mr. Gilmore,
                                       (By request).

### AN ACT

To regulate the sale, possession and transportation of machine guns, and providing a penalty for a violation hereof; providing, further, that any one who has been

337

convicted of murder, robbery, burglary, or assault with intent to commit a felony, who violates any of the provisions of this Act, shall be guilty of a felony and punished as provided in this Act.

Section 1. Be it enacted by the Legislature of Louisiana, "That for the purpose of this Act the term "machine gun" applies to and include all firearms commonly known as machine rifles, machine guns and sub-machine guns of any calibre whatsoever, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to such gun from or by means of clips, disks, belts, or other separable mechanical device. *Definitions.*

The term "manufacturer" shall apply to and include all persons manufacturing machine guns;

The term "merchant" shall apply to and include all persons dealing with machine guns as merchandise.

Section 2. It is unlawful for any person to sell, keep or offer for sale, loan or give away, purchase, possess, carry or transport any machine gun within this State, except that: *Prohibiting the sale and possession of machine guns.*

1. Sheriffs, constables, marshals, police officers and other duly appointed peace officers may purchase, possess, carry and transport machine guns.

2. The provisions of this act shall not apply to the Army, Navy, or Marine Corps of the United States, the National Guard, and organizations authorized by law to purchase or receive machine guns from the United States, or from this State, and the members of such Corps, National Guard and organizations while on duty, may possess, carry and transport machine guns.

3. Persons, organizations or institutions possessing war relics may purchase and possess machine guns, which are relics of any war in which the United States was involved, may exhibit and carry such machine guns in the parades of any military organization, and may sell, offer to sell, loan or give such machine guns to other persons, organizations or institutions possessing war relics.

4. Guards or messengers employed by common carriers, banks and trust companies, and pay-roll guards or messengers may possess and carry machine guns while actually employed in and about the shipment, transportation or delivery, or in the guarding of any money, treasure, bullion, bonds or other thing of value and their employers may purchase or receive machine guns and keep them in their possession when such guns are not being used by such guards or messengers.

5. Manufacturers and merchants may sell, keep or offer for sale, loan or give away, purchase, possess and transport, machine guns, in the same manner as other merchandise except as hereinafter provided, and common carriers may possess and transport unloaded machine guns, as other merchandise.

In possession of manufacturers and merchants.

Section 3. No manufacturer or merchant shall permit any machine gun to pass from his possession to the possession of any person other than:

1. A manufacturer or a merchant.

2. A common carrier for shipment to a manufacturer or merchant.

3. A duly authorized agent of the government of the United States, or of this State, acting in his official capacity.

4. A person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of Section 2 of this Act.

Manufacturers or merchants shall not deliver a machine gun to any of the persons authorized to purchase such gun under the provisions of exceptions 1 and 4 of Section 2 hereof, unless such person presents a written permit to purchase and possess a machine gun, signed by the sheriff of the parish wherein such manufacturer or merchant has his place of business or delivers such machine gun. The manufacturer or merchant shall retain such permit and keep it on file in his place of business. Each sheriff shall keep a record of all such permits issued by him

Register to be kept by manufacturer and merchant.

Section 4. Every manufacturer or merchant shall keep a register of all machine guns manufactured or handled by him. This register shall show the date of the sale, loan, gift, delivery or receipt of any machine gun, the name, address and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received, and the purpose for which the person to whom the machine gun was sold, loaned, given or delivered, purchased or obtained said machine gun.

Upon demand, every manufacturer or merchant shall permit any sheriff or deputy sheriff, or any police officer to inspect his entire stock of machine guns, parts and supplies therefor, and shall produce the register herein required and all written permits to purchase or possess a machine gun, which he has retained and filed in his place of business, for inspection by such officers.

Section 5. Any manufacturer who:

Penalty for violation by manufacturer.

1. Passes possession of a machine gun to any person not authorized to purchase or possess such gun under the provisions hereof; or

339

2. Passes possession of a machine gun to a person authorized to purchase a machine gun under the provisions of exceptions 1 and 4 of Section 2 of this Act, without first receiving the written permit of a sheriff, as herein required; or

3. Fails to keep an accurate register, as provided in Section 4; or

4. Fails, or is unable to produce or account for a sheriff's permit for each machine gun sold by him for which a permit is necessary under the provisions of Section 3 hereof, shall be guilty of a felony, and upon conviction shall be punished by imprisonment in the State penitentiary at hard labor for not less than one nor more than five years.

Any person who sells, keeps or offers for sale, loans or gives away, purchases, possesses, carries or transports any machine gun within this State, except as authorized by this Act, shall be guilty of a felony, and upon conviction shall be imprisoned in the State Penitentiary, at hard labor, for not less than one nor more than ten years.

Section 6. Whoever, having been convicted of murder, robbery, burglary or assault with intent to commit a felony, thereafter violates any of the provisions of this Act, shall be guilty of a felony, and upon conviction shall be imprisoned in the State Penitentiary, at hard labor, for not less than three nor more than ten years.   *Penalty for committing felony.*

Approved by the Governor: July 7, 1932.

A true copy:

E. A. CONWAY,
Secretary of State.

---

### ACT No. 81.

House Bill No. 67.                                    By Mr. Stich.

### AN ACT

To provide for the payment to any Judge of the Civil District Court for the Parish of Orleans of two-thirds pay, when he shall retire from active service as a member of said Court as authorized by the provisions of Section 8 of Article VII of the Constitution of 1921, and to require the City of New Orleans to budget and appropriate such sums as may be necessary to comply with the provisions of this Act.

Section 1. Be it enacted by the Legislature of Louisiana, That whenever any Judge of the Civil District Court for the Parish of Orleans shall retire from active service as a member of said Court, as authorized by the provisions of Section 8 of Article VII of the Constitution of 1921, said   *Pay for retired Judges of Civil District Court for the Parish of Orleans.*

# 1933
# (CALIFORNIA)

# STATUTES OF CALIFORNIA

FIFTIETH SESSION OF THE LEGISLATURE,

1933.

Began on Monday, January second, and adjourned on
Wednesday, July twenty-sixth, nineteen hundred
thirty-three.




DATE DOWNLOADED: Wed Apr  5 08:08:58 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1933 1169 .

ALWD 7th ed.
, , 1933 1169 .

Chicago 17th ed.
"," California - 50th Regular Session : 1169-1171


AGLC 4th ed.
" California - 50th Regular Session 1169

OSCOLA 4th ed.
" 1933 1169          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

substance or matter of any kind which is injurious to person or property, or is nauseous, sickening, irritating or offensive to any of the senses.

(2) It shall be unlawful to manufacture or prepare, or to possess any liquid, gaseous, or solid substance or matter of any kind which is injurious to person or property, or is nauseous, sickening, irritating or offensive, to any of the senses with intent to throw, drop, pour, deposit, release, discharge or expose the same in, upon or about any theater, restaurant, place of business, place of amusement, or any other place of public assemblage.

(3) Penalty. Any person violating any of the provisions **Penalty.** hereof shall be punished by imprisonment in the county jail for not less than three months and not more than one year, or by a fine of not less than five hundred dollars and not more than two thousand dollars, or by both such fine and imprisonment.

(4) Any person who, in violating any of the provisions of **Use of** subdivision (1) of this section, wilfully employs or uses any **certain gases, etc.** liquid, gaseous or solid substance which may produce serious illness or permanent injury through being vaporized or otherwise disbursed in the air or who, in violating any of the provisions of subdivision (1) of this section, wilfully employs or uses any tear gas, mustard gas or any of the combinations or compounds thereof, or wilfully employs or uses acid or explosives, shall be guilty of a felony and shall be punished by **Penalty.** imprisonment in the State prison for not less than one year and not more than five years.

---

## CHAPTER 450.

*An act to amend sections 1, 2, 3, 6, and 7 of an act entitled* **Stats. 1027.** *"An act regulating the sale, offering for sale, possession or* **p. 938, amended.** *transportation of machine rifles, machine guns and submachine guns, and providing a penalty for the violation thereof," approved May 16, 1927.*

[Approved by the Governor May 20, 1933. In effect August 21, 1933.]

*The people of the State of California do enact as follows:*

SECTION 1. Section 3 of the act cited in the title hereof is **Stats. 1031,** hereby amended to read as follows: **p. 2203.**

Sec. 3. It shall be lawful for the Superintendent of the **Permits re** Division of Criminal Identification and Investigation of the **machine guns.** Department of Penology to issue permits for the possession and transportation or possession or transportation of such machine guns, upon a showing satisfactory to him that good cause exists for the issuance thereof to the applicant for such permit; provided, that no permit shall be issued to a person who is under twenty-one years of age.

ADD-152

**1170**                    STATUTES OF CALIFORNIA                    [Ch. 450

Stats. 1931,    SEC. 2.    Section 1 of said act is hereby amended to read as
p. 2203.        follows:

Possession      Section 1.    On and after the date upon which this act takes
or sale of      effect every person, firm or corporation, who within the State
machine         of California sells, offers for sale, possesses or knowingly trans-
guns.           ports any firearms of the kind commonly known as a machine
                gun, except as herein prescribed, is guilty of a public offense
                and upon conviction thereof shall be punished by imprison-
                ment in the State Prison not to exceed five years or by a fine
                not to exceed five thousand dollars or by both such fine and
                imprisonment.

Exceptions.     Provided, however, that nothing in this act contained shall
                prohibit the sale to, purchase by, or possession of such firearms
                by police departments and members thereof, sheriffs, and city
                marshals, or the military or naval forces of this State or of
                the United States for use in the discharge of their official
                duties.

Stats. 1927,    SEC. 3.    Section 2 of said act is hereby amended to read
p. 938.         as follows:

Machine         Sec. 2.    The term machine gun as used in this act shall be
gun defined.    construed to apply to and include all firearms known as
                machine rifles, machine guns, or submachine guns capable of
                discharging automatically and continuously loaded ammuni-
                tion of any caliber in which the ammunition is fed to such
                gun from or by means of clips, discs, drums, belts or other
                separable mechanical device and all firearms which are auto-
                matically fed after each discharge from or by means of clips,
                discs, drums, belts or other separable mechanical device having
                a capacity greater than ten cartridges.

Stats. 1931,    SEC. 4.    Section 6 of said act is hereby amended to read
p. 2203.        as follows:

Revocation      Sec. 6.    Permits issued in accordance with this act may be
of permits.     revoked by the issuing authority at any time when it shall
                appear that the need for such firearms has ceased or that the
                holder of the permit has used such firearms for purposes other
                than those allowed by the permit or that the holder of the
                permit has not exercised great care in retaining custody of
                any weapons possessed under the permit.

Stats. 1931,    SEC. 5.    Section 7 of said act is hereby amended to read
p. 2203.        as follows:

Licenses        Sec. 7.    The Superintendent of the Division of Criminal
to sell.        Identification and Investigation of the Deartment of Penol-
                ogy may also grant licenses in a form to be prescribed by him
                effective for not more than one year from the date of issuance,
                to permit the sale at the place specified in the license of such
                firearm subject to all of the following conditions, upon breach
                of any of which the license shall be revoked:

Conditions.     1. Such business shall be carried on only in the place desig-
                nated in the license.

                2. Such license or a certified copy thereof must be displayed
                on the premises in a place where it may easily be read.

ADD-153

3. No such firearm shall be delivered to any person not authorized to receive the same under the provisions of this act.

4. A complete record must be kept of sales made under the authority of the license, showing the name and address of the purchaser, the descriptions and serial numbers of the weapons purchased, the number and date of issue of the purchaser's permit, if any, and the signature of the purchaser or purchasing agent. This record shall be open to the inspection of any peace officer or other person designated by the Superintendent of the Bureau of Criminal Identification and Investigation.

---

## CHAPTER 451.

*An act to amend section 4041.11 of the Political Code, relating to powers and duties of boards of supervisors.*

[Approved by the Governor May 20, 1933. In effect August 21, 1933.]

*The people of the State of California do enact as follows:*

SECTION 1. Section 4041.11 of the Political Code is hereby amended to read as follows: <sub>Stats. 1929, p. 1450.</sub>

4041.11. (1) Under such limitations and restrictions as are prescribed by law, and in addition to jurisdiction and powers otherwise conferred, the boards of supervisors, in their respective counties, shall have the jurisdiction and powers to maintain, regulate and govern public pounds, fix the limits within which animals shall not run at large, and appoint poundkeepers, who shall be paid out of the fines imposed and collected from the owners of impounded animals, and from no other source. <sub>Pounds, etc.</sub>

(2) To provide for the prevention of injuries to sheep by dogs, and to tax dogs and direct the application of the tax. <sub>Protection of sheep.</sub>

(3) To provide for the destruction of gophers, squirrels, other wild animals, noxious weeds, plant diseases, and insects injurious to fruit or fruit trees, or vines, or vegetable or plant life. <sub>Pests.</sub>

(4) To provide by ordinances, not in conflict with the general laws of the State, for the protection of fish and game, and may shorten the season for taking or killing of fish and game, within the dates fixed by the general State laws, but shall not lengthen the same. <sub>Protection of fish and game.</sub>

# 1933
# (MINNESOTA)

DATE DOWNLOADED: Mon Mar 27 13:25:04 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1933 231 .

ALWD 7th ed.
, , 1933 231 .

Chicago 17th ed.
"," Minnesota - Session Laws, 48th Session : 231-233


AGLC 4th ed.
" Minnesota - Session Laws, 48th Session 231

OSCOLA 4th ed.
" 1933 231          Please note: citations are provided as a general guideline.
Users should consult their preferred citation format's style manual for proper
citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

corrected thereby, and shall be certified by the proper officers of the municipality as to authorization and by an engineer or surveyor as to correctness, and the signatures of such persons shall be acknowledged in like manner as a deed.

Such plat or plats when so certified and acknowledged may be filed in the office of the register of deeds and the declaration thereon may be recorded at length in a "Book of Plat Certificates"; and when so filed and recorded such plat or plats and declaration together with the record thereof shall be prima facie evidence in all matters shown or stated therein as to the lands covered thereby.

This act shall not apply to a city whose charter provides for official supervision of plats by municipal officers, commission or board.

Approved April 10, 1933.

---

### CHAPTER 189—H. F. No. 166

*An act to amend Mason's Minnesota Statutes of 1927, Section 7456, relating to renewal of corporate existence.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Publication of notices of renewal of corporate existence.**—That Mason's Minnesota Statutes of 1927, Section 7456, be amended so as to read as follows:

"7456. No such resolution shall take effect until a duly certified copy thereof shall have been filed, recorded, and published in the same manner as its original certificate. *Provided, that in the case of a co-operative association, it shall not be necessary to publish said resolution.*"

Approved April 10, 1933.

---

### CHAPTER 190—H. F. No. 189

*An act making it unlawful to use, own, possess, sell, control or transport a "machine gun", as hereinafter defined, and providing a penalty for the violation thereof.*

232          SESSION LAWS          [Chap.

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Definitions.**—(a) Any firearm capable of loading or firing automatically, the magazine of which is capable of holding more than twelve cartridges, shall be a machine gun within the provisions of this Act.

(b) Any firearm capable of automatically reloading after each shot is fired, whether firing singly by separate trigger pressure or firing continuously by continuous trigger pressure; which said firearm shall have been changed, altered or modified to increase the magazine capacity from the original design as manufactured by the manufacturers thereof, or by the addition thereto of extra and/or longer grips or stocks to accomodate such extra capacity, or by the addition, modification and/or attachment thereto of any other device capable of increasing the magazine capacity thereof, shall be a machine gun within the provisions of this Act.

(c) A twenty-two caliber light sporting rifle, capable of firing continuously by continuous trigger pressure, shall be a machine gun within the provisions of this Act. But a twenty-two caliber light sporting rifle, capable of automatically reloading but firing separately by separate trigger pressure for each shot, shall not be a machine gun within the provisions of this Act and shall not be prohibited hereunder, whether having a magazine capacity of twelve cartridges or more. But if the same shall have been changed, altered, or modified, as prohibited in section one (b) hereof, then the same shall be a machine gun within the provisions of this Act.

Sec. 2. **Application.**—This Act shall not apply to sheriffs, coroners, constables, policemen or other peace officers, or to any warden, superintendent or head keeper of any prison, penitentiary, county jail or other institution for retention of any person convicted of or accused of crime, while engaged in the discharge of official duties, or to any public official engaged in the enforcement of law; nor to any person or association possessing a machine gun not useable as a weapon and possessed as a curiosity, ornament or keepsake; when such officers and persons and associations so excepted shall make and file with the Bureau of Criminal Apprehension of this state within 30 days after the passage of this Act, a written report showing the name and address of such person or association and the official title and position of such officers and showing a particular description of such machine gun now owned or possessed by them or shall make such report as to hereinafter acquired machine guns within 10 days of the acquisition thereof; nor to any person legally summoned to assist in making arrests or preserving peace, while said person so summoned is engaged in assisting such officer; nor shall this Act apply to the armed forces of the United States or of the State of Minnesota.

Sec. 3. **Machine guns prohibited.**—Any person who shall own, control, use, possess, sell or transport a machine gun, as herein defined, in violation of this Act, shall be guilty of a felony.

Approved April 10, 1933.

---

### CHAPTER 191—S. F. No. 336

*An act to amend Mason's Minnesota Statutes of 1927, Section 646 relating to claims against counties.*

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Claims against county—appeal.**—That Mason's Minnesota Statutes of 1927, Section 646, be amended to read as follows:

"646. When any claim against a county is disallowed by the board in whole or in part, a claimant may appeal from its decisions to the district court by causing a written notice of such appeal to be filed in the office of the auditor within fifteen days after *written notice mailed to said claimant by the county auditor showing the disallowance of said claim* and giving security for costs, to be approved by the auditor, who shall forthwith notify the county attorney thereof. When any claim against a county shall be allowed in whole or in part by such board, no order shall be issued in payment of the same or any part thereof until after fifteen days from date of the decision; and the county attorney may, on behalf and in the name of such county, appeal from such decision to the district court, by causing a written notice of such appeal to be filed in the office of the auditor within fifteen days after date of the decision appealed from; or any seven taxpayers of the county may in their own names appeal from such decision, to the district court by causing a written notice of appeal stating the grounds thereof to be filed in the office of the auditor within fifteen days after the date of the decision appealed from, and giving to the claimant security for his costs and disbursements to be approved by a judge of the district court; and thereafter no order shall be issued in payment of any such claim until a certified copy of the judgment of the court shall be filed in the office of the auditor. Upon the filing of such notice of appeal, the court shall acquire jurisdiction of the parties and of the subject matter, and may compel a return to be made as in the case of an appeal from a judgment of a justice of the peace.

Approved April 10, 1933.

**1934
(VIRGINIA)**

HEINONLINE

DATE DOWNLOADED: Thu Mar 30 09:28:57 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
1933-1934 137 .

ALWD 7th ed.
, , 1933-1934 137 .

Chicago 17th ed.
"," Virginia - Extra Session - 1933, Regular Session - 1934 : 137-140

AGLC 4th ed.
" Virginia - Extra Session - 1933, Regular Session - 1934 137

OSCOLA 4th ed.
" 1933-1934 137          Please note: citations are provided as a general
guideline. Users should consult their preferred citation format's style manual for
proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

CHAP. 95.—An ACT to empower the councils of cities and towns to release the liability and liens for interest, penalties and accrued costs, or any part thereof, on unpaid taxes due such cities and towns for any year or years to and including 1933, provided such taxes are paid within one hundred and twenty days after this act is in force.                                    [H B 48]

### Approved March 7, 1934

1. Be it enacted by the General Assembly of Virginia, That the councils of cities and towns are hereby empowered to release all persons, firms, associations and corporations from all liability, for interest, penalties and accrued costs on any taxes due such respective cities and towns for any year or years prior to and including the year nineteen hundred and thirty-three, that are unpaid at the time the ordinance relieving same goes into effect, provided such unpaid taxes are paid such cities or towns within one hundred and twenty days after the date this act shall be in force.

2. That nothing in this act contained shall empower any such council to release any liability for interest, penalties and accrued costs, or any part thereof, on such unpaid taxes as are not paid within the one hundred and twenty days aforesaid.

3. By reason of the necessity of immediately granting said councils power to grant taxpayers the above relief, an emergency is declared to exist, and this act shall be in force from its passage.

---

CHAP. 96.—An ACT to define the term "machine gun"; to declare the use and possession of a machine gun, for certain purposes, a crime and to prescribe the punishment therefor; to require manufacturers, dealers and other persons, with certain exemptions, in possession thereof, to register all machine guns with the Secretary of the Commonwealth; to keep records of and report transfers and sales to the said Secretary; to allow inspection of records and of machine guns by peace officers; to provide for seizures and search warrants; to prescribe rules of evidence and presumptions; to provide penalties, and to repeal all inconsistent acts.                                    [S B 110]

### Approved March 7, 1934

1. Be it enacted by the General Assembly of Virginia, as follows:
Section 1. Where used in this act:

(a) "Machine gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than seven shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device, and also applies to and includes weapons, loaded or unloaded, from which more than sixteen shots or bullets may be rapidly, automatically, semi-automatically or otherwise discharged without reloading.

(b) "Crime of violence" applies to and includes any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, kidnapping, rape, mayhem, assault with intent to maim,

138                     ACTS OF ASSEMBLY                     [VA.

disable, disfigure or kill, robbery, burglary, housebreaking, breaking and entering, and larceny.

(c) "Person" applies to and includes firm, partnership, association or corporation.

Section 2. Possession or use of a machine gun in the perpetration or attempted perpetration of a crime of violence is hereby declared to be a crime punishable by death or by imprisonment in the State penitentiary for a term of not less than twenty years.

Section 3. Unlawful possession or use of a machine gun for offensive or aggressive purpose is hereby declared to be a crime punishable by imprisonment in the State penitentiary for a term of not less than ten years.

Section 4. Possession or use of a machine gun shall be presumed to be for offensive or aggressive purpose:

(a) When the machine gun is on premises not owned or rented, for bona fide permanent residence or business occupancy, by the person in whose possession the machine gun may be found; or

(b) When in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions; or

(c) When the machine gun is of the kind described in section eight and has not been registered as in said section required; or

(d) When empty or loaded pistol shells of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

Section 5. The presence of a machine gun in any room, boat, or vehicle shall be *prima facie* evidence of the possession or use of the machine gun by each person occupying the room, boat, or vehicle where the weapon is found.

Section 6. Nothing contained in this act shall prohibit or interfere with

First. The manufacture for, and sale of, machine guns to the military forces or the peace officers of the United States or of any political subdivision thereof, or the transportation required for that purpose. This act shall not apply to machine guns and automatic arms issued to the National Guard of Virginia by the United States or such arms used by the United States Army or Navy or in the hands of troops of the National Guards of other States or Territories of the United States passing through Virginia, or such arms as may be provided for the officers of the State Police or officers of penal institutions.

Second. The possession of a machine gun for scientific purposes, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament, or keepsake;

Third. The possession of a machine gun other than one adapted to use pistol cartridges of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber, for a purpose manifestly not aggressive or offensive.

Section 7. Every manufacturer or dealer shall keep a register of all machine guns manufactured or handled by him. This register shall show the model and serial number, date of manufacture, sale, loan, gift, delivery or receipt, of every machine gun, the name, address, and occupation of the person to whom the machine gun was sold, loaned, given or delivered, or from whom it was received; and the purpose for which it was acquired by the person to whom the machine gun was sold, loaned, given or delivered, or from whom received. Upon demand every manufacturer or dealer shall permit any marshal, sheriff or police officer to inspect his entire stock of machine guns, parts, and supplies therefor, and shall produce the register, herein required, for inspection. A violation of any provision of this section shall be punishable by a fine of not less than one hundred dollars nor more than one thousand dollars.

Section 8. Every machine gun now in this State adapted to use pistol cartridges of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber shall be registered in the office of the Secretary of the Commonwealth on the effective date of this act, and annually thereafter. If acquired hereafter it shall be registered within twenty-four hours after its acquisition. Blanks for registration shall be prepared by the Secretary of the Commonwealth, and furnished upon application. To comply with this section the application as filed must show the model and serial number of the gun, the name, address and occupation of the person in possession, and from whom and the purpose for which, the gun was acquired. The Secretary of the Commonwealth shall immediately upon registration required in this section furnish the registrant with a certificate of registration, which shall be kept by the registrant and produced by him upon demand by any peace officer. Failure to keep or produce such certificate for inspection shall be a misdemeanor and punishable by a fine of not less than five nor more than one thousand dollars, and any peace officer may, without warrant, seize the machine gun and apply for its confiscation as provided in section nine of this act. The registration data shall not be subject to inspection by the public. Any person failing to register any gun as required by this section, shall be presumed to possess the same for offensive or aggressive purpose.

Section 9. Warrant to search any house or place and seize any machine gun adapted to use pistol cartridges of thirty (thirty one-hundredths inch or seven and sixty-three one-hundredths millimeter) or larger caliber possessed in violation of this act may issue in the same manner and under the same restrictions as provided by law for stolen property, and any court of record, upon application of the Commonwealth's attorney, a police officer or conservator of the peace, shall have jurisdiction and power to order any machine gun, thus or otherwise legally seized, to be confiscated and either destroyed or delivered to a peace officer of the State or a political subdivision thereof.

Section 10. If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given

140                    ACTS OF ASSEMBLY                    [VA.

effect without the invalid provision or application, and to this end the
provisions of this act are declared to be severable.

Section 11. This act shall be so interpreted and construed as to
effectuate its general purpose to make uniform the law of those states
which enact it.

Section 12. This act may be cited as the Uniform Machine Gun Act.

Section 13. All acts or parts of acts which are inconsistent with the
provisions of this act are hereby repealed.

---

CHAP. 97.—An ACT to make effective the Constitutional provision to the effect
that the General Assembly shall establish and maintain an efficient system of
public free schools throughout the State, and to repeal all acts and parts of
acts inconsistent with this act.                                    [S B 153]

Approved March 7, 1934

Whereas, section one hundred and twenty-nine of the Constitution
of Virginia provides that "The General Assembly shall establish and
maintain an efficient system of public free schools throughout the
State," now, therefore,

1. Be it enacted by the General Assembly of Virginia, as follows:

Section 1. The school board of each and every school division in
the State is hereby empowered and required to maintain the public free
schools of such division for a period of at least eight months or one
hundred and sixty teaching days in each school year. In order that
each school division may have the funds necessary to enable the school
board to maintain the elementary and high schools thereof for such
minimum terms, it is hereby provided that when any county, city or
town has legally complied with the existing laws with reference to local
school levies, such school division or divisions shall be allotted out of
the public school funds held in the treasury of the State for each group
of twenty-five to forty pupils in average daily attendance, a sum equal
to the amount to be derived by dividing said public school fund by the
number of groups of twenty-five to forty pupils in average daily attend-
ance in the State, depending upon the density of population, to be ap-
portioned by the State Board of Education, as provided in section one
hundred and thirty-five of the Constitution and in conformity with the
provisions of the Code and of the Acts of the Assembly under such
rules and regulations as may be set up by said State Board of Education.

Section 2. That in addition the counties and cities shall provide,
from local school taxes, as provided in section one hundred and thirty-
six of the Constitution of Virginia, for the supplementing of their in-
structional programs such amounts as will insure the services of proper-
ly prepared and effective teaching personnel, and to the degree that
financial ability and community interest in education will permit; pro-
vided further, that the counties and cities shall provide, in keeping with
the laws already existing, such funds as may be necessary for debt ser-
vice, capital outlay, transportation, general operation and maintenance.

# 1934
# (FEDERAL)

**1236**        73d CONGRESS.   SESS. II.   CHS. 756, 757.   JUNE 26, 1934.

Advances for land surveys.
U.S.C., title 43, sec. 863.

SEC. 22. So much of the Act of August 18, 1894 (U.S.C., title 43, sec. 863), as authorizes the Governors of the States therein named to advance money from time to time for the survey of certain townships located within such States, which money shall be reimbursable, is hereby repealed.

Moneys in U.S. court registries.

SEC. 23. Moneys in, or payable into, the registry of any United States court, in the discretion of the court, may be deposited in official checking accounts with the Treasurer of the United States, subject to disbursement on order approved by the court.

Survey of certain accounts to be made by Comptroller General.

Report to Congress.

SEC. 24. The Comptroller General of the United States shall cause a survey to be made of all inactive and permanent appropriations and/or funds on the books of the Government and also funds in the official custody of officers and employees of the United States, in which the Government is financially concerned, for which no accounting is rendered to the General Accounting Office; and he shall submit to the Congress annually, in a special report, his recommendations for such changes in existing law relating thereto as, in his judgment, may be in the public interest.

Existing provisions not affected.

SEC. 25. The provisions of this Act shall not be construed to alter or amend any existing authorization for an appropriation.

Saving clause.

SEC. 26. All Acts and/or parts of Acts inconsistent or in conflict with the provisions of this Act are hereby repealed to the extent of such inconsistency or conflict.

Short title.

SEC. 27. The short title of this Act shall be the "Permanent Appropriation Repeal Act, 1934."

Approved, June 26, 1934.

[CHAPTER 757.]

---

AN ACT

June 26, 1934.
[H.R. 9741.]
[Public, No. 474.]

To provide for the taxation of manufacturers, importers, and dealers in certain firearms and machine guns, to tax the sale or other disposal of such weapons, and to restrict importation and regulate interstate transportation thereof.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That for the purposes of this Act—

National Firearms Act.
Limitation of terms for purposes of Act.
"Firearm."

(a) The term "firearm" means a shotgun or rifle having a barrel of less than eighteen inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition.

"Machine gun."

(b) The term "machine gun" means any weapon which shoots, or is designed to shoot, automatically or semiautomatically, more than one shot, without manual reloading, by a single function of the trigger.

"Person."

(c) The term "person" includes a partnership, company, association, or corporation, as well as a natural person.

"Continental United States."

(d) The term "continental United States" means the States of the United States and the District of Columbia.

"Importer."

(e) The term "importer" means any person who imports or brings firearms into the continental United States for sale.

"Manufacturer."

(f) The term "manufacturer" means any person who is engaged within the continental United States in the manufacture of firearms, or who otherwise produces therein any firearm for sale or disposition.

(g) The term "dealer" means any person not a manufacturer or importer engaged within the continental United States in the business of selling firearms. The term "dealer" shall include wholesalers, pawnbrokers, and dealers in used firearms.

"Dealer."

Exceptions.

(h) The term "interstate commerce" means transportation from any State or Territory or District, or any insular possession of the United States (including the Philippine Islands), to any other State or to the District of Columbia.

"Interstate commerce."

(i) The term "Commissioner" means the Commissioner of Internal Revenue.

"Commissioner."

(j) The term "Secretary" means the Secretary of the Treasury.

"Secretary."

(k) The term "to transfer" or "transferred" shall include to sell, assign, pledge, lease, loan, give away, or otherwise dispose of.

"To transfer" or "transferred."

SEC. 2. (a) Within fifteen days after the effective date of this Act, or upon first engaging in business, and thereafter on or before the 1st day of July of each year, every importer, manufacturer, and dealer in firearms shall register with the collector of internal revenue for each district in which such business is to be carried on his name or style, principal place of business, and places of business in such district, and pay a special tax at the following rates: Importers or manufacturers, $500 a year; dealers, other than pawnbrokers, $200 a year; pawnbrokers, $300 a year. Where the tax is payable on the 1st day of July in any year it shall be computed for one year; where the tax is payable on any other day it shall be computed proportionately from the 1st day of the month in which the liability to the tax accrued to the 1st day of July following.

Registration requirements.

Taxes.

Fractional parts of year.

(b) It shall be unlawful for any person required to register under the provisions of this section to import, manufacture, or deal in firearms without having registered and paid the tax imposed by this section.

Failure to register and pay tax unlawful.

SEC. 3. (a) There shall be levied, collected, and paid upon firearms transferred in the continental United States a tax at the rate of $200 for each firearm, such tax to be paid by the transferor, and to be represented by appropriate stamps to be provided by the Commissioner, with the approval of the Secretary; and the stamps herein provided shall be affixed to the order for such firearm, hereinafter provided for. The tax imposed by this section shall be in addition to any import duty imposed on such firearm.

Transfer tax; stamps.

(b) All provisions of law (including those relating to special taxes, to the assessment, collection, remission, and refund of internal revenue taxes, to the engraving, issuance, sale, accountability, cancelation, and distribution of tax-paid stamps provided for in the internal-revenue laws, and to penalties) applicable with respect to the taxes imposed by section 1 of the Act of December 17, 1914, as amended (U.S.C., Supp. VII, title 26, secs. 1040 and 1383), and all other provisions of the internal-revenue laws shall, insofar as not inconsistent with the provisions of this Act, be applicable with respect to the taxes imposed by this Act.

Applicable administrative provisions of narcotic tax law to govern.

Vol. 38, p. 785; Vol. 44, p. 92.
U.S.C., Supp. VII, pp. 592, 644.

(c) Under such rules and regulations as the Commissioner, with the approval of the Secretary, may prescribe, and upon proof of the exportation of any firearm to any foreign country (whether exported as part of another article or not) with respect to which the transfer tax under this section has been paid by the manufacturer, the Commissioner shall refund to the manufacturer the amount of the tax so paid, or, if the manufacturer waives all claim for the amount to be refunded, the refund shall be made to the exporter.

Refund, if for exportation.

SEC. 4. (a) It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in

Unlawful transfers.

**1238**      73d CONGRESS. SESS. II. CH. 757. JUNE 26, 1934.

blank in duplicate for that purpose by the Commissioner. Such order shall identify the applicant by such means of identification as may be prescribed by regulations under this Act: *Provided*, That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

*Proviso. Identification.*

(b) The Commissioner, with the approval of the Secretary, shall cause suitable forms to be prepared for the purposes above mentioned, and shall cause the same to be distributed to collectors of internal revenue.

*Preparation and distribution of forms.*

(c) Every person so transferring a firearm shall set forth in each copy of such order the manufacturer's number or other mark identifying such firearm, and shall forward a copy of such order to the Commissioner. The original thereof with stamps affixed, shall be returned to the applicant.

*Identifying marks, etc., to be indicated in orders.*

(d) No person shall transfer a firearm which has previously been transferred on or after the effective date of this Act, unless such person, in addition to complying with subsection (c), transfers therewith the stamp-affixed order provided for in this section for each such prior transfer, in compliance with such regulations as may be prescribed under this Act for proof of payment of all taxes on such firearms.

*Transferor to transfer stamp-affixed order for each prior transfer.*

(e) If the transfer of a firearm is exempted from the provisions of this Act as provided in section 13 hereof, the person transferring such firearm shall notify the Commissioner of the name and address of the applicant, the number or other mark identifying such firearm, and the date of its transfer, and shall file with the Commissioner such documents in proof thereof as the Commissioner may by regulations prescribe.

*Notice to Commissioner of transfers exempted.*

(f) Importers, manufacturers, and dealers who have registered and paid the tax as provided for in section 2(a) of this Act shall not be required to conform to the provisions of this section with respect to transactions in firearms with dealers or manufacturers if such dealers or manufacturers have registered and have paid such tax, but shall keep such records and make such reports regarding such transactions as may be prescribed by regulations under this Act.

*Registered importers, etc.*

SEC. 5. (a) Within sixty days after the effective date of this Act every person possessing a firearm shall register, with the collector of the district in which he resides, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof: *Provided*, That no person shall be required to register under this section with respect to any firearm acquired after the effective date of, and in conformity with the provisions of, this Act.

*Possessors of firearms to register with collector within 60 days.*

*Proviso. Acquisitions after effective date need not be registered.*

(b) Whenever on trial for a violation of section 6 hereof the defendant is shown to have or to have had possession of such firearm at any time after such period of sixty days without having registered as required by this section, such possession shall create a presumption that such firearm came into the possession of the defendant subsequent to the effective date of this Act, but this presumption shall not be conclusive.

*Prosecutions. Presumption raised by possession.*

SEC. 6. It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of section 3 or 4 of this Act.

*Unlawfully receiving or possessing.*

SEC. 7. (a) Any firearm which has at any time been transferred in violation of the provisions of this Act shall be subject to seizure and

*Seizure and forfeiture.*

forfeiture, and (except as provided in subsection (b)) all the provisions of internal-revenue laws relating to searches, seizures, and forfeiture of unstamped articles are extended to and made to apply to the articles taxed under this Act, and the persons to whom this Act applies.
*Provisions of internal-revenue laws extended.*

(b) In the case of the forfeiture of any firearm by reason of a violation of this Act: No notice of public sale shall be required; no such firearm shall be sold at public sale; if such firearm is in the possession of any officer of the United States except the Secretary, such officer shall deliver the firearm to the Secretary; and the Secretary may order such firearm destroyed or may sell such firearm to any State, Territory, or possession (including the Philippine Islands), or political subdivision thereof, or the District of Columbia, or retain it for the use of the Treasury Department or transfer it without charge to any Executive department or independent establishment of the Government for use by it.
*Sale, etc., forbidden.*

*Disposition of.*

SEC. 8. (a) Each manufacturer and importer of a firearm shall identify it with a number or other identification mark approved by the Commissioner, such number or mark to be stamped or otherwise placed thereon in a manner approved by the Commissioner.
*Identification marks.*

(b) It shall be unlawful for anyone to obliterate, remove, change, or alter such number or other identification mark. Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of any firearm upon which such number or mark shall have been obliterated, removed, changed, or altered, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury.
*Obliteration, etc., unlawful.*

*Possession of, deemed sufficient evidence for conviction.*

*Exception.*

SEC. 9. Importers, manufacturers, and dealers shall keep such books and records and render such returns in relation to the transactions in firearms specified in this Act as the Commissioner, with the approval of the Secretary, may by regulations require.
*Importers, manufacturers, etc., required to keep records.*

SEC. 10. (a) No firearm shall be imported or brought into the United States or any territory under its control or jurisdiction (including the Philippine Islands), except that, under regulations prescribed by the Secretary, any firearm may be so imported or brought in when (1) the purpose thereof is shown to be lawful and (2) such firearm is unique or of a type which cannot be obtained within the United States or such territory.
*Regulation of traffic in firearms in places under control of United States.*

(b) It shall be unlawful (1) fraudulently or knowingly to import or bring any firearm into the United States or any territory under its control or jurisdiction (including the Philippine Islands), in violation of the provisions of this Act; or (2) knowingly to assist in so doing; or (3) to receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of any such firearm after being imported or brought in, knowing the same to have been imported or brought in contrary to law. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains such possession to the satisfaction of the jury.
*Unlawful acts. Fraudulent importations, possession, etc.*

*Receiving, concealing, etc.*

*Possession deemed sufficient evidence for conviction; exception.*

SEC. 11. It shall be unlawful for any person who is required to register as provided in section 5 hereof and who shall not have so registered, or any other person who has not in his possession a stamp-affixed order as provided in section 4 hereof, to ship, carry, or deliver any firearm in interstate commerce.
*Transportation in interstate commerce.*

1240     73d CONGRESS. SESS. II. CHS. 757, 758. JUNE 26, 1934.

Rules, etc., to be prescribed.

SEC. 12. The Commissioner, with the approval of the Secretary, shall prescribe such rules and regulations as may be necessary for carrying the provisions of this Act into effect.

Transfers, when provisions not applicable.

SEC. 13. This Act shall not apply to the transfer of firearms (1) to the United States Government, any State, Territory, or possession of the United States, or to any political subdivision thereof, or to the District of Columbia; (2) to any peace officer or any Federal officer designated by regulations of the Commissioner; (3) to the transfer of any firearm which is unserviceable and which is transferred as a curiosity or ornament.

Penalty provision.

SEC. 14. Any person who violates or fails to comply with any of the requirements of this Act shall, upon conviction, be fined not more than $2,000 or be imprisoned for not more than five years, or both, in the discretion of the court.

Excise taxes.
Firearms herein defined exempt from.
Vol. 44, p. 93; Vol. 47, p. 264.
U.S.C., Supp. VII, p. 604.

SEC. 15. The taxes imposed by paragraph (a) of section 600 of the Revenue Act of 1926 (U.S.C., Supp. VII, title 26, sec. 1120) and by section 610 of the Revenue Act of 1932 (47 Stat. 169, 264), shall not apply to any firearm on which the tax provided by section 3 of this Act has been paid.

Saving clause.

SEC. 16. If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the remainder of the Act, and the application of such provision to other persons or circumstances, shall not be affected thereby.

Effective date.

SEC. 17. This Act shall take effect on the thirtieth day after the date of its enactment.

Citation of title.

SEC. 18. This Act may be cited as the " National Firearms Act."

Approved, June 26, 1934.

[CHAPTER 758.]

AN ACT

June 26, 1934.
[H.R. 9769.]
[Public, No. 475.]

To amend the Act of June 19, 1930 (46 Stat. 788), entitled "An Act providing for the sale of the remainder of the coal and asphalt deposits in the segregated mineral land in the Choctaw and Chickasaw Nations, Oklahoma, and for other purposes."

Choctaw and Chickasaw Indians, Okla.
Sales of coal and asphalt deposits authorized.
Vol. 46, p. 788.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Act of June 19, 1930 (46 Stat. 788), entitled "An Act providing for the sale of the remainder of the coal and asphalt deposits in the segregated mineral land in the Choctaw and Chickasaw Nations, Oklahoma, and for other purposes ", is hereby amended so as to permit the Secretary of the Interior, in his discretion, to sell under the provisions of said Act the coal and asphalt deposits referred to therein in tracts of less than nine hundred and sixty acres where such smaller tract or acreage adjoins a developed tract on which active mining operations are being conducted and is needed by the operator in further developing the existing mine: *Provided,* That where the sale of such smaller tract or acreage is not deemed advisable, the Secretary of the Interior may in his discretion, lease said tract under the same terms and conditions as developed tracts are leased under the Act of April 21, 1932 (47 Stat. 88), with the exception that the minimum tonnage requirement contained therein is hereby waived as to leases on such small tracts.

*Proviso.*
Leases.

Vol. 47, p. 89.
Minimum tonnage requirement waived.

Approved, June 26, 1934.